# Expert Report of
# Michael Lynn, Ph.D.

## Purpose of the Report

I was asked to develop an informed opinion about four issues:
- whether the tipping of expeditors is customary and regular;
- whether expeditors should be eligible to participate in mandatory tip pools;
- whether the tipping of expeditors at Chili's is voluntary; and
- whether Chili's restaurants differ in any ways that are relevant to the voluntariness of severs' tipping of expeditors.

After collecting information and thinking about these questions, I have concluded that:
- the tipping of expeditors is customary and regular,
- expeditors should be eligible to participate in mandatory tip pools,
- the tipping of expeditors at Chili's is voluntary, and
- Chili's restaurants may differ in ways that are relevant to the voluntariness of severs' tipping of expeditors.

The basis for these conclusions are described below. However, this is a preliminary report based in part on visits to only a limited number of Chili's restaurants. I expect/intend to supplement and revise this report accordingly as information about more Chili's restaurants becomes available through discovery.

## My Qualifications

I received my Ph.D. in Social Psychology from the Ohio State University in 1987 and am currently employed as a tenured Associate Professor of Consumer Behavior at the School of Hotel Administration at Cornell University. I became interested in tipping as an undergraduate student when I began working for tips. At various times, I held positions as a busboy, bartender and waiter in order to pay my way through school. As a graduate student, I decided to turn this personal interest into a topic of research. I have been studying the psychology of tipping for over 20 years now and have over 30 publications on this topic (Exhibit A) – roughly three times as many as the next most prolific tipping researcher (Exhibit B). As a result of my dominance in this area of research, I have become recognized as the leading expert on tipping. The following quotations from articles in an academic journal, two hospitality trade magazines, and a prestigious business newspaper attest to this status:

> "More recently, Michael Lynn, **the leading empiricist on tipping in the United States**, has argued that the tendency of African Americans to tip less has created a problem for the

1

restaurant industry..." – Ian Ayres, et. al., (2005), *The Yale Law Journal*, Vol. 114, pg. 1635.

"The most vocal researcher on the case is Cornell University professor Michael Lynn, **widely considered the country's foremost expert on tipping**." – Suzie Amer, *Restaurant Business*, November 15, 2002, pg. 29.

"Not exactly, says Cornell School of Hotel Administration **tipping guru** Michael Lynn." – Bob Krummert, *Restaurant Hospitality*, January 2006.

"Fittingly, **arguably the world's leading authority on the psychology of tipping** is himself a former bartender, bus boy and waiter. Michael Lynn is now professor of consumer behavior at Cornell University in New York." – Raj Persaud, *Financial Times*, April 9, 2005, W3.

### My Fees and Prior Experience as an Expert Witness

I am being paid $300 an hour for my services as an expert witness and am being reimbursed for all reasonable and documented out-of-pocket expenses. I have never before testified as an expert witness in a trial or deposition.

### My Understanding of the Case

The plaintiffs', who all work or worked as servers at Chili's, allege that Brinker improperly paid them the tipped minimum wage rather than the regular minimum wage to which they were entitled. Specifically, they claim that Chili's management required them to share their tips with expeditors and that expeditors are not tip eligible. Therefore, they are seeking redress under the Fair Labor Standards Act.

### Sources of Information

I used the following sources of information in forming my opinions and developing this report:

- Conversations with hourly employees, managers and executives of Chili's. These conversations occurred during visits (with Defendant's Counsel, Gloria Bluestone) to five Chili's restaurants in upstate New York;

2

- Various Chili's documents, such as Brinker's hourly employee manual (Exhibit C), a server sales report (Exhibit D), several "Local Options" (Exhibit E), and signage (Exhibit F) obtained during visits to the five Chili's restaurants;

- Various non-Chili's documents, such as an online employment ad (Exhibit G), an independent restaurant employee manual (Exhibit H), and a blog entry (Exhibit I) obtained from internet searches using the key words "restaurant", "expeditor", and "tip pooling", "tip sharing", or "tip-outs";

- Various government documents, such as the Federal Labor Standards Act, Section 29U.S.C. 203(m) (Exhibit J); the Code of Federal Regulations, Section 531.50 – 531.59 (Exhibit K); U.S. Department of Labor Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (Exhibit L); the Department of Labor Field Operations Handbook, Section 30d04 (Exhibit M); the Department of Labor, Wage and Hour Division Opinion Letter of March 26, 1976 (Exhibit N); the Federal Rules of Civil Procedure, Rule 26 (Exhibit O);

