IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER ROUSSELL, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, | § § § § | |
| PLAINTIFF, | § § | CIVIL ACTION NO. 4:05-CV-03733 |
| VS. | § § | |
| BRINKER INTERNATIONAL, INC., | § § | Jury Requested |
| DEFENDANT. | § § | |

**DEFENDANT BRINKER INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

Respectfully submitted,

**Fraser A. McAlpine**
State Bar No. 13321300
Federal I.D. No. 3407
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
(713) 220-5800 (telephone)
(713) 236-0822 (facsimile)

ATTORNEY-IN-CHARGE FOR DEFENDANT
BRINKER INTERNATIONAL, INC.

Of COUNSEL:
**Jordan Cowman**
Federal I.D. No. 14468
State Bar No. 4932800
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
(214) 969-2800 (telephone)
(214) 969-2828 (facsimile)

TABLE OF CONTENTS

1.    INTRODUCTION, NATURE OF CASE AND SUMMARY OF ARGUMENT.................................. 1

2.    STATEMENT OF ISSUES ....................................................................... 2

3.    FACTS. ............................................................................................... 2

      3.A.    The General Organization of a Chili's Restaurant.................................. 2

      3.B.    The Customer Service Duties Performed by Servers Include Quality
              Assurance.. ................................................................................. 4

      3.C.    QAs Also Perform Customer Service And Quality Assurance Tasks; Their
              Duties Overlap With Those of Chili's Servers......................................... 4

      3.D.    Defendant Considers QAs Part of the FOH Customer Service Team ........ 8

4.    ARGUMENT    ........................................................................................ 10

      4.A.    The Statutory Framework .............................................................. 10

              4.A.(i).    "Tipped Employees" and the "Tip Credit"............................ 11

              4.A.(ii).   A "Tipped Employee" May Be Assigned "Related Duties"
                         Without Losing His "Tipped Employee" Status..................... 11

              4.A.(iii).  Tip Pooling or Tip Sharing................................................. 12

              4.A.(iv).   "Tipped Employees" Are Different from "Employees Who
                         Customarily and Regularly Receive Tips" ............................ 13

              4.A.(v).    Employees Who "Customarily and Regularly Receive Tips" Are
                         Not Required to Interact with Guests. .................................. 14

      4.B.    Chili's QAs Are Eligible to Participate in a Tip Pool As a Matter of Law.... 17

              4.B.(i).    QAs Whose Usual Occupation Is Server................................ 18

              4.B.(ii).   QAs Whose Usual Occupation is Server Helper...................... 20

      4.C     QAs at Chili's Have Customer Interaction ........................................... 22

5.    CONCLUSION    ...................................................................................... 24

TABLE OF AUTHORITIES
## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................... 2

*Dole v. Continental Cuisine, Inc.*
  751 F. Supp. 799 (E.D. Ark. 1991) ................................................................................... 15

*Kilgore v. Outback Steakhouse of Florida, Inc.*
  160 F.3d 294 (6th Cir. 1998) .................................................................. 15, 16, 19, 20, 23, 24

*Krause v. C.I.R.*
  Docket No. 10230-90, 1992 WL 95627 (U.S. Tax. Ct. May 11, 1992) ......................... 15

*Lentz v. Spanky's Restaurant II, Inc.*
  491 F. Supp. 2d 663 (W.D. Tex. 2007) ..................................................................... 17, 21

*Marshall v. Krystal Co.*
  467 F. Supp. 9 (E.D. Tenn. 1978) ..................................................................................... 13

*Myers v. Copper Cellar Corp.*
  192 F.3d 546 (6th Cir. 1999) ..................................................................................... 12, 15

## Statutes and Regulations

29 C.F.R. § 531.54 ....................................................................................................... 13, 18

29 C.F.R. § 531.56(e) ............................................................................................. 11, 12, 18

29 C.F.R. § 531.57 ....................................................................................................... 13, 17

29 C.F.R. § 531.59 ............................................................................................................. 11

29 U.S.C. §§ 201-219 ....................................................................................................... 10

29 U.S.C. § 203(m) .................................................................................................... passim

29 U.S.C. § 203(t) ...................................................................................................... passim

29 U.S.C. § 206(a)(1) ........................................................................................................ 11

Fed. R. Civ. P. 56(c) ........................................................................................................... 2

## Other Authorities

Apr. 8, 1974, Pub. L. 93-259, Title II, § 13(e), 88 Stat. 64 ...................................................... 10

Sept. 23, 1966 Pub.L. 89-601, Title I, § 101(a), 80 Stat. 830 .................................................... 10

C. Katsigris, *The Bar and Beverage Book* 44 (John Wiley & Sons 1983) ................................ 15

DOL Handbook § 30d00(e) (Dec. 9, 1988), *available at http://www.dol.gov/esa/whd/foh* ...... 12

DOL Handbook § 30d04(a) ...................................................................................... 13, 15, 20

D. Schmitt, *Tips: The Mainstay Of Many Hotel Workers' Pay*,
          http://www.bls.gov/opub/mlr/1985/07/rpt3full.pdg (1985) ..................................... 15, 20

L. Kotschever & M. Tanke, *Managing Bar and Beverage Operations* 97
          (Educational Institute of the American Hotel & Motel Ass'n 1991) ............................ 15

Mass. Gen. Laws, Chapter 149, Section 152A(a) ...................................................................... 15

P. Van Vleck, *Beverage Management and Bartending* 89 (CBI Publishing 1981).................... 15

Senate Report 93-690 at 43 (1974) ..................................................................................... 15, 17

W.H. Admin. Op. – 468 (Sept. 5, 1978)...................................................................................... 11

W. Randle & L. Valentino, *The Beverage Service World* 37 (Prentice Hall 2001).................... 15

1.    INTRODUCTION, NATURE OF CASE AND SUMMARY OF ARGUMENT

Plaintiff Jennifer Roussell ("Plaintiff"), a former food Server at Chili's Grill & Bar ("Chili's"), avers that Defendant Brinker International, Inc. ("Defendant" or "Brinker")[1] required her and other Chili's Servers to share their tips with employees assigned to Quality Assurance work ("QAs").  Ignoring that she worked as a QA herself and received tips from Servers when she worked in that capacity, Plaintiff claims that QAs are not eligible for tips and therefore the alleged requirement that she share tips with them violates the Fair Labor Standards Act ("FLSA").  Plaintiff further avers that as a result of forcing Servers to share tips with QAs, Chili's' alleged tip pool is invalid and Chili's improperly uses tip credits to calculate Servers' pay.  Based on these averments, Plaintiff seeks to recover the amount of the tip credit taken by Chili's for each hour she worked when a QA was on duty, the tips she shared with the QAs, and other things.

The premise underlying this entire lawsuit – that Chili's has a mandatory policy requiring Servers to share tips with QAs – is without basis, as demonstrated in Defendant's Motion to Decertify Collective Action (Defendant's "MTD") filed concurrently herewith.  But even if Chili's Servers were forced to share their tips with QAs as Plaintiff alleges,[2] her claims would nonetheless fail as a matter of law because Chili's QAs perform the same job duties that Servers perform – indeed, many QAs are also Servers – they are tip-eligible and customarily and

---

[1]    Brinker is the parent company of a family of companies that own and operate Chili's restaurants across the country.  Plaintiff's employer was Brinker International Payroll Company, L.P., and it, not Brinker, is the proper defendant in this case.  Brinker has not employed Plaintiff or any individual who has opted into this case.  *See* Sandidge dep. 10:2-5; 12:6-22.

