UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER ROUSSELL, on Behalf of Herself and Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BRINKER INTERNATIONAL, INC., <br><br> Defendant. | § <br> § <br> § <br> § <br> § CIVIL ACTION NO. H-05-3733 <br> § <br> § <br> § <br> § <br> § |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Decertify. For the following reasons, the Court finds that Defendant's Motion, Doc. No. 65, should be **GRANTED IN PART**.

I.  BACKGROUND

This is a Fair Labor Standards Act (FLSA) collective action brought on behalf of approximately 3,500 servers at different Chili's restaurants who claim that Defendant, which owns the restaurants, unlawfully required them to share tips with Quality Assurance employees (QAs). In July 2008, the Court denied Defendant's Motion for Summary Judgment and granted Plaintiffs' Motion to Strike Defendant's tipping expert. In the July 2008 Memorandum and Order, the Court also considered Defendant's Motion to Decertify. The Court held that the question of whether QAs were eligible to participate in a mandatory tip pool could be tried collectively, but found that the question of manager coercion could not be fairly tried using representative testimony based on Plaintiffs' original trial plan. The Court then invited Plaintiffs to propose an alternative trial plan that might render the use of representative testimony workable. The Court also observed that it would consider

proceeding with a trial of a small number of opt-in Plaintiffs in order to clarify whether it was possible for this lawsuit to proceed collectively.[1]

## II.   PLAINTIFFS' REVISED TRIAL PLAN

Plaintiffs now propose dividing this case into three phases. Plaintiffs propose that the Court first adjudicate in a single trial the question of whether QAs are eligible under the FLSA to participate in a mandatory tip pool. If the first jury finds that QAs were not eligible to participate in a mandatory tip pool, Plaintiffs propose that, in Phase Two, a second jury consider whether a test flight of 20 to 50 of the opt-ins deposed in this case were coerced or required to share tips with QAs.[2] The second jury would also decide the question of damages with regard to those opt-in Plaintiffs. According to Plaintiffs, Phase Two would allow the Court to resolve fully the claims of the 20 to 50 opt-in Plaintiffs and would, *inter alia*, clarify legal and evidentiary issues necessary to fully adjudicate such claims. In Phase Three of the Revised Trial Plan, Plaintiffs propose that the Court hold a case management conference to discuss and schedule any discovery necessary to organize and/or group the remaining opt-in Plaintiffs' claims. The parties would subsequently try flights of the remaining opt-in Plaintiffs before different juries. These flights would be organized based on type of coercion, geographic location, or some other criteria identified in the Phase Three discovery, allowing the use of representative testimony, or would involve individual determinations of liability and damages.

---

[1] The Court's findings of fact and analysis in the July 2008 Order are incorporated in full into the present Memorandum and Order.
[2] This proposal stems, in part, from the Court's finding in its July 2008 Order that the deposed opt-ins appear to be similarly situated.

## III. ANALYSIS

Plaintiffs argue that the Revised Trial Plan is the fairest and most efficient means to adjudicate the opt-in Plaintiffs' claims. Defendant contends, however, that the Revised Trial Plan is unworkable, fails to address the concerns expressed in the Court's July 2008 Memorandum and Order, would violate Defendant's due process rights, and raises Seventh Amendment problems. The Court reluctantly concludes that Defendant's request to decertify this collective action must be granted.

Plaintiffs' Revised Trial Plan does not fully resolve the difficulties of trying this lawsuit collectively. Under certain circumstances, the Fifth Circuit has upheld separate trials by different juries of collective and individual issues in class action lawsuits. *See, e.g., Watson v. Shell Oil Co.*, 979 F.2d 1014 (5th Cir. 1992); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999). Although *Watson* involved individualized issues of injury, causation, and quantum, it was a case based on one explosion at a single Shell manufacturing plant, and the general question of liability could be tried collectively. 979 F.2d at 1017-18. *Mullen* involved only a few hundred employees who alleged that they suffered respiratory illnesses caused by a single casino's defective or improperly maintained air-conditioning and ventilating system. Although this case does not involve millions of class members or complex choice of law questions as did *Castano v. Am. Tobacco*, 84 F.3d 734 (5th Cir. 1996), it involves more complicated and individualized circumstances than both *Watson* and *Mullen*. This case is brought on behalf of 3,500 opt-in Plaintiffs who worked in approximately 775 Chili's restaurants in 45 different states. One of the questions central to liability in this case is whether Plaintiffs were coerced by different managers at the 775 stores to share tips with QAs. Plaintiffs' Revised Trial Plan does not demonstrate that this question

can be fairly tried collectively,[3] and, as further explained below, the Court does not believe that trying all 3,500 opt-in Plaintiff's claims of manager coercion individually in separate trial flights is appropriate in this lawsuit.

