## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JENNIFER ROUSSELL, on Behalf of Herself and Others Similarly Situated,** | § § § | |
| **Plaintiffs,** | § § | |
| | § | **CIVIL ACTION NO. H-05-3733** |
| **v.** | § § | |
| **BRINKER INTERNATIONAL, INC.,** | § § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the Motion to Intervene (Doc. No. 183) of Plaintiff-Intervenors Jonathan Aceves, et al. ("Movants") and Defendant's Motion to Decertify (Doc. No. 65.) Having considered both Motions, the Responses thereto, and the applicable law, the Court finds that Movants' Motion to Intervene should be denied and Defendant's Motion to Decertify should be granted in part and denied in part.

## I. INTRODUCTION

This case involves a Fair Labor Standards Act (FLSA) collective action brought on behalf of approximately 3,500 servers at different Chili's Bar & Grill restaurants. Plaintiffs claim that Defendant, which owns the restaurants, unlawfully required them to share tips with Quality Assurance employees (also know as Expeditors, or Expos, collectively "QAs"). Defendant maintains that servers voluntary shared tips with QAs and even if some servers were coerced, it was lawful to include the QAs in the tip pools due to the actual duties QAs performed.

In July 2008, the Court denied Defendant's Motion for Summary Judgment and granted Plaintiffs' Motion to Strike Defendant's tipping expert. (July 2008 Order, Doc.

No. 165.) The Court evaluated Plaintiffs' proposed trial plan in August under the rubric of the second stage of the FLSA § 216(b) certification process. (*Id.* at 28-49.) The Court found that individualized inquiries rendered the case unsuitable for collective action under FLSA, but invited Plaintiffs to offer a revised trial plan that would resolve the difficulties and render the use of representative testimony reasonable. (*Id.* at 49.) The Court has thus far rejected all proposed trial plans. In September 2008, the Court granted in part Defendants' Motion to Decertify by decertifying all opt-ins except the deposed opt-ins and those who worked at the same restaurants as the deposed opt-ins.[1] (Sept. 2008 Order, at 5-6, Doc. No. 172.) Subsequently, the Court tolled the statute of limitations for 45 days following the entry of the September Order.

As the Court noted in its September 2008 Order, although the deposed opt-ins all complained of manager coercion at their respective stores, "the Court cannot conclude on the basis of this testimony that the opt-ins in the remaining stores and states were necessarily coerced by other mangers to share tips with QAs. To the extent that the deposed opt-ins' testimony could be considered evidence of a pattern and practice of behavior, it would be confined to the managers and/or stores that the deposed opt-ins represent." (Sept. 2008 Order, at 4 n. 3.) On the other hand, the Court has determined that a "jury could … determine that the QAs generally are or are not eligible to participate in a mandatory tip pool." (July 2008 Order, at 33.)

Defendant's Motion for Decertification is still pending as to the deposed opt-ins and the opt-ins at the same stores as the deposed opt-ins.  In addition, 422 of the

---

[1] The Court's findings of fact and analysis in the July 2008 and September 2008 Orders are incorporated in full into the present Memorandum and Order.

dismissed opt-ins seek to intervene in Plaintiffs' action.[2] The Court must now decide the status of opt-ins who remain in the collective action and address the Motion to Intervene filed by those who have already been decertified.

## II. DECERTIFICATION

### A. Opt-ins at the Same Stores as Deposed Opt-ins

Plaintiffs argue that the deposed opt-ins' testimony demonstrates there were store-wide practices intended to facilitate tip-outs to QAs. They cite deposition testimony regarding policies posted on bulletin boards, managers requiring verification of tip outs before the servers could check out of their shifts, and new employee training that included instructions on tipping out the QAs. (Pl. Supp. Br. at 3, Doc. No. 184.) Defendant responds that Plaintiffs have failed to demonstrate that it is possible to establish a pattern or practice of coercion, or even a store-wide practice of coercion, requiring servers to share tips with QAs.

Defendant contends that the proffered deposition testimony does not provide support for the contention that every one of the 56 deposed opt-ins testified to being subject to a store-wide management facilitation of tip outs (Def. Resp. at 10, Doc. No. 194.) In particular, many of the deposed opt-ins testified about individual experiences rather than general practices. Defendant further argues that, because deposed opt-ins' employment dates did not completely overlap with the non-deposed opt-ins' dates, the deposed opt-ins lack personal knowledge to provide representative testimony regarding the non-deposed opt-ins who worked at their stores. (Def. Resp. at 11, Doc. No. 194; Decl. Justin Smith Tab 2, Doc. No. 195.)

---

[2] Plaintiffs anticipate that other dismissed opt-ins will seek intervention and plan to file these Motions in a timely fashion. As of today, no other opt-ins have moved to intervene.

When employees share the same job title, work in the same location, and allege the same FLSA violation at common locations, courts find them similarly situated. *See Hill v. Muscogee County School Dist.*, No. 4:03-cv-60 (cdl), 2005 WL 3526669, at *1-4 (M.D. Ga. Dec. 2005); *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *4-7 (M.D. Tenn. Sept. 26, 2006). In these cases, however, courts discern an allegedly improper practice that existed throughout the defendant's locations through the operation of an official or de facto central policy. *See, e.g., Pep Boys*, 2006 WL 2821700, at *6; *Hill*, 2005 WL 3526669, at *3 ("[I]f the decision makers all employ the same practice to deny overtime compensation, one justifiable inference which arises is that the pattern of violations was not coincidental but resulted from the application of a central policy"); *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-cv-1018, 2007 WL 2780504 (D. Minn. Sept. 24, 2007) (holding that where the employer has decided not to require that its employees be paid for donning and doffing sanitizing clothes and equipment, and where no supervisor keeps track of the donning and doffing time, plaintiffs' claims may be tried collectively); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 264-65 (D. Conn. 2002) (holding that where the deposition testimony and affidavits supplied suggest that the actual job duties are quite similar, the employer classifies all the plaintiffs in the same category, the case may properly be tried collectively using generalized proof). Where the differences are immaterial or outweighed by the evidence demonstrating a class is similar, a unified policy is not necessary. *See Pendlebury v. Starbucks Coffee Co.*, 518 F.Supp. 2d 1345, 1362 (S.D. Fla. 2007). As the Court noted in its July 2008 Order, the *Pendlebury* court held that the "unified policy, plan or scheme" standard "is more appropriately applied at the first stage of the analysis." *Pendlebury*, 518 F.Supp. at 1348

4

n.3; (July 2008 Order, at 31.) Where, however, job experiences differ to such an extent that the Court may not make a reliable inference about an important issue in the case regarding the class as a whole, decertification is proper. *See, e.g., Big Lots, Inc.*, 561 F.Supp.2d at 587-88; *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008).

Here, the Court has previously noted that, "to the extent that the deposed opt-ins' testimony could be considered evidence of a pattern or practice of behavior, it would be confined to the managers and/or stores that the deposed opt-ins represent." (Sept. 2008 Order, at 4.) The Court now refines this statement and concludes, for the purposes of Defendant's Motion for Decertification, that there is insufficient evidence to support the inference that deposed opt-in's statements are representative of other opt-ins at their stores over the entire claim period. Specifically, the Court is concerned that the store management could have turned over several times during the claim period, different managers could have addressed the issue differently, and each deposed opt-in's version of the management coercion may only be relevant to the periods in during which she or he worked. *See also* (July 2008 Order, at 46, 47 "The question of whether managers coerced servers into sharing tips with QAs, under the particular facts of this case, does appear to turn on the actions of individual managers at hundreds of stores across the country…"; "Although the Court disagrees that this case requires an analysis of how each individual server subjectively interpreted or relied on managers' oral statements, there is some variation in the representations made by individual managers that makes collective treatment or trial by representative testimony in this case at least more difficult.") Plaintiffs have failed to provide a workable trial plan that allows the Court to try the

question of manager coercion collectively using representative testimony even at the store level. In light of this lack of sufficient evidence, Plaintiffs have not met their burden to establish that the opt-ins at the same stores as the deposed opt-ins are similarly situated such that they should remain in the action. (Sept. 2008 Order, 4 n. 3.)

### B. Regional Standards and Local Options

Plaintiffs re-urge their argument that Defendant had regional standards such that stores in those regions operated under a uniform policy "recommending" that servers share tips with QAs. In addition, Plaintiffs proffer 21 written store policies ("Local Options") that they claim instruct or encourage servers to tip out their QAs. They argue that there are a number of additional stores where the opt-ins are similarly situated to the deposed opt-ins because of the Local Options and/or regional standards, and, therefore, these opt-ins should be reinstated in the action. Defendant argues that Plaintiffs have failed to lay the proper evidentiary foundation to show how or when the regional polices or Local Options were implemented by the Defendant or that the policies/Options had an improper effect on the conduct of the opt-ins.[3]  (Def. Br., at 15.)

Proper subclassing requires a balance between manageability and providing a representative sample of the whole. *Golden Plump Poultry, Inc.*, 2007 WL 2780504, at *5. The Court previously noted that, while subclassing by region is a plausible argument,

---

[3] Defendant argues that Plaintiffs have waived their opportunity to present a new trial plan based on any type of subclassing, whether regional or local, by waiting until this stage of the litigation to present a workable trial plan based on this concept. Plaintiffs respond that the request to include same-store and the regional and Local Option opt-ins is a clarification rather than a change in the trial plan. The Court is not persuaded by the waiver argument. It acknowledges that Plaintiffs' proposed plan to include opt-ins from stores covered by regional standards or Local Options comes late in the game. Plaintiffs, however, have urged this argument prior to the Court's final decertification order. *Cf. Anderson v. Cagle's Inc.*, 488 F.3d 945, 955 n.9 (11th Cir. 2007) (holding that plaintiffs had waived their argument on appeal that the district court must create subclasses to manage the collective action by failing to cite legal authority to the district court); *Sears v. Atchison, Topeka, & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455-56 (10th Cir. 1984) (holding that the plaintiffs had waived their argument that the district court must designate subclasses by failing to raise it throughout the trial and the first appeal).

based on the proffered standards and the evidence submitted at that point, it was unclear how these standards were enforced and for what time period. (July 2008 Order, at 37 n. 53.) Subclassing by store, in addition to the concerns with respect to the regional standards, seems impracticable and inefficient given that opt-ins represent hundreds of stores across the country and would require hundreds of separate trials. In addition, the regional standards clarify that any tip-outs of the QA are voluntary. *See, e.g.*, (Doc. No. 185, Ex. 4, 5.) Some of the Local Options presented also contain voluntary language. *See, e.g.*, (Doc. No. 185, Ex. 12, 15, 18 19.)  Some of the Local Options suggest that tip-outs are recommended to keep QAs happy, and others use stronger language. More fundamentally, however, the Court reiterates its concern that it is unclear how these Options or standards were enforced, and when and how they were posted. As it concluded before, the Court will not subclass based on such inconclusive evidence, nor will it recertify those working at stores with Local Options at which deposed opt-ins also worked or those working in regions with regional standards in which deposed opt-ins also worked.

### C. Bifucation of the Trial

Plaintiffs renew their request to bifurcate the trial to maximize the efficiency of the litigation and preserve the Defendant's Seventh Amendment jury trial rights. Defendant responds that the Plaintiffs have not yet presented a viable trial plan.

In its September 2008 Order, the Court noted "Plaintiffs' Revised Trial Plan does not fully resolve the difficulties of trying this lawsuit collectively." (Sept. Order, at 3, Doc. No. 172.) The Court held that Plaintiffs' trial plan does not demonstrate that the issue of coercion can be tried collectively or in flights and noted possible Seventh

Amendment problems. (Sept. 2008 Order, at 5.) The Court acknowledges that bifurcation of affirmative defenses may serve the interests of judicial economy in certain cases, perhaps suggesting that bifurcation of liability issues is also appropriate. *See Greening v. B.F. Goodrich Co.*, No. 90 C 2891, 1993 WL 134781, \*3 (N.D. Ill. Apr. 23, 1993); *Callahan v. U.S. Filter, Inc.*, No. 01-cv-6406, 2005 WL 61498 (W.D.N.Y. Jan. 11, 2005). Where, as here, under any of Plaintiffs' proposed trial arrangements, there are hundreds, if not thousands, of individualized claims that would have to be adjudicated should the jury find that QAs are not eligible to participate in a tip pool, the Court reiterates that the interests of judicial economy are not served by certification and bifurcation of the action.

## III. MOTION TO INTERVENE

Movants seek to intervene as of right or through permissive intervention. FED. R. CIV. P. 24(a)-(b).

### A. Intervention as of Right

Movants argue that they are entitled to intervene as a matter of right because their claims could be adversely affected by the Court's ruling in the *Roussell* litigation on issues including whether QAs are tipped employees under FLSA. In addition, Movants argue that the current parties cannot adequately protect their interests because the September 2008 Order determined that their claims involved separate factual considerations. Defendant responds that the Movants do not have a protectable interest in the transaction at issue in *Roussell*. In addition, they argue that the prospective interests would not be impeded or impaired as a practical matter through resolution of the *Roussell* litigation.

A person may intervene as of right if the application is timely, and the intervenor "claims an interest relating to the ... transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). Failure to satisfy any element precludes the applicant's right to intervene. *Haspel & Davis Milling & Planting Co., Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee District*, 493 F.3d 570, 578 (5th Cir. 2007); *Ross v. Marshall*, 426 F.3d 745, 751 (5th Cir. 2005). The (a)(2) inquiry is a "flexible one, which focuses on the particular facts and circumstances surrounding each application" and "intervention of right must be measured by a practical rather than technical yardstick." *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

### 1. Timeliness

The statute of limitations for individuals who file consent forms in a § 216(b) action is tolled until collective treatment is denied. While preserving its right to assert that any of the opt-ins' consents were timely filed, Defendant does not dispute that Movants meets this requirement.

The Fifth Circuit has set forth a four-factor analysis to determine whether a motion to intervene is timely: (1) the length of time that the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice that existing parties may suffer as a result of would-be intervenor's failure to apply for intervention as soon as he knew, or should have known, of his interest; (3) the extent of prejudice that would-be intervenor would suffer if his petition for leave to intervene is denied; and (4) the existence of unusual

circumstances militating either for or against a determination that the application is timely. *Ross*, 426 F.3d at 753-54; *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977). The analysis is contextual, and the requirement is not a tool of retribution, but, rather, a guard to insure the original parties are not prejudiced by the failure to apply sooner. *Sierra Club v. Espy*, 18 F.3d at 1205; *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *John Doe No. 1 v. Glickman,* 256 F.3d 371, 375 (5th Cir. 2001); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970) (quoting Note, The Requirements of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va. L. Rev. 863, 867 (1951)).

### 1.1 Awareness That Interests Were No Longer Protected

Movants argue that their Motion is timely because it was filed shortly after the Court's partial decertification Order and within the equitable tolling period established by the Court. The time that the would-be intervenors become aware of the pendency of the case is not relevant to the inquiry. *Stallworth*, 558 F.2d at 265. When would-be intervenors filed their motions a month to five months after the publication of the notice of a consent decree affecting their rights, however, the motion was not untimely. *See Edwards v. City of Houston*, 78 F.3d at 1000 (collecting cases); *Sierra Club v. Espy*, 18 F.3d at 1206 (holding that a motion was timely when the intervenors filed their motion less than three weeks after they learned that the defendant would not protect their interests).

In a collective action, tolling begins when the action is filed, for named plaintiffs, and when the written consent is filed in the court, for unnamed plaintiffs. *See 29 U.S.C. §

256(a)-(b). Like class members of a class action, opt-ins to a collective action are passive beneficiaries whose rights are protected by the class until it is decertified. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553-54 (1974) (holding that requiring class members to file motions to intervene prior to the decertification would defeat the class action goals of efficiency and economy of litigation).

Here, Movants timely filed their Motion on the day of the expiration of the statute of limitations—the day before Plaintiff Roussell no longer protected their interests. The Court holds that the Motion is timely as to factor one.

### 1.2 Prejudice to Defendant Caused by Delay

The second factor is measured by the prejudice caused by applicant's delay, not by prejudice that may result if intervention is allowed. *Edwards*, 78 F.3d at 1002; *Espy*, 18 F.3d at 1206. If the motion is filed promptly, there is no reason to believe that the status of the evidence and memories of the witnesses have changed such that the parties would be prejudiced by the intervention. *Stallworth*, 558 F.2d at 267. Here, with a delay of less than a two months between the partial decertification Order and the pending Motion, and a delay of less than 10 days between the tolling Order and the Motion, it is unlikely that the status of the evidence, memories of the witnesses, of conditions of any of the litigants have changed such that Defendant is prejudiced. Movants' Motion is timely as to factor two.

### 1.3 Prejudice to Intervenor

The third factor focuses on the prejudice the would-be intervenor would suffer if its petition for leave to intervene were denied. In evaluating whether the movant's interests are adequately represented, the court must take into account the legal rights

associated with formal intervention including briefing of issues, presentation of evidence, and the ability to appeal. *Espy*, 18 F.3d at 1207. Where the would-be intervenors have so far only been afforded perfunctory process, with no right to participate in the proceeding as full parties and without the opportunity to object in the event of a settlement or decree, the denial of intervention is not harmless. *Edwards*, 78 F.3d at 1003.

Here, the tolling period expired in November, and were the Court to deny the Motion, some of Movants' claims may be barred by the statute of limitations. Apart from the few Movants whose claims are now barred, the rest are free to file their claims in other courts, brief their issues, present their own evidence, and rebut any specific defenses Defendant asserts. Movants assert that their interests are impaired by the possible *stare decisis* effect of the district court's judgment that QAs are tipped employees under FLSA. The Court will discuss *stare decisis* concerns below, but does not find that this factor tilts either in favor or against intervention.

### 1.4 Unusual Circumstances

As to the fourth factor, courts may consider, for example, the case of a would-be intervenor who failed to apply promptly after he learned of the possibility for intervention and who had a convincing justification for his tardiness that would militate in favor of a finding that the petition was timely. *Stallworth*, 558 F.2d at 266. No such factors are at issue here, and therefore, this factor weighs neither for nor against intervention. In conclusion, Movants have established that their Motion was timely filed.

### 2. Protectable Interest

Movants argue that their claims for minimum wage violations under the FLSA constitute federally protectable interests recognized by substantive law that are identical

to those claimed by Plaintiff Roussell and the remaining opt-ins. Defendant responds that while all Movants assert FLSA claims, each claim involves an individualized analysis of evidence that varies based on the particular managers, servers, and QAs at issue. Defendant reasserts its argument that the collective action comprising the remaining opt-ins should be decertified such that only Plaintiff Roussell's claims will be adjudicated in a future trial.

In order to meet this requirement, an intervenor must point to a "direct, substantial [and] legally protectable interest." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc); *cf. Athens Lumber Co., Inc. v. Federal Election Comm.*, 690 F.2d 1364, 1366 (11th Cir. 1982) (holding that a general concern about corporate political expenditures, shared by unions and concerned citizens, does not constitute an interest sufficient to support an intervention of right). The test is primarily a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969); *Espy*, 18 F.3d at 1207; *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n. 10 (5th Cir. 1992) (same). The D.C. Circuit clarified that the protectable interest element should not serve a gate-keeping function:

> [i]f barriers are needed to limit extension of the right to intervene, the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task. If those requirements are met, the nature of his 'interest' may play a role in determining the sort of intervention which should be allowed-whether, for example, he should be permitted to contest all issues, and whether he should enjoy all the prerogatives of a party litigant.

*Smuck v. Hobson*, 408 F.2d at 180. The interest requires something more than an economic interest. *United Gas*, 732 F.2d at 464 (holding that "what is required is that the

interest be one which the substantive law recognizes as belonging to or being owned by the applicant").

Where the would-be intervenors allege they have suffered injury from the same or very similar acts as the original plaintiffs and are founded on the same statutory rights, they each assert claims that qualify as a protectable interest. *See Foster v. Local 2311 of the United Brotherhood of Carpenters and Joiners of Am., et al.*, 655 F.2d 1319, 1324-25 (D.C. Cir. 1981) (allowing intervention after the denial of a class action for lack of numerosity); *Worlds v. Dep't Health & Rehabilitative Serv., State of Florida*, 929 F.2d 591, 594 (11th Cir. 1991) (holding that, while the individual acts of discrimination suffered by plaintiffs and would-be intervenors may differ, each asserts the same interest in "being free of racial discrimination in employment"). On the other hand, where the would-be intervenors' interests depend on individualized factual determinations, the movants do not have a legally protectable interest in the proceedings. *Richardson v. United Steel Workers of Am.*, 864 F.2d 1162, 1170 (5th Cir. 1989) (holding that intervention was properly denied because the pending case had no preclusive effect on any would-be intervenors' suits where each union member had to prove his own knowledge, and reliance thereupon). *See also Leach v. Standard Register Co.*, 94 F.R.D. 192, 194 (W.D. Ark. 1982) (holding that where the intervenor is arguably a member of one of the previously defined classes represented by the named party, she and her proposed intervening class have no protectable interest in the litigation).

Here, the Movants seek redress under FLSA § 216(b), a statutory right to fair compensation. Movants do have an interest under the statute and an interest in the litigation concerning their collective experience as servers at Chili's restaurants whose

claims depend on the common question of whether QAs are tip pool-eligible: a question that may, though not necessarily will, be addressed generally for the QA position rather than on an individualized or even store-wide basis. (July 2008 Order at 33, 34 n. 51[4]; Sept. 2008 Order at 1.) Furthermore, unlike *Richardson*, the coercion inquiry in this case focuses on the objective actions of management rather than individualized inquiries regarding a would-be intervenor's own knowledge and reliance thereon. Likewise, as noted below, and following the guidance of the D.C. Circuit in *Smuck*, the Court's rulings on Plaintiff Roussell's claims may have an impact on their FLSA claims.

On the other hand, if they are denied intervention, Movants will be free to assert their own claims under the statute for fair compensation. And, most importantly, as the Court has held, the question of manager coercion cannot be fairly tried using representative testimony under the proposed trial plans. Any decision in the *Roussell* case regarding liability based on manager coercion would have a limited effect on Movants' interests in their own litigation. Although the Court notes that any decision in the *Roussell* case regarding whether QAs are tip eligible may have some *stare decisis* effect on the decision, as will be discussed below, this concern does not require intervention.

As of the Movants' last filing regarding intervention, 422 decertified opt-ins had moved to intervene in the case. They represent stores nationwide, and neither Plaintiffs nor Movants have provided information as to whether their dates of employment overlap with deposed-opt ins, or provided any factual nexus that binds all of the Movants beyond their common interest in the case. Unfortunately, due process concerns and efficiency strongly militate against intervention in this case. The Court has found the issue of manager coercion cannot fairly be tried based on representative testimony. Movants do

---

[4] Noting the possibility of a jury question regarding the representative nature of the testimony.

not attempt to assert that they form a sub-grouping of former opt-ins with, for example, similar allegations of manager coercion at a store or set of stores in a geographic region, or similar allegations from opt-ins working during a limited time period such that the case could be tried without significant jury confusion. Each Movant, therefore, represents a separate set of facts that would have to be tried individually (see discussion of decertification, *supra*), and would present significant delay, and trial manageability problems.

### 3. Lawsuit's Effect on Movants' Interests

Movants argue that a judgment against Roussell that QAs are tipped employees could have a significant effect upon Movants' claims in later actions because it would create an adverse *stare decisis* effect on their ability to protect their FLSA claims. Defendant argues that *stare decisis* alone will not automatically constitute a practical impairment warranting intervention.

The Fifth Circuit has clarified that, where an adverse resolution on an issue would have a precedential effect, an adverse decision would impair the litigants' ability to protect their interest. *See Espy*, 18 F.3d at 1207; *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992) (holding that intervention was proper where, *inter alia*, the *stare decisis* effect of the district court's judgment would impair the agency secretary's interest in the litigation); *Martin v. Travelers Indem. Co.*, 540 F.2d 542, 553-555 (5th Cir. 1971); *see also Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967) (holding that where the decision of the court may be afforded great weight should the question at issue arise again, the would-be intervenor's interest would be impaired); *cf. Worlds*, 929 F.2d at 594-95 (holding that intervention was not proper where the district court decertified the

class to protect the unnamed members from suffering the res judicata effects of the plaintiffs' failure to prove their case); *Richardson*, 864 F.2d at 1170.

The Fifth Circuit clarified that, under FED. R. CIV. P. 24(a), as amended in the 1966, *stare decisis* standing alone, does not necessarily supply the practical impairment that necessitates intervention as of right. It noted that an intervention decision based partially on *stare decisis* "does not presage one requiring intervention of right in every conceivable circumstance where under the operation of the Circuit's stare decisis practice … an earlier decision might afford a substantial obstacle. [In this case w]e are dealing … with a conjunction of a claim to and interest in the very property and the very transaction which is the subject of the main action." *Atlantis Development Corp. v. U.S.* 379 F.2d 818, 829 (5th Cir. 1967).

Movants urge the Court to adopt the reasoning of *Stone*, an Eleventh Circuit case reversing a district court and holding that the former opt-in plaintiffs could intervene as of right. *Stone   v. First Union Corp.*, 371 F.3d 1305, 1312 (11th Cir. 2004).[5] In *Stone*, opt-in plaintiffs alleged that the same bank policy violated the Age Discrimination in Employment Act. *Stone*, 371 F.3d at 1310. In allowing intervention, the *Stone* court noted that any ruling on the bank's policy would have significant persuasive effects on subsequent district court rulings on the issue. *Id.*

Defendant argues that the reasoning of *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298 (11th Cir. 2008), is more persuasive. In *Fox*, 161 former employees moved to intervene in a FLSA case for unpaid wages, which the judge declined to certify as a collective action. 519 F.3d at 1301. Subsequently, the Eleventh Circuit held that intervention was

---

[5] The Eleventh Circuit has also clarified that, while *stare decisis* may supply the practical disadvantage warranting intervention, it does not automatically supply it. *See ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (holding that *stare decisis* concerns did not apply ).

inappropriate where compensation varied from plant-to-plant and even department-by-department such that any resolution of the main case would not have a *stare decisis* effect on the later action of the would-be intervenors. 519 F.3d at 1304. Defendant likewise contends that where, as here, there is no single-company wide policy that affects all Movants, they cannot establish that the disposition of the *Roussell* action will impair or impede their ability to protect their interests.

Here, unlike *Stone*, the claims of the Movants are not knitted together by a common policy. Like *Fox*, some of the relevant inquiries require a determination that varies store-by-store or even manager-by-manager. The knotty issue here is that Movants, like those in *Stone*, share a common legal question, but, like those in *Fox*, do not share important factual circumstances relevant to their claims. The Court previously concluded that a "reasonable jury could find, based on witness testimony, internal memoranda in which Defendant treated all QAs as having similar job duties, and the relevant job descriptions, that QAs' relevant duties and level of direct customer interaction was generally the same." (Sept. Order, at 33.) Consequently, "[t]he jury could therefore determine that QAs generally are or are not eligible to participate in a mandatory tip pool." (*Id.*) The Court allows, of course, that it is possible that a jury would find that QAs' tip-pool eligibility may not be generally determined and, instead, eligibility requires specific inquiries regarding each Plaintiff's experience. But, more importantly, the Court also concluded that Plaintiffs had not presented enough evidence of a pattern and practice at all restaurants to render representative testimony workable for all opt-ins. Consequently, a holding on the coercion issue would not have a *stare decisis* effect on the proceeding. Given that this concern is central to the case, the Court cannot find that the

*stare decisis* effect of the *Roussell* case could affect the Movants' interests such that intervention is warranted in this case.

The Court does not suggest, however, that intervention would be improper in a similar case. Had the Movants represented a subgroup of opt-ins that were unified by a widely enforced policy, official or de facto, that encompassed a set of stores, a geographic region, and provided evidence, whether by survey, random sampling, or other creative technique, that the Movants share common fact histories, intervention might have been justified and not presented due process or fairness concerns. They did not, and the moment for providing this evidence has expired. The Court has carefully considered whether intervention might be workable in this case, given the possible common question of law. The Court is unable, however, to allow intervention in this case and reluctantly concludes that it must be denied.

As the Court finds that intervention of right is not afforded under elements two and three of FED. R. CIV. P. 24(a)(2), it will not consider element four.

### B. Permissive Intervention

In the alternative, Movants argue that they share several common questions of law or fact with the parties including whether QAs are tipped employees. Movants contend that the Motion is timely. They also argue that Defendant will not suffer any undue delay or prejudice from adjudicating their rights if intervention occurs. Defendant responds that this request should be denied because of undue delay and substantial prejudice to Defendant.

A person may intervene by permissive intervention if the application is timely, and the person "has a claim or defense that shares with the main action a common

question of law or fact." FED. R. CIV. P. 24(b)(1)(B). The court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Permissive intervention is "wholly discretionary with the [district] court ... even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (quoting *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 470-71 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 1019 (1984) (internal citation omitted); *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984). In considering a request for permissive intervention, it is proper to consider whether the would-be intervenors' interests are adequately represented by other parties and whether they will significantly contribute to the full development of the underlying factual interests in the suit. *United Gas Pipe Line Co.*, 732 F.2d at 472 (holding that permissive intervention was properly denied where City officials and a utility sought the same relief on the same grounds from the same party, and City officials made no suggestions that the they would make any contribution to the development of facts).

### 1. Timely

Movants argue that this motion is timely under the same reasoning as that for the 24(a) intervention. The Court agrees, for the reasons detailed above regarding intervention as of right.

### 2. Common Question of Law or Fact

Movants argue that they share a number of common questions of law with the present action including whether QAs are tipped employees under FLSA. In addition, Movants contend that they share a number of other questions of law and fact including

the correct legal standard for voluntariness; the contours of Defendant's policy regarding tip-outs to QAs; the existence or non-existence of a class-wide policy of management coercion, encouraging and/or assisting opt-ins to tip out QAs; the willfulness of Defendant's actions; the appropriateness of liquidated damages; and the Defendant's categorization of QAs for internal purposes such as tip pool eligibility. Defendant concedes that Movants have a common question of law and fact with the opt-in Plaintiffs.

### 3. Prejudice

Movants argue that intervention is appropriate because it would not unduly prejudice the adjudication. They argue that Movants may not relitigate already decided issues and, therefore, intervention would serve the interests of judicial economy and efficiency by reducing the number of other courts litigating FLSA cases involving the issues in *Roussell.* Furthermore, they contend that intervention will allow Movants to avoid the duplicative costs and resources required to initiate their own lawsuits.

In addition to the factors noted above, the court considers the effect on existing parties. *United Gas Pipe Line Co.*, 732 F.2d at 473. The court may properly consider whether the intervention causes undue delay and prejudice because of the intervention of many decertified class members. *See Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345, 350 n.4 (1983). Other Circuits have upheld denials of permissive intervention on the grounds that a large number of intervenors would result in delay and prejudice. *Worlds*, 929 F.2d at 595 (upholding denial of permissive intervention when ten years had elapsed since the suit was filed and 155 former class members sought to intervene).

Here, the existing Plaintiffs do not adequately represent Movants' interests. *See, e.g., Stone*, 371 F.3d at 1312 (explaining that other plaintiffs may wish to emphasize

different aspects of the employer's employment policies because the manner in which the plaintiffs were discriminated against may not be identical); *see also Espy*, 18 F.3d at 1207-08 (holding that the government did not adequately represent the timber industry's interest because the government represented the broader public interest rather than the economic concerns of the timber industry). It is not clear, however, that the Movants will help provide a full development of the facts at issue. With the addition of each Movant, the individualized considerations regarding the coercive inquiry will multiply the factual issues to be considered and, given the number of Movants, will undoubtedly result in considerable delay in the prosecution of this case. A trial involving upwards of 400 individual Plaintiffs is unmanageable, especially considering the number of stores represented, each involving managers from widely dispersed geographic regions.[6] The Court cannot avoid the conclusion that a trial of this magnitude and complexity would unduly prejudice Defendant or cause substantial delay. Discovery would have to be reopened as to the Movants. Witnesses from all over the country would have to be scheduled for trial. Moreover, as Defendant notes, jurors could be confused by the presentation of multiple claims and impute evidence between multiple claimants. As the Supreme Court foresaw in *Crown, Cork*, there may be times when the decertified class members will not be able to avail themselves of either intervention as of right or

---

[6] Movants cite *Morgan v. Family Dollar Stores, Inc.*, __ F.3d __, 2008 WL 5220263, *32 (11th Cir. Dec. 16, 2008) for the proposition that the burden is on the defendant to present a trial plan for an affirmative defense. The issue in that case was the executive exemption from FLSA overtime requirements, a different defense than that presented here. Furthermore, the Court decided to try the case collectively based on testimony and documentary evidence that Dollar Stores, Inc. had a unified policy as to the classification of its managers. That the defendant in *Morgan* bore the burden of asserting its executive exemption defense does not bear on this Court's decision that a case involving over 400 individual plaintiffs, that cannot be handled with representative testimony, would be unmanageable. The Court further notes that the issue of manager coercion goes to liability and is not an affirmative defense.

permissive intervention. The Movants' motion shall be denied for reasons of undue prejudice and delay.

### 4. Fairness

In addition, Movants argue that intervention would allow the Court to uphold the remedial purposes of FLSA. This factor is not a formal consideration for permissive intervention, but the Court takes this opportunity to reiterate that the need for collective action lawsuits under FLSA is particularly important because, as one district court has noted, plaintiffs can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action." *Bradford v. Bed Bath and Beyond*, 184 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002). Mindful of these purposes, the Court must recognize, however, that collective treatment is only justified in cases in which plaintiffs are similarly situated and where proceeding collectively will not render trial unfair to defendants. Likewise, multi-party motions to intervene cannot substitute for collective action, and with the same regret that the Court decertified the action, it must conclude that this Motion to Intervene should be denied.

## IV. CONCLUSION

Based on the foregoing, Plaintiff-Intervenor's Motion to Intervene is hereby **DENIED**. Defendant's Motion to Decertify is **DENIED IN PART** as to all deposed opt-Plaintiffs and **GRANTED IN PART** as to rest of the opt-ins.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 26 day of January, 2009.

KEITH P. ELLISON

23

UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**