IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER ROUSSELL, on behalf of Herself and others similarly situated, | § § § | Civil Action No. 4:05-CV-03733 |
| Plaintiff, | § § | |
| v. | § § | |
| BRINKER INTERNATIONAL, INC., | § § | |
| Defendant. | § § | |

# **JOINT PRETRIAL ORDER**

1. <u>**Appearance of Counsel**</u>

> DAVID BORGEN
> State Bar No. 099354
> *Pro Hac Vice*
> LAURA L. HO
> State Bar No. 173179
> *Pro Hac Vice*
> JAMES KAN
> State Bar No. 240749
> *Pro Hac Vice*
> GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
> 300 Lakeside Drive, Suite 1000
> Oakland, CA  94612-3534
> (510) 763-9800 (phone)
> (510) 835-1417 (facsimile)
> **Co-Lead Counsel for Plaintiffs**
>
> RICHARD (REX) J. BURCH
> State Bar No. 24001807
> Federal ID No. 21615
> BRUCKNER BURCH PLLC
> 1000 Louisiana, Suite 1300
> Houston, TX  77002
> (713) 877-8788 (phone)
> (713) 877-8065 (facsimile)
> **Co-Lead Counsel for Plaintiffs**
>
> MARTIN A. SHELLIST
> State Bar No. 00786487
> Federal ID No. 16456
> DARYL J. SINKULE
> State Bar. No. 24037502
> Federal ID No. 12308
> SHELLIST LAZARZ LLP
> 3D/International Tower
> 1900 West Loop South, Suite 1910
> Houston, TX  77027
> (713) 621-2277 (phone)
> (713) 621-0993 (facsimile)
> **Co-Lead Counsel for Plaintiffs**

FRASER A. MCALPINE
State Bar No. 13321300
Federal I.D. No. 3407
LAURA M. FRANZE
State Bar No. 07389600
HOLLY H. WILLIAMSON
State Bar No. 21620100
M. BRETT BURNS
State Bar No. 03447900
HUNTON & WILLIAMS LLP
Bank of America Center
700 Louisiana Street, Suite 4200
Houston, Texas 77002
Phone: 713.229.5700
Fax:  713.229.5750
**Attorneys For Defendant**
**Brinker International, Inc.**

**2.**     **Statement of the Case**

**Plaintiffs' Proposal:**

This is a collective action on behalf of 55 individuals who worked as servers at Defendant's Chili's restaurants throughout the country. They claim that Chili's illegally paid them less than the federal minimum wage by taking a minimum wage "tip credit." Plaintiffs claim that such a tip credit is not allowed because Defendant included Quality Assurance ("QA") employees, also known as Expediters ("Expos"), in an involuntary tip pool with servers. The servers claim that Chili's management coerced, suggested, implied, and/or trained them to share their tips with QAs/Expos, and that it was violation of federal law for Chili's to do so because QAs/Expos are not customarily tipped employees. Furthermore, Defendant failed to provide Plaintiffs with adequate notice of its taking of a minimum wage tip credit in violation of federal law. Defendant claims that QAs/Expos are customarily tipped employees and that the tip pool was completely voluntary, so that Defendant was justified in paying servers a sub-minimum wage.

**Defendant's Proposal:**

This case involves the pay practices at Chili's Grill & Bar. This is a purported collective action lawsuit in which 55 plaintiffs who worked in 61 different Chili's restaurants from numerous states have elected to pursue their claims collectively. The plaintiffs other than

Jennifer Roussell, the named plaintiff, are entitled to prevail on their claims only if they establish that they are all similarly situated to Ms. Roussell and to each other. To establish that they are similarly situated, the 55 plaintiffs must demonstrate that all of the employees joined in this suit were commonly affected by a single decision, policy, or plan that gives rise to a pattern or practice of wage and hour violations. It is not enough that only some of the employees joined in this suit were affected by the decision, policy, or plan. To prove the existence of a pattern or practice of violations, plaintiffs must demonstrate widespread violations at the Chili's restaurants at issue in this case during the relevant time.

This case involves the sharing or pooling of tips. The sharing or pooling of tips is common and lawful practice in the restaurant industry. An established tip pooling policy encourages employees to give the best possible service. Thus, for example, it is appropriate for a Server to share the tip with the busboy who busses her table, for were it not for the busboy, the work ordinarily performed by him would fall upon the waitress who, in addition to her own work, would have the responsibility of his duties. Tip pools are also intended to fairly share customer tips among the team of employees who contribute to customer service, and recognize that the distribution of tip income does not depend upon the whim or the generosity of the employee who is first to pick up the tip.

Employees may participate in tip pools even if they do not receive tips directly from customers. Accordingly, an employee may be "indirectly tipped" (by receiving tips from employees who received them directly from the customer) and still properly be eligible to participate in a tip pool.

Here, the question to be tried is not the propriety of sharing or pooling tips, but rather whether employees who work as QAs (also known as "Expos") should be able to receive a portion of the shared tips. Accordingly, the jury will not be asked to decide whether it is appropriate for Servers to share or pool tips with the bartender or the bussers, but only whether Servers can be required to share tips with QAs.

60054-4                                               3

The trial will focus to a significant extent on the nature of the job duties performed by QAs. QAs do not work on every shift. They tend to work on busy shifts. On those busy shifts the QA performs quality assurance duties (hence the name "QA") in order to expedite the delivery of food to the customers (hence the term "Expo"). When a QA is scheduled to work, the QA performs duties that are performed principally by Servers on the shifts when no QA is on duty. These duties may include ensuring that all orders are complete, prepared to Company standards and customer specifications, and served in the correct sequence, arranged for the individual customers, and within appropriate timelines. QAs may perform other duties as well.

Chili's submits that Servers can be required to share tips with QAs because, just like the bartender and the busser, the QA is part of the "Front of the House" service team that works together to perform important customer service functions and ensure high levels of customer satisfaction. When the customers are highly satisfied, they typically leave more and better tips. Because all members of the customer service team participate in the generation of these tips, all members accordingly share in them. Whereas Brinker contends that the QA functions in a "Front of the House" role much like Servers, bussers, or bartenders, Plaintiffs contend that the QAs function more like janitors, dishwashers, chefs, cooks, and other "Back of the House" positions with whom Servers do not share tips. Plaintiffs also contend that, because some QAs do not directly interact with the customers, they should be ineligible to receive shared tips even if they nonetheless perform important roles as part of the customer service team. Plaintiffs also contend that, based on evidence of what some QAs at certain times in certain restaurants did or did not do, it is proper to make assumptions about what QAs at other times in restaurants did or did not do. Chili's believes that different QAs do different things, at different times, in different restaurants, and that Plaintiffs' assumptions are therefore inappropriate.

Chili's does not, as a matter of company policy, require Servers to share tips with QAs. Rather, according to Chili's company policy, Servers may choose to share tips with QAs. Thus, even if the QAs were not eligible to participate in a tip pool, a Plaintiff may still share the tips that he/she received with a QA or any other employee if the Plaintiff does so voluntarily, and

60054-4                                    4

Brinker is entitled to take advantage of the "tip credit" provisions on those shifts when a Plaintiff voluntarily shares his/her tips with a QA.

Plaintiffs contend that notwithstanding Brinker's company policy that Servers can choose to tip QAs or choose not to do so, some managers force or coerce Servers to share their tips with QAs. Brinker contends that the actions of these managers do not constitute coercion, and that many good reasons exist for Servers to decide of their own free will to share tips with QAs, and that Brinker's managers do not coerce, by force or threat, Servers to share tips with QAs. Plaintiffs also contend that, based on evidence of what some managers at certain times in certain restaurants did or did not do, it is proper to make assumptions about what managers at other times in restaurants did or did not do. Chili's believes that different managers do different things, at different times, in different restaurants, and that Plaintiffs' assumptions are therefore inappropriate.

Most, but not all, of the employees who work shifts as the QA also work as Servers. Thus, some of the Plaintiffs who are suing because they shared tips with the QA also worked as a QA, and received tips from other Servers when they did so. Brinker contends that when a Server works a shift as a QA, that Server continues to perform duties that are incidental to or related to the duties usually performed by Servers, and that indeed the duties performed by QAs are part of the duties normally performed by Servers. Brinker contend that when a Server works as a QA, that Server is not changing his or her occupation, but is instead performing duties that are incidental to or closely related to the duties performed by Servers. Because the Server does not change his or her occupation when working a shift as the QA, but remains a Server, that employee remains eligible to share tips. Plaintiffs contend that the duties performed by QAs are not incidental to or related to the duties performed by Servers. Thus, Plaintiffs contend that "Server" and "QA" are two distinct occupations, like maintenance man and Server.

**3.    Motions**

The following motions are pending or being filed simultaneously with this Joint Pretrial Order:

**Plaintiffs' Motions**:

(1)     Plaintiffs' Motion in Limine to Exclude Evidence or Testimony Before the Jury Regarding Liquidated Damages.

(2)     Plaintiffs' Motion in Limine to Exclude Evidence of Tips Received by Plaintiffs in Excess of the Tip Credit Taken by Defendant.

(3)     Plaintiffs' Motion in Limine to Exclude Evidence and Testimony Relating to Defendant's Restaurant Practices for Restaurants and/or Shifts Beyond the Scope of Plaintiffs' Trial Witnesses' Employment.

(4)     Plaintiffs' Motion in Limine to Preclude Defendant's Use of Payroll Shift Data of QA Employees to Discount the Damages Owed to Plaintiffs.

(5)     Plaintiffs' Motion in Limine to Exclude Evidence Suggesting Waiters Would Otherwise Perform the Tasks Performed by QAs and Any Alleged Impact on Waiters' Tips.

(6)     Other motions that may be reasonable and appropriate in response to Defendant's proof, or method of proof, as those matters are disclosed to Plaintiffs.

**Defendant's Motions**:

(1)     Defendant Brinker International, Inc.'s Application For Immediate Relief, Motion for Reconsideration of Decertification Rulings, Alternatively to Certify Rulings For Interlocutory Appeal, Alternatively to Modify the Order of Proof at Trial.

(2)     Motion in Limine (with an accompanying Trial Brief on the Exclusion of Corporate Job Code Project Evidence).

(3)     other motions that may be reasonable and appropriate in response to Plaintiffs' proof, or method of proof, as those matters are disclosed to Defendant.

4.     **Exhibits**

Please see Plaintiffs' Exhibit List, attached hereto as Exhibit 1 and Defendant's Exhibit List, attached hereto as Exhibit 2.

5. **Witnesses**

Please see Plaintiffs' Trial Witness List (names only), attached hereto as Exhibit 3, and Defendant's Trial Witness List (names only), attached hereto as Exhibit 4.

In the event that there are any other witnesses to be called at the trial, their names, addresses, and the subject matter of their testimony shall be reported to opposing counsel as soon as they are known. This restriction shall not apply to rebuttal or impeaching witnesses, the necessity of whose testimony cannot reasonably be anticipated before the time of trial.

6. **Trial**

    a. This will be a jury trial.

    b. The probable length of trial is three (3) weeks

    c. Witnesses will be available as set forth in the parties' respective witness lists, attached hereto as Exhibit 3 and 4.

7. **Additional Required Attachments**

Please see Plaintiffs' proposed jury instructions, attached hereto as Exhibit 5. In accordance with the Court's statement that jury instructions should be filed on the first day of trial, Defendant will file its proposed jury instructions on March 9, 2009.

Defendant's Pretrial Memorandum of Law is attached as Exhibit 6.

Plaintiffs' Pretrial Memorandum of Law is attached as Exhibit 7.

Dated:  March 2, 2009                    Respectfully submitted,

By:   /s/ James Kan
DAVID BORGEN
State Bar No. 099354
*Pro Hac Vice*
LAURA L. HO
State Bar No. 173179
*Pro Hac Vice*
JAMES KAN
State Bar No. 240749
*Pro Hac Vice*
GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000

       Oakland, CA  94612-3534
       (510) 763-9800 (phone)
       (510) 835-1417 (facsimile)

       RICHARD (REX) J. BURCH
       State Bar No. 24001807
       Federal ID No. 21615
       BRUCKNER BURCH PLLC
       1000 Louisiana, Suite 1300
       Houston, TX  77002
       (713) 877-8788 (phone)
       (713) 877-8065 (facsimile)

       MARTIN A. SHELLIST
       State Bar No. 00786487
       Federal ID No. 16456
       DARYL J. SINKULE
       State Bar. No. 24037502
       Federal ID No. 12308
       SHELLIST LAZARZ LLP
       3D/International Tower
       1900 West Loop South, Suite 1910
       Houston, TX  77027
       (713) 621-2277 (phone)
       (713) 621-0993 (facsimile)

       Attorneys for Plaintiffs

       /s/ Fraser A. McAlpine
       **Fraser A. McAlpine**
       State Bar No. 13321300
       Federal I.D. No. 3407
       **HUNTON & WILLIAMS LLP**
       Bank of America Center
       700 Louisiana Street, Suite 4200
       Houston, Texas 77002
       Phone: 713.229.5700
       Fax:  713.229.5750

       **ATTORNEY-IN-CHARGE FOR DEFENDANT**
       **BRINKER INTERNATIONAL, INC.**

Of COUNSEL:

**Laura M. Franze**
State Bar No. 07389600
**Holly H. Williamson**
State Bar No. 21620100
**M. Brett Burns**
State Bar No. 03447900
**HUNTON & WILLIAMS, LLP**

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing instrument has been forward to all counsel of record via the Southern District of Texas' CM/ECF electronic filing system on March 3, 2009:

| | |
|---|---|
| **Fraser A. McAlpine**<br>**HUNTON & WILLIAMS LLP**<br>Bank of America Center<br>700 Louisiana Street, Suite 4200<br>Houston, Texas 77002<br>Phone: 713.229.5700<br>Fax:  713.229.5750 | **Sara Gillian Noel**<br>Akin Gump Strauss Hauer & Feld LLP<br>580 California, Ste 1500<br>San Francisco , CA 94104 |
| **Kevin James White**<br>Hunton & Williams LLP<br>Bank of America Tower<br>700 Louisiana Street<br>Suite 4200<br>Houston , TX 77002 | **Marcia Nelson Jackson**<br>Akin Gump et al<br>1700 Pacific Ave<br>Ste 4100<br>Dallas , TX 75201-4675 |
| **Michael Brett Burns**<br>Hunton & Williams<br>575 Market Street<br>Ste 3700<br>San Francisco , CA 94105 | |

/s/ James Kan
James Kan