- The Plaintiff's Original Petition (Exhibit P);

- A memorandum regarding the legal definitions of "voluntary" and "coercive" written by Gloria Bluestone and dated November 7, 2006 (Exhinbit Q);

- E-mail response to queries about policies and practices regarding the tipping of expeditors that I posted on two waiter discussion boards – one at http://www.tipping.org/discussions/ and one at http://finance.groups.yahoo.com/group/WaitersWorld/ (Exhibit R);

- Personal and/or telephone conversations with hourly employees, managers and/or executives of Applebees, Bennigan's, Fridays, Houstons, Max & Ermas, Olive Garden, Outback Steakhouse, Red Lobster, Ruby Tuesdays, and Uno Chicago Grill;

- Personal knowledge from years of working in and studying the restaurant industry.

**My Analysis of the Issues**

<u>Is the Tipping of Expeditors Customary and Regular?</u>

With regard to the question about whether tipping expeditors is customary and regular, I found that:

- tipping of expeditors is customary at Chili's (based on conversations with the chain's hourly employees, managers and executives);

3

- tipping of expeditors is customary at Bennigans (based on phone conversations with three different people);

- tipping of expeditors is customary at a smaller (unidentified) restaurant chain (based on an e-mail response to one of my queries by Paul Paz: Exhibit R);

- tipping of expeditors is customary at the independent restaurants Mike and Anne's Restaurant (based on an online employment ad: Exhibit G) and Somi's (based on an employee manual: Exhibit H) and was customary at Roxanne's (based on a conversation with Robert Rush);

- tipping of expeditors is rare but does occur at Max & Ermas (based on a phone conversation);

- servers have been tipping expeditors for at least the past 18 – 20 years (based on phone conversations and a blog entry: Exhibit I); and

- tipping of expeditors is not customary at other chains I contacted (based on phone conversations).

I conclude that the tipping of expeditors is customary and regular within some, but not all, sectors of the restaurant industry.


Should Expeditors be Eligible for Mandatory Tip Pools?

With regard to the question of whether expeditors should be eligible for mandatory tip pools, I begin with the following observations:

- The Fair Labor Standards Act does not "prohibit the pooling of tips among employees who customarily and regularly receive tips;"

- The Code of Federal Regulations (531.50) defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $20 a month in tips;"

- Expeditors – at least at Chili's -- make more than $20 a month in tips (based on the customary tip of 1% of all the server's sales as well as a conversation in which I was told expeditors at Chili's are told they can expect about $10.00 a night in tips).

The law seems to be somewhat circular on this issue, but I believe that most expeditors at those restaurants where expeditors are tipped make more than $20 a month, and therefore should be considered eligible for mandatory tip pools under the Fair Labor Standards Act.

4

Furthermore, I note that the U.S. Department of Labor "Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act" lists waiters, waitresses, bellhops, counter personnel, busboys/girls and service bartenders as examples of employees who customarily and regularly receive tips and thus are eligible to share in mandatory tip pools. It also lists dishwashers, cooks, chefs and janitors as examples of employees who do not customarily and regularly receive tips and thus are not eligible to share in mandatory tip pools. Similar lists can be found in the Department of Labor Wage and Hour Division Opinion Letter of March 26, 1976. Expeditors are not included on either list and neither list is meant to be exhaustive, so these lists do not speak directly to the eligibility of expeditors to share in mandatory tip pools. However, in some important ways, expeditors are more like the positions listed as tip eligible than the positions listed as tip ineligible. Consider the following:

- In some restaurants, expeditors run the food out to the table. This later task is not a part of the expeditors' regular duties at Chili's, but my conversations with Erin Steffens and Kanita Harden (at the Ithaca Chili's) and Erin Francisco (at the Dewitt Chilli's) revealed that expeditors do sometimes run the food there as well. Obviously, taking food to the table is very similar to being a waiter;

- The core task performed by all expeditors is setting up the trays that servers take out to tables – they put the food on trays in the proper order and make sure any other needed items such soups, crackers, spoons, and condiments are on the tray. This speeds up service delivery and makes sure that servers remember to bring everything the table needs. Thus, it contributes to the quality of the service more than to the quality of the food. Furthermore, these are tasks that servers must typically perform for themselves when there are no expeditors or managers acting as expeditors. Thus, expeditors are server helpers, which is how the Department of Labor Field Operations Handbook labels busboys/girls (Exhibit M).

Given the role of expeditors as server helpers and sometimes food runners, the fact that they perform tasks that servers must otherwise do themselves, and the fact that they improve the service customers receive, I believe they should be eligible for mandatory tip pools.

Is the Tipping of Expeditors at Chili's Voluntary?

With regard to the question of whether servers' tipping of expeditors at Chili's is voluntary, I found the following:

5

- Everyone (all hourly employees and managers) I spoke with at Chili's described the current tipping of expeditors as "voluntary," "optional," "not required," "not mandatory," or something equivalent;

- The long-time Chili's employees I spoke with remember a time when tipping of expeditors was required and most of them remember that the policy was changed around 2001 to make tip outs to expeditors voluntary;

- The "Local Options" at the Chili's in Clay, Dewitt, and Ithaca all specify tip out procedures and indicate that servers tip out 1% of sales to their busser and bartender. Nothing is said about tip outs to expeditors. [The "Local Options" at the Chili's in Amherst and Clarence do not say anything about tip out procedures.] (Exhibit E );

- The servers' sales reports generated at the end of their shifts contain clearly marked spaces for bartenders and busboys to sign indicating that the server paid them the required tip out. In contrast, although servers often get expeditors to initial their sales reports in empty white space, there is no designated space for expeditors to indicate that they received tip outs (Exhibit D);

- Trainers are told by Brinker not to talk about tipping of expeditors because it is not mandatory to tip them (from Erin Steffens at Ithaca). However, it is clear that some trainers do tell expeditors that they can expect tips and tell servers that tipping of expeditors is nice gesture and common – though not required. One trainer (Kim at Dewitt) tells server trainees that tipping the expeditor is not required but a nice gesture. One expeditor (Ray Stevenson) said he was told by a trainer that he could expect tips. In addition, one server (Erin Francisco at Dewitt) was told by a trainer to tip the expeditor (it is unclear to me if she was told you should do it or you must do it). Another trainer and server (Stacey Sherman at Clay) said trainers tell server trainees that they are required to tip the bartender and busboy and that most people do tip the expeditor;

- Tips to expeditors are handled differently in different locations. In Ithaca prior to June 2006, the closing server collected tips from other servers and gave them to the expeditor. Now, servers at this location tip expeditors directly. In Dewitt and Clarence, servers put tips to expeditors in a basket. In Amherst, the servers tip expeditors directly. In no case, was management involved in collecting tips for expeditors;

- No one I asked ever recalled a server being disciplined for under-tipping or not tipping an expeditor;

- Some expeditors (Ray Stevenson in Ithaca and Erin Franciso in Dewitt) reported instances of not being tipped or being poorly tipped and doing nothing about it. They did not complain to the manager;

- One manager (Ahmed at Clay) received a complaint from an expeditor about not being tipped and reported telling the expeditor "I can't talk about that. I can't tell the server to tip you;"

- One area director (Mitch Wexler) heard from HR in Dallas that a server called complaining that other hourly employees at the Clarence restaurant said tipping expeditors is mandatory. The area director talked with the general manager at Clarence and had him post a reminder that tipping of expeditors was voluntary. (Exhibit F);

- One server (Darlene Hopkins at Amherst) admitted to me in front of a manager and without hesitation that she does not tip the expeditor 60 to 70 percent of the time and said she has experienced no negative repercussions from either the expeditors or managers.

Based on the above observations, I conclude that the tipping of expeditors at Chili's is voluntary.

Advocates of the opposite view -- that tipping expeditors is involuntary at Chili's -- might note the following:

- Severs across locations tend to tip expeditors 1 percent of their sales – a figure that is consistent with the earlier company mandates about tipping of expeditors;

- Expeditors often receive or can look at servers' sales reports, which adds to the social pressure to comply with the norm of tipping expeditors 1 percent of sales;

- Trainers tell expeditor trainees that they can expect tips and tell server trainees that most people do tip expeditors, which further increases the social pressure to comply with the norm of tipping expeditors 1 percent of sales.

I do not dispute these observations. I agree that the company's past mandates and the mentioned actions of its managers and trainers all contribute to a social norm of tipping expeditors 1 percent of sales. I also believe that servers feel real social pressure to comply with that norm. However, social norms and social pressure to comply with those norms do not make tipping involuntary as a comparison with consumer tipping in restaurants makes clear.

Consider the following facts about consumer tipping:

- Consumers generally comply with the 15 to 20 percent restaurant tipping norm; in fact, my research indicates that bill size accounts for about 70 percent of the variance in tips within a restaurant, which makes bill size twice as powerful a determinant of tip size as all other factors combined;

7

- After bill size, research has found that the next largest determinants of consumers' tip sizes are factors associated with increased social rapport between the server and customer -- e.g., server smiling, server squatting next to the table, server touching customers, server introducing self to the table, server calling customers by name, and server writing "thank you" on the back of the check.

The 15 to 20 percent tipping norm defines servers' and others' expectations regarding the appropriate tip and the greater the social rapport between the server and customer the greater the social pressure consumers feel to comply with those expectations. Thus, research on tipping suggests that social expectations and social pressures to comply with those expectations are the largest determinants of consumer tipping in restaurants.

Despite the fact that it is primarily motivated by social pressures to comply with the 15 to 20 percent norm, consumer tipping in restaurants is widely considered to be voluntary. Furthermore, the fact that restaurants increase the social pressure consumer s feel to tip by paying servers less than minimum wages and (in some cases) by posting reminders of the 15 to 20 percent tipping norm on their menus and/or printing recommended tips on checks does not alter the fact that consumer tipping in restaurants is voluntary. Similarly, I believe that the tipping of expeditors at Chili's is voluntary despite the presence of a social norm and social pressure to comply with that norm.

<u>Do Chili's Restaurants Differ in any Ways that are Relevant to the Voluntariness of Severs' Tipping of Expeditors?</u>

With regard to the question of whether Chili's restaurants differ in any ways that are relevant to the voluntariness of servers' tipping of expeditors, I noted the following:

- there is nothing in Brinker's Hourly Employee Handbook about tip out procedures;

- the five restaurants I visited had two different written documentations of the tip out procedures - the "Local Options" at the Chili's in Clay, Dewitt, and Ithaca all specify tip out procedures and indicate that servers tip out 1% of sales to their busser and bartender, while saying nothing about tip outs to expeditors. In contrast, the "Local Options" at the Chili's in Amherst and Clarence do not say anything about tip out procedures (Exhibit E);

- there was some inconsistency among managers in the remembered date of the company's switch from mandatory to voluntary tipping of expeditors – most remembered the switch occurring about 5 years ago, but Robert Rush (general manager at Clarence) remembered it occurring 2 years ago;

- despite apparent instructions from Brinkers not to mention tipping of expeditors during training of hourly employees, some trainers do indicate that tipping of expeditors is customary at Chili's.

While Robert Rush recalled that tipping of expeditors was mandatory at Clarence until two years ago, Theresa Morrison (who opened the Clarence store as front of house manager in 2000 and stayed until 2002 when she became Assistant Manager at Amherst) said that tipping expeditors was optional in Clarence while she was there. She and Mitch Wexler (Area Director) also indicated that Brinker made tipping of expeditors voluntary long ago but sent a reminder re-emphasizing that fact several years ago. Thus, it is possible that Robert Rush simply mistook the reminder as a change in policy. The other inconsistencies I observed were relatively minor and did not raise doubts in my mind about the voluntariness of tipping expeditors at these Chili's restaurants. Thus, given the evidence I have seen, I stand by my conclusion that servers' tipping of expeditors at Chili's is voluntary.

Nevertheless, the absence of company-wide written documentation of the tip procedures together with the fact that some managers and trainers may have missed, overlooked, or ignored company policies on this issue raises the possibility (unsubstantiated by the evidence I have seen to date) that tipping may have been mandatory at some Chili's restaurants. If evidence of that does come to light, then those restaurants determined to have mandatory tipping of expeditors would be very different from the restaurants I investigated. In that case, it would be apparent to me that servers at different restaurants had very different work conditions and that assessments of the voluntariness of servers' tipping of expeditors would have to me made on a restaurant by restaurant basis.

Furthermore, it is possible that different managers and trainers within a restaurant may have communicated different messages about the company tip-out policy. This could result in some servers within a restaurant being incorrectly told that tipping of expeditors was required while other servers at the same restaurant who learned about the policy from a different manager or trainer were correctly told that it was voluntary. In that case, assessments of the voluntariness of servers' tipping of expeditors would have to be made on an individual by individual basis.