[2]    Defendant makes this assumed argument for purposes of this Motion only.  In fact, while Chili's has tip-pooling policies that apply to Bussers and Bartenders consistent with state law, such policies do not apply to QAs.  *See* Defendant's MTD § 3.B.(i) and n.30.  Should this action survive Defendant's Decertification and Summary Judgment Motions, Defendant reserves all of its defenses for trial.

regularly receive tips, and they are therefore eligible to participate in a tip pool. Thus, the Court can and should resolve this lawsuit without delving into the myriad highly individualized questions of whether particular Servers on particular shifts at particular Chili's restaurants tipped out a QA voluntarily or under compulsion. *See* Defendant's MTD §§ 3.B, 4.A, and 4.C. Including QAs in a mandatory tip pool would not violate the FLSA because the Act permits the pooling of tips among employees who customarily and regularly receive tips. Therefore, the issue framed by Plaintiff – whether Servers tip out a QA voluntarily, as Defendant contends, or pursuant to alleged Manager "requirement" or coercion, as Plaintiff avers – is wholly irrelevant. No genuine issue of material fact is presented. Defendant is entitled to a judgment as a matter of law.

2.    STATEMENT OF ISSUES

This Motion presents the straightforward question of whether Chili's QAs are employees who customarily and regularly receive tips within the meaning of 29 U.S.C. § 203(m) and can therefore properly be included in a tip pool. Defendant should be granted summary judgment on this issue because, as shown below, there is no genuine issue as to any material fact and Defendant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In the face of Defendant's showing, it will be Plaintiff's burden to set forth specific facts showing there is a genuine issue for trial – that is, that the evidence is such "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Manifestly, this is a burden that Plaintiff cannot meet.

3.    FACTS

3.A.    The General Organization of a Chili's Restaurant

Chili's is a nationwide chain of full-service, casual dining restaurants. While there are multiple physical restaurant prototypes, the decor and atmosphere of the restaurants are similar

2

across the country, and the menus are generally the same. Likewise, management and staff

positions are similarly named across the chain.  Most restaurants have a General Manager, other

Managers, Bartenders, Hosts, Servers, Bussers, and "Back of the House" kitchen staff.

Declaration of Kaid Contractor ("Contractor Decl.") ¶ 2.[3]  Many restaurants also have some form

of QA[4] or "To Go"[5] position, or a hybrid QA/To Go position.  *See* Dft's MTD § 3.A.(i).[6]

      Each Chili's restaurant is divided into two parts: the "Back of the House" and the "Front

of the House." The Back of the House ("BOH") includes the Kitchen, Dishwashing Area,

Storage Area, and one or more offices. The Front of the House ("FOH") includes the Reception

Area, Dining Area, Bar, Pass Through and, at some locations, a To Go station.  Food is prepared

and plated in the Kitchen and then placed on a long stainless steel counter in the Pass Through,

also known as the Expo Line, which separates the BOH "food preparation" areas where the

cooks and dishwashers work, from the FOH "customer service" areas where Servers and QAs

work.  Contractor Decl. ¶ 3; *see also*, *e.g.,* Crowder dep. 24:21-25:22; Ekeler dep. 23:18-24; R.

Fox dep. 26:8-11; Sandidge dep. 116:13-21; Phillips dep. 93:4-94:1, Roberson dep. 38:6-20.

---

3   Defendant's Motion is supported by the Declaration of Brinker Senior Director of Operations Services, Kaid Contractor, as well as by selected excerpts from the approximately 100 depositions taken in this matter, which are contained in Defendant's Appendix In Support of Its Motion for Summary Judgment ("Appendix") filed concurrently herewith.  For the convenience of the Court, Defendant has grouped and summarized deposition and declaration testimony cited in this Memorandum by subject matter in charts attached as Appendix Exs. C.1-C.10.

4   The formal job code for QA is "FOH Expo," signifying that the QA expedites customer service in the Front of the House.  Contractor Decl. ¶ 4.

5   The "To Go" position at Chili's involves preparing and delivering take-out orders, as opposed to orders eaten at the restaurant.  Contractor Decl. ¶ 2.

6   The evidence supporting the portions of Defendant's Decertification Motion cited in this Memorandum are incorporated by reference in this Memorandum and the summary judgment record.

### 3.B.   The Customer Service Duties Performed by Servers Include Quality Assurance

Chili's Servers work throughout the Front of the House, going to and from the Dining Area, Bar, and To Go station, and in and out of the Pass Through, with discrete tasks performed in each area.  In the Dining Area, for example, Servers greet guests, take orders, and deliver food. They also fill water glasses and serve other beverages. When guests complete their entrees, Servers "pre-buss" tables by removing dirty dishes before asking whether guests desire dessert or any other service.  *See* collected testimony at Appendix Ex. C.1, *e.g.,* Crowder dep. 30:20-31:17 (main function of Server is to serve guests); Davasher dep. 27:9-28:12; Jones dep. 32:21-33:8; Kaddy dep. 25:3-26:23 (Servers do anything to "keep guests happy"); McKelvey dep. 92:20-94:13; Parrish dep. 28:10-29:13; Skubisz dep. 43:25-44:7, 47:12-48:22; Vial dep. 35:23-36:12.

In the Pass Through, Servers perform quality assurance duties.  Specifically, Servers take plated food off the Pass Through counter and place it on trays, inspect it for appearance and temperature, ensure that it conforms to guests' orders, add garnishes as appropriate, check that suitable condiments are included, and then deliver or "run" the food to the table.  *E.g.,* Alfery dep. 72:11-25; Antley dep. 48:19-49:18; Corno dep. 45:16-19, 46:21-47:6; Farinato dep. 20:18-21:2, 20:23-22:6; Held dep. 37:17-21; Hill dep. 20:2-13.  Servers also monitor "ticket times" to ensure that guests receive their meals in a timely manner.  *See* Jandera dep. 35:4-36:8 (Servers try to get food delivered as quickly as possible); Hart dep. 26:2-13; Moodie dep. 37:3-12; Zayas dep. 76:20-77:25.

### 3.C.   QAs Also Perform Customer Service And Quality Assurance Tasks: Their Duties Overlap With Those Of Chili's Servers

In general, a QA acts as a Server's helper, performing duties otherwise done by Servers when no QA is present.  *See* collected testimony at Appendix Ex. C.2, *e.g.*, Bandala dep. 40:20-

41:4; Brenner dep. 35:3-14 (QAs help Servers by checking quality of food); Edwards dep. 22:21-

23:9 (QA is a Server Assistant); Ekeler dep. 49:16-22; Ellis dep. 21:21-22:3; Evans dep. 54:3-8;

Jenkins dep. 30:4-27; Kaddy dep. 58:21-59:5 (a good QA helps Servers); Latka dep. 10:9-10:23

(QA is an "extension of the Server); Martino dep. 74:9-24; McLean dep. 35:25-36:14 (QAs

"serve the server"); Miller dep. 41:7-14; Moodie dep. 59:8-15; Parsons dep. 49:6-51:3; Phillips

dep. 24:1-6 (as a QA "I'm a server assistant"); Roberson dep. 42:17-43:6 (principal function of

QA is to assist servers); Roussell dep. 57:13-21, 61:10-62:7, 164:1-4.  Chili's Managers have

discretion as to when, and how often, they will schedule an employee as a QA in addition to

scheduling Servers and other Front of the House staff. [7]  *See e.g.,* Roussell dep. 41:22-24, 69:12-

20; Sandidge dep. 139:7-16.

Like Servers working without QAs, QAs have a variety of customer service job duties.

QAs take plated food off the Pass Through counter and place it on trays, inspect it for appearance

and temperature, ensure that it conforms to guests' orders, add garnishes as appropriate, check

that suitable condiments are included, and then run the food to the table.  QAs also monitor ticket

times and ensure both timely and correct food delivery.  *See* collected testimony at Appendix Ex.

C.3, *e.g.,* Abshire dep. 64:12-23; Anderson dep. 37:24-38:4 (QAs deliver food); Antley dep.

54:10-19; 57:20-23; Beaulieu dep. 45:7-46:12, Carter dep. 43:19-44:6 (QA's job is to make sure

everything is right – "that's what quality assurance means"); Crowder dep. 34:21-35:9; Davasher

dep. 31:2-32:11; Evans dep. 66:25-67:6; Flanagin dep. 71:13-22; 72:5-12; C. Fox dep. 12:24-

---

[7]    A small number of Chili's restaurants have QAs on duty on every shift.  *E.g.*, White dep. 46:17-18; Miller dep.
13:8-13; Gray dep. 28:10-11; Anderson dep. 48:13-19; *see also* Kaddy dep. 43:24-44:3 (QA on every shift at
Tampa, Florida restaurant).  Others restaurants rarely have QAs on duty.  *E.g.*, Moodie dep. 39:10-15; Phillips dep.
28:12-25, 29:1, 29:6-25, 30:1-6.  Less busy restaurants do not staff or rarely staff QAs because their Servers have
time to handle the duties QAs perform at busier restaurants.  Leslie dep. 102:13-25 (QA is scheduled only a couple
times per week at low volume restaurants); Youngman dep. 96:15-19 (not all restaurants have QAs).

14:17; Martino dep. 48:1-18, 57:4-11; McVicker dep. 15:13-21; Miller dep. 38:22-39:21; Spahl dep. 29:22-30:21; Zayas dep. 68:25-70:2.  Although a large focus of the QAs is quality assurance, many QAs, to one degree or another, perform all of the duties performed by Servers, including directly interacting with the restaurant's guests for many customer service-related reasons, depending on the needs of the specific restaurant on a specific shift.  *See* collected testimony at Appendix Ex. C.3 and C.4, *e.g.,* Connolly dep. 18:13-19:11, 25:20-26:3 (QAs deliver food to bar and assist running orders to large parties); Folsom dep. 33:16-34:12 (delivers food so it is served warm); Acosta dep. 73:3-17 (QAs cover To Go Station when needed); Edwards dep. 31:3-32:4 (QA visits guests to discuss menu ingredients); Pedregal dep. 21:22-22:20 (QA visits guests to discuss allergies).  In sum, during those shifts where a QA is scheduled, the QA assumes some of the duties otherwise performed by Servers. *See* collected testimony at Appendix Ex. C.5, *e.g.,*  D. Fox dep. 19:10-17; 45:22-46:12 (Server duties "overlap" with those performed by QAs); Antley dep. 55:21-56:20; Brenner dep. 30:23-31:15, 65:19-66:9; Bryant dep. 58:18-24, 67:13-21; Colbeck dep. 37:24-38:20; Dellamano dep. 51:6-9; Dorr dep. 31:12-20.[8]

Having both Servers and a QA on duty keeps the food flowing to guests according to their specifications and in a timely manner.  Crowder dep. 35:1-9; Montoya dep. 8:25-9:10; Downing dep. 43:1-12; Ekeler dep. 48:22-49:12; Evans dep. 70:3-17; Miller dep. 38:8-14.  It is the responsibility of the QA to "get the food out as quickly as possible."  Owen dep. 19:11-17.  As Justin McVicker testified, QAs "serve the Servers" and work as "an extension of the servers" – both are responsible for delivering orders correctly and quickly from the Kitchen to the

---

[8]   The dress code for many QAs is similar, or identical, to the dress code for Servers.  QAs at the Wellington, Florida Chili's, for example, wear Server attire because "the QAs need to be ready to go on the floor and help or serve . . . at anytime" and if "they have to run food."  Green dep. 24:23-25:6.

6

restaurant's guests.  McVicker dep. 32:3-15; *see also*, Appendix Exs. C.3, Farinato dep. 25:12-22; Gray dep. 35:12-20, 43:11-19; Hallmark dep. 27:12-28:17 (QAs and Servers share responsibility for correct food delivery); D. McDonald dep. 28:11-29:1; Parrish dep. 32:7-33:5; Roussell dep. 55:12-19, 56:18-57:10; and Ex. C.5, *e.g.*, Phillips dep. 29:6-30:6; Rumski dep. 38:11-39:3.[9]

This division of labor, with the QA supporting the Server in the Pass Through, enables Servers to focus on their guests and other duties in the Dining Area, and enhance the guests' dining experience.  Alfery dep. 72:11-25, 73:1-13; Allen dep. 47:10-19; Evans dep. 70:3-23; Owen dep. 17:4-25; Linville dep. 35:11-18; Johnston dep. 9:14-10:7.  Faster, better service allows Servers to turn tables more quickly, and thus serve more (and happier) guests. *See* D. Fox dep. 42:5-20; Myers dep. 14-15.  This, in turn, increases opportunities for Servers to earn tips. *See* collected testimony at Appendix Ex. C.6, *e.g.,* Anderson dep. 41;12-42:2; Anzini dep. 46:5-13, 52:22-52:18; Beaulieu dep. 47:21-48:10; Carter dep. 46:18-25, 47:1-3; Davashar dep. 38:25-39:11; Ekeler dep. 48:22-49:12; C. Fox dep. 26:10-20 (QAs help her earn more tips); D. Fox dep. 42:5-20 (tips go down without a QA); Hill dep. 44:22-45:9 (more tables means more tips); Lewis dep. 34:3-7; Martino dep. 75:20-23; Nicholas dep. 13:13-14:17; Pedregal dep. 13:15-25; Roussell dep. 162:21-163:11 (happier customers equals more tips).  In sum, QAs perform "tip producing" tasks, just like Servers and other Front of the House employees.

### 3.D.   Defendant Considers QAs Part of the FOH Customer Service Team

The overall goal of the Front of the House team at Chili's is customer service. *See* Contractor Dec. ¶ 5; *see also* Latka dep. 19:6-22.  Defendant considers QAs at Chili's

---

[9]   Notably, even when some Servers would not admit the obvious proposition that QAs could help them earn more tips, they did admit that poor performing QAs could negatively impact their tips.  *E.g.*, D. McDonald 34:10-35:12, 52:13-20; K. McDonald 75:13-76:5.

restaurants, like Servers, Front of the House employees.  In fact, many QAs are Servers themselves, who take turns working as QAs.  *See* collected testimony at Appendix Ex. C.7, *e.g.,* Ellis dep. 19:1-4, 54:18-55:5; Farinato dep. 12:23-13:9, 54:11-22; D. Fox dep. 26:25-27:5; Hunt dep. 9:22-10:1; Jandera dep. 19:10-19; Nicholas dep. 63:11-25 (about half of Servers also QA); Platz dep. 20:17-21:1; Rumski dep. 13:19-14:8; Skubisz dep. 32:5-11 (most Expos are also Servers); Slomkowski dep. 63:7-22; Walker dep. 14:4-9; Watson dep. 33:14-24; Wilks dep. 25:7-22 (QA today may be Server the day before); Williams dep. 45:2-46:6.  Plaintiff Roussell, for example, sometimes worked as the QA, and in that capacity received tips from other Servers.  Roussell dep. 82:21-83:15.[10]  Indeed, all of the QAs with whom Plaintiff worked were also Servers.  *Id.* 57:23-25, 69:21-24, 103:8-23.  At 46 of the 48 locations covered by depositions taken in this case, one or more of the persons assigned to work QA shifts also worked as a Server.  Declaration of J. Smith ¶ 4.  In 30 of those 46 locations, all QAs were also Servers.  In 16 restaurants, some of the QAs were Servers and some were scheduled exclusively as QA.  *Id.* Servers who sometimes work as the QA, and Servers and other employees who only work as a QA, perform exactly the same overall function: they help the other Servers by assuming some of the Servers' ordinary and regular duties – duties that are routinely the responsibility of Servers at restaurants where no QA is scheduled.

Like Servers, QAs are generally included in the Front of the House schedule; separate schedules are prepared for Back of the House.  *See* collected testimony at Appendix Ex. C.8(a), *e.g.,* Anzini dep. 10:8-14; Dellamano dep. 44:17-24; Farinato dep. 64:1-10; Jandera dep. 46:14-21; Gearhart dep. 11:14-18; Gray dep. 68:7-12; Miller dep. 36:24-37:7; Nass dep. 137:23-

---

[10]   Like Plaintiff, many of the Servers who now complain about sharing a portion of their tips with QAs worked as QAs, receiving tips from other Servers.

138:16; Paolillo dep. 38:11-18; Walker dep. 43:3-10.  A QA's job performance, like that of other FOH employees, is evaluated on the FOH performance evaluation form; a different form is used for BOH employees.  Ex. C8(b), Church dep. 54:7-14; Mason dep. 72:8-10; Spears dep. 70:4-25. Like other FOH employees, QAs receive training that is different from the training BOH employees receive.  For example, BOH employees train on how to operate food preparation equipment, but QAs and other FOH employees do not.  Contractor Decl. ¶ 5; *see also* Nicholas dep. 40:20-41:19.  Labor costs for QAs are included in the FOH budget; labor costs for BOH employees are included in a separate budget.  Contractor Decl. ¶ 5.  QAs are relegated to the same areas of the restaurant as are Servers and other FOH staff – away from the Kitchen and cooking area.  They work in the Pass Through – alongside Servers – and do not go into the Kitchen to perform their job.  *See* collected testimony at Appendix Ex. C.8(c), *e.g.*,  Abshire dep. 27:10-28:10 (QAs work along side Servers); Anderson dep. 42:13-43:1 (QAs stand on the other side of the Pass Through as the cooks); Antley dep. 47:10-48:3 (Servers also work at Expo line); Carver dep. 32:23-33:5 (Pass Through is Server work area); Colbeck dep. 67:19-68:5, 83:18-84:2; Farinato dep. 32:20-33:13; Gray dep. 24:2-8; Held dep. 52:9-12; Jenkins dep. 16:20-25; Kaddy dep. 23:11-16; Lewis dep. 35:15-23; Slomkowski dep. 61:14-62:5; Watson dep. 31:24-32:4; Wilks dep. 24:21-25:6;  Roussell dep. 161:9-12.  In these and other ways, Chili's treats the QAs as a fully integrated part of the FOH customer service team.  *See, e.g.,* Edwards dep. 23:16-24:4; Jenkins dep. 12:13-23, 30:14-22; Linville dep. 15:17-21; Watson dep. 91:20-92:4.[11]

---

[11]   Plaintiff may attempt to raise a question of fact by pointing to the testimony of her trial witnesses who expressed their personal opinions that QAs are Back of the House employees.  But it is indisputable that QAs work on the customer side of the Pass Through, the same place Servers work.  They are not involved in food production tasks equivalent to those performed by cooks  *See* Anderson dep. 42:13-43:1; Garner dep. 80:13-81:5; Gray dep. 27:19-28:9; Held dep. 52:9-12; Owen dep. 15:10-17; and collected testimony at Appendix Ex. C.9, *e.g.*, Berveiller dep. 21:20-22:7; Bryant dep. 45:15-24; Carbone dep. 101:19-102:7; Connolly dep. 17:12-18:8; Fisher dep. 21:24-22:2; Fitzgerald dep. 24:23-25:8; D. Fox dep. 7:25-8:5; Goodwin dep. 19:12-18; Green dep. 18:12-23; Hallmark dep.

4.   A<span>RGUMENT</span>

    4.A.   The Statutory Framework

    Plaintiff brings her claims in this case under the FLSA.  Congress enacted the Fair Labor

Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201-219, in 1938, in order to establish a

federal minimum wage, and require employers to pay overtime to certain eligible employees.

The Act did not include any reference to tips until 1966, when Congress amended subsection

203(m) to allow employers to claim a "credit" equal to 50 percent of the minimum wage amount

due to "tipped employees."  Sept. 23, 1966 Pub.L. 89-601, Title I, § 101(a), 80 Stat. 830.  The

same law also added subsection 203(t) to define "tipped employee."  *Id.*

    Eight years later, in 1974, Congress addressed tip pooling for the first time, adding to

subsection 203(m) that a "tipped employee" must retain all tips received by the employee

"except that this subsection shall not be construed to prohibit the pooling of tips among

employees who customarily and regularly receive tips." Apr. 8, 1974, Pub. L. 93-259, Title II,

§ 13(e), 88 Stat. 64. Because an understanding of the statutory terms "tipped employee" as used

in 29 U.S.C. § 203(t) and "employees who customarily and regularly receive tips" as used in 29

U.S.C. § 203(m) is central to this Motion, Defendant discusses them briefly below.

    4.A.(i).   "Tipped Employees" and the "Tip Credit"

    Food servers must receive at least the applicable minimum wage. 29 U.S.C. § 206(a)(1).

Because food servers are "tipped employees," their tips may be combined with the hourly wage

paid directly by the employer, allowing restaurants to pay a "sub-minimum wage."  WH Admin.

---

22:6-23:1; Held dep. 52:23-53:22; Kaddy dep. 35:17-18, 36:1-3, 38:5-7; McLean dep. 32:12-25; Montoya dep.
18:12-17; Parsons dep. 63:5-7. Plaintiff's proffer of such self-serving opinions does not alter the undisputed facts as
to the actual duties QAs perform, which overlap with the duties performed by Servers, who everyone agrees are
FOH.

Op. – 468 (Sept. 5, 1978) ("Waitresses"); 29 U.S.C. 29 U.S.C. §§ 203(m), (t).  The difference between the minimum wage and the amount an employee must be paid directly by the employer is commonly referred to as a "tip credit."[12]  *See generally* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59.  The employer may only take a tip credit "for hours worked by [an] employee in an occupation in which he qualifies as a 'tipped employee.' " 29 C.F.R. § 531.59.  The employer may only take a tip credit "for hours worked by [an] employee in an occupation in which he qualifies as a 'tipped employee.' " 29 C.F.R. § 531.59.

### 4.A.(ii).   A "Tipped Employee" May Be Assigned "Related Duties" Without Losing His "Tipped Employee" Status

A "tipped employee" is still a "tipped employee," even if she is required to perform non-tip producing duties related to her job. 29 C.F.R. § 531.56(e).  A "waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," for example, does not change her occupation and cease being a waitress merely because she performs those duties; to the contrary, "[r]elated duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips."  *Id.*  Thus, in this case, Plaintiff Roussell did not change her occupation of Server when she worked as a QA on one shift, and then change back when she worked as a Server on her next shift.

The U.S. Department of Labor Field Operations Handbook ("DOL Handbook") also recognizes that 29 C.F.R. § 531.56(e) "permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips. . . ." DOL Handbook § 30d00(e) (Dec. 9, 1988), *available at*

---

[12]   The sub-minimum wage is $2.13 (although a higher wage may be required by state law). 29 U.S.C. §§ 203(m)(1), (2).  This amount was 50% of the minimum wage in 1966, and it has not changed even though the minimum wage has increased.  In this case, Plaintiff seeks to recover the difference between the sub-minimum wage

http://www.dol.gov/esa/whd/foh.[13]  Thus, a server who performs "duties . . . incidental to the duties of the server (waiter/waitress)," continues to be employed in the tipped occupation of server.  *Id.*  The DOL Handbook proposes a limit of 20 percent on the amount of time that tipped employees can perform "general preparation work or maintenance," and suggests that an employer should not utilize the "tip credit" if preparation and maintenance work exceeds that percentage.  *Id.*

In sum, under both 29 C.F.R. § 531.56(e) and the DOL Handbook, a Chili's Server who is assigned to perform the QA function on a particular shift remains a Server and a "tipped employee."  Whether Chili's can take the tip credit for that employee on that shift simply will depend on the amount of time the employee spends during the shift on duties that constitute "general preparation work or maintenance."  DOL Handbook § 30d00(e).

### 4.A.(iii).        Tip Pooling or Tip Sharing

As noted above, with the amendment of subsection 203(m) to address tip pooling in 1974, Congress expressly permitted pooling of tips among "employees who customarily and regularly receive tips."  29 U.S.C. § 203(m).  Two points bear noting.  First, neither subsection 203(m) nor the regulations require that employees receive tips directly from guests to be included in a mandatory tip pool.[14]  To the contrary, "[w]here employees practice tip splitting, as where waiters give a portion of their tips to busboys, the amounts retained by the waiters and

---

and the minimum wage for each shift she worked when a QA was on duty, and reimbursement of tips she shared with QAs as an additional item of damages.  Cmplt. ¶ 22.a.

[13]   While not binding on this Court, the Handbook is a persuasive authority.  *Myers v. The Copper Cellar Corporation*, 192 F.3d 546, 554 (6th Cir. 1999).

[14]   *See Marshall v. Krystal Co.*, 467 F. Supp. 9, 13 (E.D. Tenn. 1978) (waiters, bus persons, and bartenders who "receive customarily and regularly as tips from customers *or by apportionment of such pools* amounts exceeding [the amount required by subsection 203(t)] monthly, each" are eligible to participate in a tip pool (emphasis added)); *see also* DOL Handbook § 30d04(a) ("It is not required that all employees who share in tips must themselves receive tips from customers.").

those given the busboys are considered tips of the individuals who retain them in applying the provisions of subsection [20]3(m) and [20]3(t)." 29 C.F.R. § 531.54. Accordingly, an employee may be "indirectly tipped" and still properly be included in a mandatory tip pool.  Second, the phrase "customarily and regularly" "signifies a frequency which must be greater than occasional, but which may be less than constant."  29 C.F.R. § 531.57.  Thus, whether an employee may properly be included in a mandatory tip pool under subsection 203(m) depends solely on the frequency with which the employee receives tips.[15]

### 4.A.(iv).   "Tipped Employees" Are Different from "Employees Who Customarily and Regularly Receive Tips"

The terms "tipped employee" and "employees who customarily and regularly receive tips" are different, with different meanings and histories. The term "tipped employee" is used solely to describe the employee who may be paid the sub-minimum wage, not to describe who qualifies for a mandatory tip pool.  *See* 29 U.S.C. §§ 203(m), (t).

When Congress amended subsection 203(m) to define who could be in a tip pool, Congress did *not* state that "this subsection shall not be construed to prohibit the pooling of tips among *tipped* employees." Rather, Congress identified individuals properly included in a tip pool as "employees who customarily and regularly receive tips."  29 U.S.C. § 203(m). Accordingly, the statutory language governing who may be subject to a *tip credit* is different from the statutory language governing eligibility for participation in a mandatory *tip pool*.  To be subject to a *tip credit*, that is, to be a "tipped employee," the employee must be "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  *Id.*,

---

[15]   Because the regulation defines "customarily and regularly" in the context of subsection 203(t), it includes a reference to the "occupation" of the employee. Analysis of the employee's "occupation" is an element under subsection 203(t), but "occupation" is not a term or concept included in subsection 203(m), which governs who may be included in a tip pool.

§§ 203(m), (t).  To be eligible to participate in a mandatory *tip pool*, the employee must only

"customarily and regularly receive tips;" he need not also be a "tipped employee."  *Id.*

§ 203(m).[16]

### 4.A.(v).   Employees Who "Customarily and Regularly Receive Tips" Are Not Required to Interact with Guests

Plaintiff has contended in this lawsuit that the phrase "employees who customarily and

regularly receive tips" should be interpreted to mean "employees who customarily and regularly

receive tips and *who have sufficient customer interaction*."  But the legislative history of the

1974 amendments to the FLSA is flatly contrary to Plaintiff's position.  It shows that employees

such as service bartenders who have no customer interaction at all are among the employees who

customarily and regularly receive tips and thus may be included in a mandatory tip pool. *See*

Senate Report 93-690 at 43 (1974).[17]  A list set forth in the DOL Handbook is to the same effect.

DOL Handbook § 30d04(a).[18]

---

[16]   Plaintiff avers that because she, "as a tipped employee, can only be required to contribute to a tip pool from which other *tipped employees* will draw, she is entitled to retain all tips that she was required to tip-out to Defendant's expediters at its Chili's restaurants."  Cmplt. ¶ 13 (emphasis added).  Plaintiff cites 29 U.S.C. § 203(m) for this proposition, but as explained above, subsection 203(m) does not support her position at all.  Apparently, her counsel now agrees.  During status conferences with the Court, he has made clear that whatever the Complaint avers, Plaintiff is not arguing that "tipped employees" can only share tips with other employees who are paid as "tipped employees." He stated:  "That is not our position. Its not our position that only people that are paid at subminimum wage can participate in a tip pool.  They'll win that issue."  *See* Appendix Ex. D.112, Transcript of July 9, 2007 Status Conference at 44.

[17]   The literature on service bartenders establishes that they do not interact with customers.  A "service bar is found in hotels or large restaurants.  It is a behind-the-scenes operation, and there is no contact between the customer and the bartender." P. Van Vleck, *Management and Bartending* 89 (CBI Publishing 1981).  Accordingly, because a service bartender has no customer contact but is tip-eligible, both the legislative history of the 1974 amendments to the FLSA and the DOL Handbook flatly refute Plaintiff's argument that customer interaction is a prerequisite to being an employee who "customarily and regularly receives tips."  *See also* C. Katsigris, *The Bar and Beverage Book* 44 (John Wiley & Sons 1983); W. Randle & L. Valentino, *The Beverage Service World* 37 (Prentice Hall 2001); L. Kotschever & M. Tanke, *Managing Bar and Beverage Operations* 97 (Educational Institute of the American Hotel & Motel Ass'n 1991). The U.S. Department of Labor Dictionary of Occupational Titles, Definitions of Title, Vol. 1 at 41 (3d ed. 1965), distinguishes between a "bartender" who serves drinks to guests, and a "service bartender" who works in the service bar. *Accord* D. Schmitt, *Tips: The Mainstay Of Many Hotel Workers' Pay,* http://www.bls.gov/opub/mlr/1985/07/rpt3full.pdf (1985) (noting the distinction between "public" and "service" bartenders and that "service bartender" is a tipped occupation); Mass.Gen.Laws, Chapter 149, Section 152A(a)

In making the argument that QAs cannot share tips without "sufficient" customer interaction, Plaintiff has relied heavily on *Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999). *Copper Cellar* involved a challenge to the defendant's treatment of "salad preparers" as "tipped employees" for whom the defendant claimed the tip credit, and also included in a tip pool comprised of "the employees who had assisted the servers, including bus boys, runners, [and] service bartenders." *Id.* at 548. On appeal from a judgment for the defendant, the U.S. Court of Appeals for the Sixth Circuit held, "Because the salad preparers abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons,[19] and solely performed duties traditionally classified as food preparation or kitchen support work, they could not be validly categorized as 'tipped employees' under section 203(m)" and accordingly could not properly be included in a tip pool. *Id.* at 550-551.[20]

---

("'Service bartender,' a person who prepares alcoholic or nonalcoholic beverages for patrons to be served by another employee, such as a wait staff employee."); *Krause v. C.I.R.*, Docket No. 10230-90, 1992 WL 95627 (U.S.Tax Ct. May 11, 1992) ("A service bartender works behind the bar in the game or slot machine area and fills orders taken by the cocktail servers, but has no direct contact with the public.").

[18]   To conclude that the QA position at issue in this lawsuit is eligible to participate in our hypothetical mandatory tip pool, the position does not have to be on the DOL's list, which only contains five positions and is not intended to be exhaustive. *See* DOL Handbook § 30d04(a). To the contrary, as businesses evolve, new positions are recognized as eligible for tip pools. *See Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998) (hosts); *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799 (E.D. Ark. 1991) (Maître d'). As in *Kilgore* and *Dole*, this Court can and should determine that because Chili's QAs are part of the customer service team that delivers a quality dining experience to guests, they are eligible to participate in a tip pool even though the position is not on the DOL's 1988 list.

[19]   Here, in contrast, employees working at the Pass Through are visible at many Chili's locations. *See* collected testimony at Appendix Ex. C.4(d), *e.g.*, Carter dep. 47:3-25; 48:1-13; Crowder dep. 38:3-13; Davasher dep. 35:12-15; Dorr dep. 28:13-20; Farinato dep. 28:4-29:5; Hunt dep. 22:6-23:12; Jandera dep. 42:24-43:18; Lewis dep. 47:8-48:7; Oldakowski dep. 14:15-24; Watson dep. 30:21-31:20.

[20]   The court cited its earlier decision in *Kilgore*, 160 F.3d 294, as support for this conclusion, but in doing so misapplied that decision. Defendant discusses *Kilgore* in detail in Section 4.B.(i) of this Memorandum. Suffice to note here that in *Kilgore*, the court recognized that the requirements of subsections 203(m) and 203(t) are different. *See id.* at 301. Accordingly, it is wrong to conclude that because an employee does not meet the requirements of subsection 203(t), he also does not meet the requirements of subsection 203(m). Subsection 203(m) requires only that employees participating in a valid tip pool "customarily and regularly receive tips." Subsection 203(t) requires that the employee satisfy the requirements of subsection 203(m) and also meet the additional requirement that he be "engaged *in an occupation* in which he customarily and regularly receives tips." (Emphasis added.) Congress

To the extent that the court in *Copper Cellar* found that the salad preparers were not "tipped employees" for purposes of the tip credit, the court was correct. An employee making salads is more like a cook than a server, and cooks do not customarily and regularly receive tips. But to the extent that the court found that an employee must directly interact with customers to be included in a mandatory tip pool, the court was incorrect, for the reasons discussed above.[21] In any case, no court has followed *Copper Cellar*, and the district courts in this Circuit are certainly not bound by it. This Court is bound only by the plain language of subsection 203(m), which requires simply that Chili's QAs be "employees who customarily and regularly receive tips" to be properly included in a mandatory tip pool.

In the recent case of *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663 (W.D. Tex. 2007), the court considered the question of whether expediters could be in a tip pool even though they had little customer interaction. The court observed:

> Plaintiff's main contention seems to be that no service personnel other than waiters and busboys may share in the tip pool and that expediters do not have enough direct contact with customers to allow for sharing in the tip pool. . . . Nor does a busboy normally directly receive tips from customers or directly interact with them; yet, busboys are still considered as employees who customarily and regularly receive tips.

*Id.* at 670-671.  Citing 29 U.S.C. § 203(m), the court further observed, "Nothing in the statute specifically requires that an employee who shares in a tip pool interact directly with customers."

---

omitted the requirement that an employee demonstrate that he continues in a particular occupation when establishing the requirements for participation in a tip pool, but not from the requirements limiting an employer's right to take a tip credit.  Thus, although it is clear that an employee who satisfies the requirements of subsection 203(t) also satisfies the requirements of subsection 203(m), it is equally clear that an employee may satisfy the requirements of subsection 203(m) without meeting the additional element stipulated by subsection 203(t).  In *Copper Cellar*, the court did not address whether the salad preparers might have met the requirements of subsection 203(m) even though they were not "tipped employees" under subsection 203(t).

*Id*. at 671 n.5.  Nor can such a requirement be read into the statute, as the legislative history makes clear.  *See* Senate Report 93-690 at 43 (employees who contribute to customer service, like "waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc.," are properly included in tip pool).  Plaintiff's contrary argument that QAs must have "sufficient customer interaction" to be tip-pool eligible is unfounded and simply wrong.

### 4.B.  Chili's QAs Are Eligible to Participate in a Tip Pool As a Matter of Law

Servers at Chili's are "tipped employees," by Plaintiff's own admission.  Cmplt. ¶ 13.[22]

As such, they may be required to share tips with other employees, provided the other employees "customarily and regularly receive tips."  29 U.S.C. § 203(m).  In fact, many Chili's Servers contribute to a tip pool from which Bussers and Bartenders receive tips  (Cmplt. ¶ 12), which they are eligible to do.[23]  *See generally* 29 C.F.R. § 531.54.  Accordingly, the only tips at issue in this lawsuit are those tips that Servers share with QAs.  But these shared tips are just as lawful as those shared with Chili's Bussers and Bartenders, as the undisputed facts show.

---

[21]  Notably, *Copper Cellar* involved a tip pool that included service bartenders.  *See Copper Cellar*, 192 F.3d at 548.  As discussed above, that position does not require *any* customer interaction, yet the inclusion of service bartenders in the *Copper Cellars* tip pool was not challenged.

[22]  The summary judgment record also establishes that Chili's Servers meet the statutory requirements to be "tipped employees." Thus, food servers work in an occupation that customarily and regularly receives tips. 29 C.F.R. § 531.57.  Chili's Servers customarily and regularly receive more than $30 a month in tips working in that capacity. *See* collected testimony at Appendix Ex. C.9, *e.g.,* Alfery dep. 31:1-4; Bandala dep. 24:20-22; Berveiller dep. 6:14-22; Bryant dep. 51:7-11; Dellamano dep. 58:20-22; Donohue dep. 38:25; Downing dep. 66:9-13; Martino dep. 63:6-18; Miller dep. 53:11-14; Myers dep. 8:6-16; Via dep. 19:13-20:8.  Chili's informs its Servers that it will apply the tip credit, and all new Servers receive a copy of the Hourly Employee Handbook which explains the tip credit (*see e.g.*, 2003 Handbook, Chapter 3.14 at 30), and acknowledge receipt of the Handbook in writing. Contractor Decl. ¶ 8 and Appendix Exs. A.1-A.4, excerpts from Brinker Hourly Employee Handbooks for 2003, 2005, and 2006; receipt of Handbook signed by Roussell; *see also* Anderson dep. 66:13-24; Abshire dep. 8:15-9:16; Colbeck dep. 61:14-62:1; Corno dep. 33:6-8; Dorr dep. 19:18-20:20; Jandera dep. 21:8-21.  Accordingly, Chili's satisfies the notice requirements of subsection 203(m) and Servers qualify as "tipped employees" provided they are allowed to keep any tips not shared with eligible co-workers.

[23]  This policy and practice may vary by location based on applicable state law.  *See* Youngman dep. 126:21-23; 132:18-20.

4.B.(i).        QAs Whose Usual Occupation Is Server

As noted above, many Chili's Servers are assigned to work a QA shift from time to time, but the fact of these assignments does not change a Server's occupation of Server or her status as a "tipped employee."  Because of the overlapping nature of their jobs, the duties performed by QAs are part of Servers' ordinary and regular duties.  But even if that were not the case, a Server would still not change her occupation of Server, or her status as a "tipped employee," when performing a QA assignment.  *See* 29 C.F.R. § 531.56(e) ("related duties in an occupation that is a tipped occupation" does not change one's status).  Indeed, the duties that QAs perform are routinely the duties of Servers at restaurants that do not employ QAs and those duties are therefore duties that at the least are "related" to the occupation of Server, if not part of the Server's ordinary and regular duties.  Accordingly, working as a QA does not result in a change of the Server's occupation or loss of her status as a "tipped employee."[24]

Because Chili's Servers retain their status as "tipped employees" when assigned to work as QAs, they can participate in a mandatory tip pool. As the U.S. Court of Appeals for the Sixth Circuit has explained, if an employee is a "tipped employee," that employee by definition "customarily and regularly receives tips."  *Kilgore*, 160 F.3d at 301.

In *Kilgore*, restaurant servers averred that the restaurant owner violated subsection 203(m) by requiring servers to share their tips with hosts, and not just with bussers and bartenders.  The court approached the issue of whether the hosts were properly included in the challenged tip pool from the standpoint of whether they were "tipped employees," noting the relationship between subsections 203(m) and 203(t):

---

[24]   The only question in the case of a Server working a shift as a QA would be whether Chili's would be entitled to the tip credit for that Server's shift.  Because Chili's does not take the tip credit but directly pays its QAs at or above the statutory minimum wage, that question is purely academic and need not be addressed by the Court.

As an initial matter, we note that the subsection 203(m) requirements make up part of the broader subsection 203(t) requirements. Subsection 203(m) requires that in order for a tip pool to be valid, participating employees must be "employees who customarily and regularly receive tips." Subsection 203(t) requires that for an employee to be a tipped employee, the employee must both "customarily and regularly receives (sic) tips," which is identical to the subsection 203(m) requirement, and be "engaged in an occupation in which he customarily and regularly receives tips." *Thus, if a tip-pool participating employee fulfills the subsection 203(t) requirements, she necessarily fulfills the subsection 203(m) requirements as well.* Because we find that the subsection 203(t) requirements are satisfied here, it follows that the subsection 203(m) requirements are satisfied as well.

*Id.* at 301 (emphasis added). The court held that hosts were "tipped employees," reasoning that hosts "receive tips from the tip outs by servers" and "perform important customer service functions." *Id*. Having determined that the hosts were "tipped employees," they necessarily were allowed to participate in the tip pool. *Id*. at 301-02.

As *Kilgore* demonstrates, Chili's Servers are "tipped employees" whether they are working a shift as a Server or QA. Thus, by definition they "customarily and regularly receive tips" and can properly be included in a mandatory tip pool. Defendant is entitled to summary judgment on the claim that Servers cannot be required to share tips with Servers who sometimes work as QAs.

### 4.B.(ii).    QAs Whose Usual Occupation Is Server Helper

Defendant is also entitled to summary judgment on the claim that Servers cannot be required to share tips with co-workers who only work as QAs. These QAs, just like the QAs who also work as Servers, are "server helpers" and in that capacity are "engaged in an occupation in which [they] customarily and regularly receive more than $30 a month in tips." 29 U.S.C. § 203(t). *E.g.,* Linville dep. 29:15-25; Oldakowski dep. 23:8-20; Kaddy dep. 63:24-64:12; Zayas dep. 30:20-31:13. Accordingly, because these server helpers qualify as "tipped employees," by

definition they "customarily and regularly receive tips" (*Kilgore*, 160 F.3d at 301) and are eligible to participate in a mandatory tip pool.  But regardless of whether they are "tipped employees," they are undisputedly employees who "customarily and regularly receive tips" and are therefore tip pool eligible under subsection 203(m).  The duties of server helpers are analogous to those of bussers and bartenders – all these functions are integral to delivering quality customer service – and bussers and bartenders have long been recognized as eligible for tip pooling.[25]  There is no basis for treating QAs who work as server helpers any differently.

As noted above, the DOL Handbook provides a non-exclusive list of employees who customarily and regularly receive tips.  *See* DOL Handbook § 30d04(e).  Included on that list are "busboys/girls (server helpers)." An article published in 1985 by an economist with the U.S. Department of Labor Bureau of Labor Statistics likewise noted that "waitress assistants" work in a "tipped occupation."  D. Schmitt, *Tips: The Mainstay Of Many Hotel Workers' Pay,* at 50. A QA, no less than a busser, works as a "server helper" or a "waitress assistant" and could be included in a mandatory tip pool at Chili's.  *See also Lentz*, 491 F. Supp. 2d at 671.  There is no contrary authority.

QAs clearly assist Servers.  QAs concentrate their efforts on the Servers' duties in the Pass Through, generally allowing the remaining Servers to focus their attention on the Dining Area of the restaurant. This division of labor helps the Servers deliver service to the guests.  *See* Bandala dep. 40:20-41:4; Berveiller dep. 15:14-16:5; collected testimony at Appendix Ex. C.6, *e.g.,* Beaulieu dep. 47:21-48:10 (having a QA on shift frees her up to spend time with guests); Carbone dep. 177:10-17 (QAs make her "look good" to the customer); Carver dep. 13:6-9;

---

[25]   *See* DOL Handbook § 30d04(a).  More recently, hosts and maîtres d's have also been recognized as tip-pool eligible.  *See* n.18 above.

Connolly dep. 18:13-19:11; Conrady dep. 21:8-23; Davis dep. 90:17-91:3; Dorr dep. 29:2-39:19; Evans dep. 69:16-23; Flanagin dep. 57:19-21; Goodwin dep. 20:7-21; Gray dep. 47:25-48:8; Green dep. 24:6-11; Kaddy dep. 58:21-59:5; McLean dep. 35:25-36:14; Montoya dep. 41:15-42:3; Nicholas dep. 50:25-51:12; Williams dep. 41:17-42:9; Evans dep. 38:10-15 (QAs are helpful to Servers, just like Bartenders and Bussers); Hill dep. 44:22-45:9; Myers dep. 14:16-15:8, 18:3-15; Phillips dep. 34:4-25, 35:1-4; Roussell dep. 162:21-163:11.[26]  Thus, the QA position is clearly similar to – and should be included with – positions acknowledged by the DOL that customarily and regularly receive tips.

To the extent Plaintiff attempts to argue that QAs are more like cooks involved in food preparation (and thus tip-pool ineligible), comparable to the issue in *Copper Cellar*, 192 F.3d 546, or bussers involved with customer service (and therefore eligible), it is helpful to consider the dichotomy between services and products. This dichotomy was explained by Professor Mike Lynn of Cornell University, the "leading empiricist on tipping in the United States."  *See* Revised Expert Report of Mike Lynn, Ph.D. ("Lynn Report"), Appendix Ex. E, at 1.  Professor Lynn testified that QAs perform a job that is similar to the positions that customarily and regularly receive tips, and dissimilar to the positions that are not eligible to participate in tip pools, distinguishing between food production and customer service in the following ways:

- Cooks create the product; the QAs do not. QAs provide services; cooks do not. Products, such as food, are tangible; services are intangible. Products are produced and consumed at different points in time; services tend to be produced and consumed simultaneously or near simultaneously. Accordingly, the QAs provide service and do not create the product.

---

[26]  Significantly, Plaintiff is not complaining in this case about sharing tips with bartenders, bussers or hosts, who Plaintiff's witnesses agree also assist Servers in performing their duties.  *E.g.*, Acosta dep. 52:24-53:10 (bussers); Donohue dep. 36:4-13 (bussers); Held dep. 34:7-13 (bartenders), 40:25-41:4 (hosts); Crowder dep. 40:12-19 (hosts).

- The similarity of two items can be assessed by the extent to which one is a substitute for the other. In the absence of a QA, the tasks performed by the QA would be performed by the server, not the cooks. Therefore, the QA position is more like a server than a cook.

- The activities performed by QAs have a bigger impact on service than on the quality of the food.

Lynn dep. 139:7-143:15; *see also* Lynn Report, Ex. E, at 3-7; collected testimony at Appendix

Ex. C.10, *e.g.*, Allen dep. 42:17-43:13, 50:10-23 (QAs may order re-cooks; they don't cook

themselves); Conrady dep. 19:22-24 (QAs do not slice food); Exeler dep. 39:16-21 (QAs do not

cook).

Both the law and the literature establish that QAs are properly considered "server

helpers" who could be included in a mandatory tip pool at Chili's.  There is no basis for

Plaintiff's contrary claim.

### 4.C.      QAs at Chili's Have Customer Interaction

Although substantial customer interaction is not required for an employee to qualify for

participation in a tip pool, the testimony of the QAs taken in this case demonstrates convincingly

that the QA job indeed involves substantial customer interaction.[27] That interaction comes in

various forms:

- Many QAs deliver food to guests in the Dining Area.  Allen dep. 33:8-22, 54:5-21; Berveiller dep. 23:22-24; Carbone dep. 102:17-103:12; Carver dep. 9:10-17; Connolly dep. 25:20-26:3; Conrady dep. 16:21-17:1; Davis dep. 61:9-13; Evans dep. 68:16-20; Folsom dep. 33:19-34:3; Fox dep. 29:18-25; Garner dep. 39:22-40:4; Gray dep. 57:16-58:25, 63:20-6:24; Hart dep. 35:5-17; Johnston dep. 6:15-8:19, 9:6-21, 38:10-12; Kaddy dep. 39:5-10; Latka dep. 14:25-15:7, 28:1-29:14;

---

[27] Plaintiff may argue that some QAs have less customer interaction than others, and indeed some have very little customer interaction. The work habits of those particular QAs, however, do not define the overall role of the position within the organization. It is undisputed that many QAs have regular and substantial customer interaction. In any event, variances in degree of customer interaction among individual QAs by restaurant, shift, season, server experience level, and manager on duty demonstrate why this case cannot be tried collectively.  *See* Dft's MTD § 3.A.  To the extent that Plaintiff relies on the level of QA customer interaction in opposing summary judgment, she can successfully argue that Servers who tip out QAs having more than *de minimis* customer interaction have any claim.

Linville dep. 22:1-13, 23:11-17, 35:1-5; Mason dep. 15:6-16:9; D. McDonald dep. 30:24-25, 31:1-8; McVicker dep. 9:1-25, 10:23-11:3; Nass dep. 36:8-38:20; Oldakowski dep. 33:16-35:19, 48:7-16, 70:10-16; Phillips dep. 24:17-25:5, 25:24-26:24, 37:8-21; Plane dep. 66:7-16; Roberson dep. 43:7-21; Rumski dep. 21:3-17; Spears dep. 64:20-65:17; Stallings dep. 15-17.

- Many QAs deliver food to guests in the Bar.  Berveiller dep. 9:25-10:4, 14:12-17; Connolly dep. 18:13-19:6, 21:3-5; Edwards dep. 28:13-29:4; Folsom dep. 45:9-46:3; Fox dep. 18:20-25, 48:17-22, 49:13-19, 50:16-18; Green dep. 25:14-19; Hunt dep. 63:7-19; Johnston dep. 38:6-14, 72:2-16; Latka dep. 12:5-19, 40:14-41:9; Lewis dep. 30:1-18; D. McDonald dep. 32:6-16; McVicker dep. 12:20-22; Owen dep. 11:6-15, 18:23-19:13; Phillips dep. 37:8-40:2; Roberson dep. 32:14-19, 33:11-34:2, 43:7-21, 44:7-24; Sawyer dep. 23:11-18; White dep. 29:21-31:4.

- Many QAs speak with guests and take orders from them.  Allen dep. 33:23-34:16, 45:14-46:13; Anderson dep. 47:9-14; Beaulieu dep. 52:25-53:8; Connolly dep. 15:21-16:21, 22:9-18, 23:9-18, 24:2-25:12; Conrady dep. 37:25-38:8; Davis dep. 62:24-63:20; Edwards dep. 30:3-32:4; C. Fox dep. 16:22-26:12; D. Fox dep. 21:10-18; Gray dep. 59:16-61:24; Green dep. 28:21-31:1; Hunt dep. 30:16-31:12; Jenkins dep. 17:15-19; Latka dep. 13:3-17; Mason dep. 27:21-28:3; D. McDonald dep. 33:3-10; McVicker dep. 9:21-10:11; Nass dep. 39:7-22; Oldakowski dep. 16:5-24, 33:6-24, 34:1-24, 35:1-19; Roberson dep. 39:16-41:4; Sawyer dep. 25:5-12; Wamsley dep. 24:23-26:17; Watson dep. 74:10-6.24; White dep. 31:4-21, 68:1-9.

The quantity and character of this customer interaction is comparable to that which the court found sufficient in *Kilgore* for hosts to be deemed "tipped employees," and further supports the conclusion that the QAs who function as server helpers here are also tip eligible.  *See Kilgore*, 160 F.2d at 301. To borrow from *Kilgore*, one can distinguish QAs "from restaurant employees like dishwashers, cooks, or off-hour employees like an overnight janitor who do not directly relate with customers at all." *Id*. Thus, even if the inquiry is whether QAs meet the two-part test of subsection 203(t), and not merely the narrower, one-part test of subsection 203(m), it is plain that QAs have the necessary customer interaction to qualify as "tipped employees," and not merely employees who qualify under subsection 203(m) to share tips.

5.    CONCLUSION

QAs at Chili's do the same work as Servers, are tip eligible and customarily and regularly receive tips, and are entitled to participate in a tip pool.  No genuine issue of material fact is presented, and Defendant is entitled to a judgment as a matter of law.  For all the foregoing reasons, Defendant's motion for summary judgment should be granted and this action should be dismissed.

DATED:  December 17, 2007.

Respectfully submitted,

/s/ Fraser A. McAlpine
**Fraser A. McAlpine**
State Bar No. 13321300
Federal I.D. No. 3407
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
(713) 220-5800 (telephone)
(713) 236-0822 (facsimile)

ATTORNEY-IN-CHARGE FOR DEFENDANT
BRINKER INTERNATIONAL, INC.

Of COUNSEL:
**Jordan Cowman**
Federal I.D. No. 14468
State Bar No. 4932800
**Marcia N. Jackson**
State Bar No. 24008411
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
(214) 969-2800 (telephone)
(214) 969-2828 (facsimile)

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 17th day of December, 2007, I served a true copy of

**DEFENDANT BRINKER INTERNATIONAL, INC.'S**

**MOTION FOR SUMMARY JUDGMENT**

by Notice of Electronic Filing on known Filing Users or by certified mail, return receipt

requested, on unknown Filing Users addressed as follows:

> Martin A. Shellist, Esq.
> Shellist & Lazarz LLP
> 1900 West Loop South
> Suite 1910
> Houston, Texas 77027

> Daryl J. Sinkule, Esq.
> Shellist & Lazarz LLP
> 1900 West Loop South
> Suite 1910
> Houston, Texas 77027

> Richard J. Burch
> Bruckner Burch PLLC
> 1000 Louisiana, Suite 1300
> Houston, Texas 77002

> Laura L. Ho
> David Borgen
> Goldstein, Demchak, Baller, et al.
> 300 Lakeside Dr., Suite 1000
> Oakland, California 94612

/s/ Fraser A. McAlpine

**Fraser A. McAlpine**

25