In its July 2008 Memorandum and Order, the Court recognized that the broad remedial purposes of the FLSA and the purposes of Section 216 of the FLSA militate in favor of allowing this lawsuit to proceed collectively. "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman v. LaRoche*, 493 U.S. 165, 170 (1989). The need for collective action lawsuits under FLSA is particularly important because, as one district court has noted, plaintiffs can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action." *Bradford v. Bed Bath and Beyond*, 184 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002). Mindful of these purposes, the Court must recognize, however, that collective treatment is only justified in cases in which plaintiffs are similarly situated and where proceeding collectively will not render trial unfair to defendants. Even though Plaintiffs' Revised Trial Plan seems more efficient than the prospect of 3,500 individual lawsuits in 45

---

[3] Plaintiffs continue to maintain that the question of coercion can be tried using representative testimony because the deposed opt-ins' testimony demonstrates a pattern and practice of coercion. Although the deposed opt-ins all complained of some kind of coercion by managers in their respective stores, the Court cannot conclude on the basis of this testimony that the opt-ins in the remaining stores and states were necessarily coerced by other managers to share tips with QAs. To the extent that the deposed opt-ins' testimony could be considered evidence of a pattern and practice of behavior, it would be confined to the managers and/or stores that the deposed opt-ins represent. Although this testimony raises serious questions about the practices of a number of Chili's restaurants, the Court does not believe that Plaintiffs have presented enough evidence of a pattern and practice of coercion at *all* Chili's restaurants to render representative testimony by deposed opt-ins on behalf of all 3,500 opt-ins workable. Plaintiffs' Revised Trial Plan does not propose any sub-classing or grouping of the opt-in Plaintiffs until Phase Three, and even then, only after additional discovery. While the Court understands that determining sub-classes at this stage of litigation might be costly for Plaintiffs, the Court does not believe it is appropriate to proceed through two complicated trial phases without knowing whether one of the most important issues in the case can be tried collectively.

states, it does essentially leave open the possibility of over 3,000 individual "mini-trials" in Phase Three on a key issue of liability. Although Congress clearly intended similarly situated plaintiffs to be able to proceed on a collective basis, this lawsuit involves critical questions of fact that vary from plaintiff to plaintiff and restaurant to restaurant, and does not allow resolution of the case in a single collective proceeding. The remedial purposes of the statute do not justify proceeding collectively in a case that involves as many disparate circumstances as this one. Furthermore, although the Seventh Amendment problems do not appear to be as extensive as Defendant argues, there does appear to be some risk that the division of this trial in the manner proposed by Plaintiff would require different juries to pass on some common issues of fact. *See, e.g., Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 499-500 (1931) (finding that different juries may decide discrete and separable issues); *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 -305 (5th Cir. 1993) ("[I]nherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact." (citing *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978)).

For these reasons and for those reasons expressed in the July 2008 Memorandum and Order, the Court therefore finds that Plaintiffs' Revised Trial Plan does not render this case suitable for collective action under Section 216 of the FLSA.

## IV. CONCLUSION

The Court realizes that its decision to decertify may be met by a flurry of motions to intervene by many of the opt-in Plaintiffs, and will address that issue at the appropriate moment. The Court previously found that the deposed opt-ins are similarly situated. It is not, therefore, clear whether the claims of the deposed opt-in Plaintiffs or the claims of other opt-

in Plaintiffs who worked at their restaurants should be dismissed. The Court will set a status conference to discuss which of the opt-in plaintiffs should be dismissed from this lawsuit and which should remain. In the meanwhile, the Court finds that Defendant's Motion to Decertify should be **GRANTED IN PART.** The claims of the deposed opt-in Plaintiffs and the non-deposed opt-in Plaintiffs who work at their restaurants have not yet been decided. The other opt-in Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 30th day of September 2008.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE