# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JENNIFER ROUSSELL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO. 4:05-CV-03733 |
| | § | |
| BRINKER INTERNATIONAL, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' PROPOSED JURY CHARGE**

Plaintiffs submit the following proposed jury charge.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

**/s/ Rex Burch**
By: _____
Richard J. Burch
Texas Bar No. 24001807
S.D. Tex. No. 21615
1415 Louisiana, Suite 2125
Houston, Texas  77002
Telephone:    (713) 877-8788
Telecopier:    (713) 877-8065

Martin A. Shellist
Daryl Sinkule
SHELLIST ☆ LAZARZ LLP

David Borgen
Laura L. Ho
James Kan
GOLDSTEIN, DEMCHAK, BALLER,
    BORGEN & DARDARIAN

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : GENERAL INSTRUCTIONS FOR CHARGE[1]**

**Members of the Jury:**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

---

[1]   Fifth Circuit Pattern Jury Instructions – Civil at § 3.1 (2006).

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

**GIVEN:** _____

**DENIED:** _____

**MODIFIED:** _____

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : DEPOSITION TESTIMONY**[2]

Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read (shown) to you today. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility as if the witness had been present and had testified from the witness stand in court.

**GIVEN:** _____

**DENIED:** _____

**MODIFIED:** _____

---

[2]     Fifth Circuit Pattern Jury Instructions – Civil at § 3.1 (2006).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : THE FAIR LABOR STANDARDS ACT**[3]

This case arises under the Fair Labor Standards Act, a federal law that provides for the payment of minimum wages.  Plaintiffs claim Brinker did not pay them the legally required minimum wage.

Plaintiffs must prove each of the following by a preponderance of the evidence:

1.      Brinker employed Plaintiffs;

2.      That Brinker is covered by the Fair Labor Standards Act; and

3.      That Brinker failed to pay Plaintiffs at least the minimum wage (*excluding tips*) for each hour worked.

Brinker admits it employed Plaintiffs and that it is covered by the Fair Labor Standards Act.  Therefore, Plaintiffs must only establish Brinker paid them less than the minimum wage during the period covered by this lawsuit.  The minimum wage during the period prior to July 24, 2007 was $5.15 per hour.  Beginning on July 24, 2007, the minimum wage was $5.85 per hour.[4]

In its defense, Brinker claims that even if it paid Plaintiffs less than the minimum wage, it is entitled to a "tip credit" for the tips Plaintiffs received from customers at the restaurant.

To be entitled to a tip credit, Brinker must prove: (1) it informed Plaintiffs of the tip-credit provisions of the Fair Labor Standards Act; *and* (2) Plaintiffs retained all their tips other than those contributed to a valid tip pool.[5]  These two elements are strictly construed, and Brinker must establish both elements of this test regardless of how much Plaintiffs actually earned in tips.[6]

If, after considering all of the evidence, you find Plaintiffs failed to prove Brinker paid them less than the minimum wage, your verdict must be for Brinker.  If, however, you find Plaintiffs proved by a preponderance of the evidence that Brinker paid them less than the minimum wage (excluding tips) and that the defendant has failed to establish one or more elements of its tip credit defense, then your verdict must be for Plaintiffs.

**GIVEN:**        _____

**DENIED:**       _____

**MODIFIED:**    _____

---

[3]     Fifth Circuit Pattern Jury Instructions – Civil at § 11.1 (2006) (modified).

[4]     29 U.S.C. § 206(a) (2006) & (2008).

[5]     29 U.S.C. § 203(m).

[6]     *Bernal v. Vankar Enterprises, Inc.*, 579 F.Supp.2d 804, 808 (W.D.Tex. 2008); *Chu Chung v. New Silver Palace Rest.*, 246 F.Supp.2d 220, 229 (S.D.N.Y.2002).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : EMPLOYERS MUST INFORM EMPLOYEES OF THE TIP CREDIT PROVISIONS**

To claim a tip credit, an employer must prove by a preponderance of the evidence that it informed the tipped employees of the tip credit provisions of the Fair Labor Standards Act.[7] The notice requirement is strictly construed.[8]  If Brinker did not inform Plaintiffs of the tip credit provisions prior to taking a tip credit,[9] Brinker cannot claim a tip credit.[10] Specifically, an employer to inform the employee:

(1)     of the dollar amount of the minimum wage required by law;

(2)     that the employer is paying the employee at a rate below the minimum wage because it intends to take a tip credit;

(3)     the dollar amount of tip credit claimed by the employer;

(4)     the employee's cash wage plus the employee's tips must equal at least the minimum wage or the employer will make up the difference; and

(5)     the employee is entitled to retain all tips other than those contributed to a valid tip pool.[11]

The Fair Labor Standards Act poster provided by the Department of Labor is not sufficient notice to employees of the provisions of Section 3(m).[12]  Further, an employer cannot rely on knowledge an employee obtained from prior experience in the industry.[13]

**GIVEN:**          _____

**DENIED:**          _____

**MODIFIED:**          _____

---

[7]          29 U.S.C. § 203(m); *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D.Tex. 1995).

[8]          *Bernal*, 579 F.Supp.2d at 808; *Chu Chung*, 246 F.Supp.2d at 229; *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334, at *1+ (S.D.Tex. Nov 03, 2006)

[9]          *See, e.g., Marshall v. Gerwill*, 495 F.Supp. 744, 753 (D. Md. 1980) (notice must be given prior to taking the tip credit);  120 Cong. Rec. 8763 (March 28, 1974) (employer must inform its employees of Section 203(m)'s requirements "before the credit … is applied").

[10]          29 U.S.C. § 203(m).

[11]          29 U.S.C. § 203(m); *see also, Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992) (noting, without deciding, that Section 203(m) "could easily be read to require" disclosure of 'the amount ... determined by the employer' to constitute wages[.]"); *Yu G. Ke v. Saigon Grill, Inc.*, ---F.Supp.2d ----, 2008 WL 5337230, at *8 (S.D.N.Y. Oct .21, 2008) (employer "must ... notify the employees of the requirements of the law regarding minimum wages and of the employer's intention to take the tip credit").

[12]          Wage & Hour Opinion Letter, 1997 WL 958300 (January 21, 1997).

[13]          *Bernal*, 579 F.Supp.2d at 809.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : TIP POOLING**

     Under the law, employees are generally entitled to keep all the tips they receive from customers.[14]  However, employers can require employees to share their tips with other "employees who customarily and regularly receive tips."[15]  Brinker is required to prove, by a preponderance of evidence, that QAs are employees who customarily and regularly receive tips.

     To make this showing, Brinker must prove by a preponderance of evidence that the average customer would normally expect QAs to receive at least some of the tips.[16]  If the average customer would not contemplate tipping QAs, nor expect QAs to share in the tips, QAs are not employees who customarily and regularly receive tips.[17]  In addition, Brinker must establish QAs had sufficient customer interaction and that the QAs' primary duties were customer service functions.[18]

**GIVEN:**      _____

**DENIED:**      _____

**MODIFIED:**      _____

---

[14]    29 U.S.C. § 203(m).

[15]    29 U.S.C. § 203(m).

[16]    *Wajcman v. Investment Corp. of Palm Beach* (*Wajcman II*), 2009 WL 465071, at *4 (S.D.Fla. Feb. 23, 2009).

[17]    29 C.F.R. § 531.52 (noting the customer "has the right to determine who shall be the recipient of his gratuity."); *Wajcman II*, 2009 WL 465071, at *4.

[18]    *Roussell v. Brinker Intern., Inc.*, 2008 WL 2714079, at *10 (S.D. Tex. July 9, 2008).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. _: CUSTOMARILY RECEIVING TIPS**

      Industry custom is relevant to determining whether a particular occupation is eligible to participate in a tip pool.  The practice of including the position in tip pools must be sufficiently widespread so that the position could be properly characterized as <u>customarily</u> receiving tips.[19] In making this determination, you should consider whether customers would normally anticipate that the QA would share in any tips.[20]


**GIVEN:**     _____

**DENIED:**    _____

**MODIFIED:**  _____

---

[19]     DOL Wage & Hour Opinion Letter WH-536, 1989 WL 610348 (Oct. 26, 1989) (emphasis in original).

[20]     29 C.F.R. § 531.52 (noting the customer "has the right to determine who shall be the recipient of his gratuity."); *Wajcman II*, 2009 WL 465071, at *4.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : CUSTOMER INTERACTION**

Where employees perform some duties that entail customer service and others that do not, the employees' level of direct customer interaction is critical in determining whether the employees may participate in a mandatory tip pooling arrangement.[21]  A minimal amount of customer interaction is insufficient; the employee must have substantial customer interaction.[22] This interaction must also be the kind of interaction that ordinarily evokes tipping generosity.[23] In other words, Brinker must show QAs primarily engaged in job duties that were likely to trigger a tipping response from the customer.[24]


**GIVEN:** _____

**DENIED:** _____

**MODIFIED:** _____

---

[21]     *Roussell*, 2008 WL 2714079, at \*10.

[22]     *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550 (6th Cir. 1999);  *Wajcman v. Investment Corp. of Palm Beach (Wajcman I)*, 2008 WL 783741, at \*4 (S.D.Fla. March 20, 2008).

[23]     *Wajcman I*, 2008 WL 783741, at \*4.

[24]     *Wajcman I*, 2008 WL 783741, at \*4.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. \_\_ : CUSTOMER SERVICE FUNCTIONS**

In addition to showing QAs have substantial customer interaction, Brinker must prove that the QAs' primary duties are the performance of important customer service functions.[25] Job duties that constitute customer service include greeting customers, supplying customers with menus, seating them at tables, and serving food or drinks.  Examples of job duties that are **not** customer service include making coffee and salads, adding garnishes and condiments, inspecting food for appearance and temperature.[26]   Employees who are visible to the public are likely to make greater contributions to customer service.[27] Employees who are routinely assigned non-customer service duties, or who spend more than 20% of their time performing such duties, cannot be included in tip pools during the time spent performing such duties.[28]

**GIVEN:**   _____

**DENIED:**   _____

**MODIFIED:**   _____

---

[25]     *Roussell*, 2008 WL 2714079, at *10.

[26]     29 C.F.R. § 531.56(e);  *Myers v. Copper Cellar Corp.*, 192 F.2d 546 (6th Cir. 1999); *Roussell*, 2008 WL 2714079, at *11-12.

[27]     *Roussell*, 2008 WL 2714079, at *10.

[28]     DOL FIELD OPERATIONS HANDBOOK, § 30d00(e); *Roussell*, 2008 WL 2714079, at *12;  DOL Opinion Letter, 1980 WL 141336 (March 28, 1980);  *cf. Fast v. Applebee's Intern., Inc.*, 502 F.Supp.2d 996, 1003 (W.D. Mo. 2007).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : VOLUNTARINESS**

Brinker contends that even if QAs are not employees who customarily and regularly receive tips, Plaintiffs shared their tips with QAs "voluntarily." "Voluntarily" means free from any coercion whatever and outside any formalized arrangement or as a condition of employment.[29] For example, an employer who recommends waiters tip out to ineligible employees and expects that peer pressure will result in the waiters actually tip out, the tip out is likely to be involuntary.[30]   You do not need to find that Plaintiffs were "forced" to share tips with QAs.  If a reasonable employee might feel pressure to share tips with a QA as a result of Brinker's actions, the sharing of tips is not "free from any coercion whatever."[31]  This can include Brinker requiring, recommending, or implying that servers should share their tips with QAs.[32]

**GIVEN:**        _____

**DENIED:**       _____

**MODIFIED:**     _____

---

[29]     Department of Labor Field Operations Handbook § 30d04(c); *Zhao v. Benihana,* 2001 WL 8545000, at *2 (S.D.N.Y. May 7, 2001); *Roussell,* 2008 WL 2714079, at *18.

[30]     *Roussell,* 2008 WL 2714079, at *17 *citing* DOL Opinion Letter 1997 WL 1049720 (Nov. 4, 1997).

[31]     *Roussell,* 2008 WL 2714079, at *18.

[32]     *Id.*

**PLAINTIFFS' PROPOSED INSTRUCTION NO. __ : WILLFULNESS**

Plaintiffs allege Brinker's violations of the law were willful.  A violation is willful if the employer either (a) knew that its conduct violated the law; or (b) showed reckless disregard for compliance with the law.[33]

GIVEN:        _____

DENIED:       _____

MODIFIED:     _____

---

[33]        Fifth Circuit Pattern Jury Instructions – Civil at § 11.9.2 (2006) (modified);  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677 (1988).

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JENNIFER ROUSSELL, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,

        PLAINTIFF,

vs.

BRINKER INTERNATIONAL, INC.,

        DEFENDANT.

§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 4:05-CV-03733

Jury Requested

## DEFENDANT BRINKER INTERNATIONAL, INC.'S PRETRIAL MEMORANDUM OF LAW

Respectfully submitted,

**Fraser A. McAlpine**
State Bar No. 13321300
Federal I.D. No. 3407
**HUNTON & WILLIAMS LLP**
Bank of America Center
700 Louisiana Street, Suite 4200
Houston, Texas 77002
Phone: 713.229.5700
Fax:  713.229.5750

ATTORNEY-IN-CHARGE FOR DEFENDANT
Brinker International, Inc.

Of COUNSEL:

**Laura M. Franze**
State Bar No. 07389600
**Holly H. Williamson**
State Bar No. 21620100
**M. Brett Burns**
State Bar No. 03447900

**HUNTON & WILLIAMS, LLP**

Pursuant to Section 8.B(3) of the Court's Procedures, defendant Brinker International, Inc. hereby submits its Pretrial Memorandum of Law.

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Jennifer Roussell, a former food Server at Chili's Grill & Bar, filed this lawsuit in November 2005, alleging that Defendant Brinker International, Inc.[1] violated the Fair Labor Standards Act by requiring her and other Chili's Servers to share their tips with employees assigned to perform Quality Assurance work (QAs). *See generally* Complaint ("Cmplt"). The Complaint alleges that because QAs are not eligible to participate in a tip pool, by requiring Servers to share tips with QAs, Defendant cannot rely on tip credits to calculate Servers' pay. *See id.* The Complaint seeks damages in the amount of tip credit taken by Defendant to pay its Servers. *See id.*[2] The Court approved an agreed notice to potential class members in August 2006. (Dkt. No. 22.) Approximately 3,500 individuals proceeded to opt-in to this litigation.

On December 17, 2007, Defendant filed its Motion to Decertify Collective Action. (Dkt. No. 65.) Defendant asserted that decertification was warranted due to Plaintiff's decision to pursue a legal theory predicated on alleged Manager coercion that necessarily requires individualized analysis, the verifiable absence of common proof, and record evidence showing that the facts required to prove Manager coercion (liability), and QA job duties actually performed (an affirmative defense) vary materially based on the particular Managers, Servers,

---

[1] Defendant Brinker International, Inc. has always maintained in this action and has notified Plaintiff's counsel at every reasonable opportunity that the entity that employed the opt-in plaintiffs was Brinker International Payroll Company, L.P. Prior to trial, Defendant's counsel intends to negotiate an agreement with Plaintiffs' counsel to substitute Brinker International Payroll Company, L.P. in the place of Brinker International, Inc. If parties' counsel are not able to resolve this issue, Defendant intends to request a jury charge to be given at trial instructing the jury to assess whether Brinker International, Inc. was Plaintiffs' employer.

[2] While the Complaint also seeks wages equal to the amount Plaintiff and other opt-ins were required to tip out to QAs, Plaintiff's counsel stated during the June 10, 2008 Hearing that Plaintiff would no longer pursue this remedy and clarified that the sole remedial measure she would seek in this action is the difference between the sub-minimum wage and the minimum wage (*i.e.*, the tip credit applied by Defendant). *See* June 10, 2008 Hearing Tr. at 7:2-8:11.

and QAs considered, as well as over time.  *See* Df's MTD (Dkt. No. 65) at 19-25.[3]

On the same day, Defendant filed its motion for summary judgment, arguing, *inter alia*, that even if Chili's Servers were forced to share tips with QAs as Plaintiff Roussell alleges, her claims would nonetheless fail as a matter of law because Chili's QAs -- even though their day-to-day job duties may have varied per restaurant, per QA, and over time -- performed overall customer service tasks that enhanced the dining experience of Chili's guests and therefore were tip pool eligible.  Df's MSJ (Dkt. No. 82) at 2-8, 17-23.  In this motion, Defendant also highlighted that a subset of QAs, who usually worked as a Server, did not lose his/her tip pool eligibility because he/she periodically worked as a QA.  *Id.*

On July 9, 2008, the Court issued an Order denying Defendant's motion for summary judgment.  (Dkt. No. 162.)  In denying Defendant's motion for summary judgment, the Court found that there was a genuine issue of fact as to whether the QAs are eligible to participate in a tip pool.  *See* Order at 13-28.

As for Defendant's motion to decertify, the Court granted in substantial part in the same July 9, 2008 Order and in subsequent Orders dated September 30, 2008 and January 26, 2009 the relief sought in that motion.  In so doing, the Court found, among other things, that (i) the lawsuit involves "critical questions of fact that vary from plaintiff to plaintiff and restaurant to restaurant, and does not allow resolution of the case in a single collective proceeding," (ii) "[t]he remedial purposes of the statute do not justify proceeding collectively in a case that involves as many disparate circumstances as this one," and (iii) "individualized inquiries render this case

---

[3] Defendant thereafter repeatedly reasserted its position that the lawsuit should be decertified and that it was unfair to proceed to trial using representative proof.  *See, e.g.*, Df's MTD Reply (Dkt. No. 122); Df's Objections and Resp. to Pl's Revised Trial Plan (Dkt. No. 158); Df's Resp. to Plf's Revised Trial Plan (Dkt. No. 167); Df's Resp. to Ps' Supp. Brief (Dkt. No. 194).  Defendant's decertification arguments also were extensively discussed in hearings, including the June 10, 2008, October 30, 2008, and February 10, 2009 hearings.

unsuitable for collective action under Section 216 of the FLSA."  September 30, 2008 Order

(Dkt. No. 172) at 5; July 9, 2008 Order (Dkt. No. 162) at 28.  The Court thereafter dismissed the

claims of approximately 3,500 opt-in plaintiffs without prejudice, leaving only the claims of the

56 opt-in plaintiffs.  September 30, 2008 Order at 6; January 26, 2009 Order (Dkt. No. 197) at

23.

      On February 2, 2009, the Court announced a February 23, 2009 setting for jury trial as to

the claims of the 56.  (Dkt. No. 198)  On February 6, 2009, Defendant filed a Motion for

Expedited Relief, To Vacate Trial Setting, And For Order Compelling Plaintiff to File A Trial

Plan Prior to Issuance of New Trial Setting, or, Alternatively, Motion to Sever or Decertify (Dkt.

No. 200).  At the February 10, 2009 hearing on Defendant's motion, the Court reset trial to

March 9, 2009.  The Court ruled, over Defendant's objections, that the 56 plaintiffs could present

the issues of Manager coercion and QA job duties actually performed at trial using representative

proof.  The Court ordered that the 56 plaintiffs serve to Defendant a list of their trial witnesses

before trial.  Defendant has since received Plaintiffs' trial witness list and is aware that Plaintiffs

intend to try the claims of the 56 opt-in plaintiffs based on a purported representative sampling of

14 opt-in plaintiffs and 5 corporate witnesses.

## II.    THE REQUIRED ELEMENTS OF PLAINTIFFS' CLAIM FOR UNPAID WAGES UNDER THE FLSA

### A.    Plaintiffs' "Tipped Employee" Status

      The FLSA permits an employer to pay a "sub-minimum wage" to "tipped employees."

WH Admin. Op. - 468 (Sept. 5, 1978) ("Waitresses"); 29 U.S.C. §§ 203(m), (t).  The difference

between the minimum wage and the amount a "tipped employee" must be paid directly by the

employer is commonly referred to as a "tip credit."  *See generally* 29 U.S.C. § 203(m); 29 C.F.R.

§ 531.59.  The Act defines a "tipped employee" as an employee "engaged in an occupation in

which he [or she] customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). In order to apply a tip credit towards an employee's minimum wage, an employer must satisfy two conditions: (1) the employer must inform the employee that it will take a tip credit and (2) tipped employees must retain all tips they receive, except tips included in a tipping pool among employees who customarily and regularly receive tips. 29 C.F.R. § 203(m).

The parties do not dispute the following:

- Chili's Servers must receive at least the applicable minimum wage, including tips and the payment of the sub-minimum wage, 29 U.S.C. § 206(a)(1);

- Chili's Servers qualify as "tipped employees" under the FLSA, *see* Cmplt. ¶ 13; Defendant's MSJ at 17;

- Defendant informed Plaintiffs that it would take a tip credit as to them; and

- The actual compensation received by Plaintiffs including tips and the sub-minimum wage was always in excess of the applicable minimum wage.

Instead, the parties dispute whether Plaintiffs retained all tips they received. Specifically, Plaintiffs allege that Chili's required its Servers to share tips with QAs, who are not eligible to participate in a tip pool. Cmplt. ¶¶ 5, 12-14. As the party seeking payment of minimum wages, Plaintiff bears the burden of proving that Defendant required them to share tips with non-tip pool eligible employees. *See Reed v. Johnson*, No. Civ.A. 93-1652, 1995 WL 684882, *1 (E.D. La. 1995) ("To make a prima facie showing under the FLSA, plaintiff has . . . to prove she was not adequately paid minimum wages . . . as required by the Act."); *see also Reyes v. Texas EZPawn, L.P.*, No. V-03-128, 2007 WL 314315, at *1 (S.D. Tex. Oct. 24, 2007).

Setting aside the issue of whether an alleged tip pooling between Servers and QAs is valid (which is addressed *infra*), during the course of this litigation, the parties proposed different

standards as to what it means for an employer to require or coerce an employee to share tips. Defendant proposed a legal standard adapted from *Burlington N. & Santa Fe Ry. Co. v. White*, namely, that plaintiff must show a reasonable Server would have found a manager's action materially coercive, which in this context means it well might have dissuaded, by force or threat, a reasonable Server from believing that tipping out a QA was voluntary, but instead was required.  126 S. Ct. 2405, 2415 (2006); *see also* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "coerce" as "[t]o compel by force or threat").  *See* Df's MTD at 22-23; Df's MTD Reply at 15.  Plaintiffs instead proposed that a tip pool is not voluntary unless it is "free from any coercion whatever," and "[p]hrased slightly differently, a mandatory tip pool exists when management is involved in the process of tip sharing."  Plf's Opp. to MTD (Dkt. No. 103) at 16-17.  The Court decided to adopt Plaintiffs' proposed legal standard for coercion.  *See* July 9, 2008 Order at 34-37.  Defendant respectfully maintains that the standard adopted by the Court -- "free from any coercion whatever" -- which the Court has stated would include things such as "suggesting or recommending that the servers share tips with QAs orally or in writing," "facilitating tip outs to QAs," or "implying that servers should tip out QAs orally, in writing or by facilitating tip outs to QAs" (*see* July 7, 2006 Order at 37) -- is an overly broad, unworkable, and incorrect standard which does not take into account the various non-management factors that may influence a Server's decision to tip a QA.  Defendant further maintains that such an overly board standard of "coercion" (basically, that any management involvement would suffice) essentially renders Plaintiffs' burden of proof meaningless.[4]  Furthermore, the jury should not be

---

[4] Under the overly broad definition of coercion the Court adopted as its "coercion" standard, over Defendant's objection, any instance of a manager's involvement in the tipping process, however minimal, triggers liability. Such a definition is problematic because it encompasses numerous situations in which a reasonable person would find no coercion by management, such as if: (i) a manager suggests QA tipping might be a good idea, but stresses such tipping is voluntary, (ii) a manager is willing to collect or distribute QA tips intended to be voluntary, or even (iii) if it is alleged a manager may have failed to curtail employee peer-pressure to tip QAs. Plaintiff's proposed definition of coercion ignores the realities of the workplace and the restaurant business.

left to speculate on the legally actionable meaning of the term "coercion," especially where, as here, even the parties who have litigated this case for over three years cannot reach agreement as to what this term means. *See, e.g., Cruthirds v. RCI, Inc.*, 624 F.2d 632, 636 (5th Cir. 1980) ("There is [a] fundamental error[] in instructions which . . . leave the jury to speculate on an essential point of law.").[5]

As briefed in Defendant's Application for Immediate Relief, Motion for Reconsideration of Decertification Rulings, Alternatively to Certify Rulings for Interlocutory Appeal, Alternatively to Modify the Order of Proof at Trial (Dkt. No. 202), if the relief sought by Defendant in that Application is not granted by the Court, Defendant will concede solely for purposes of trial that the fourteen opt-in plaintiffs designated to testify at trial were not "free from any coercion whatsoever" at their respective restaurants, under the interpretation of that phrase that Defendant understands the Court intends to use to determine whether Servers shared tips voluntarily or were coerced to do so.  This concession is made for the limited purpose of this trial, because the Court's articulated standard so severely prejudices Defendant in a trial of this case before a jury, and for purposes of judicial economy.[6]

---

Adopting Plaintiff's' proposed definition ignores the realities of the workplace and opens the floodgates to the very concerns voiced by the U.S. Supreme Court in *Burlington* – that an employee would drag an employer to court for any trivial harm, for "petty slights or minor annoyances that often take place at work and that all employees experience[,]" for "'personality conflicts at work that generate antipathy,'" for "'snubbing by supervisors and coworkers[,]" or for "simple lack of good manners" – all of which are non-actionable.  *See Burlington*, 548 U.S. at 68 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996); 2 EEOC 1998 Manual § 8 p.8-13).

[5] While the Court held at the decertification and summary judgment stage that it believes that the standard set forth by the Department of Labor – whether the tipping is "free from any coercion whatsoever and outside any formalized arrangement or as a condition of employment" – is both persuasive and workable, July 9, 2008 Memorandum and Order at 37, Defendant submits that (i) what is a workable standard during the briefing stage may not necessarily be the case at trial and (ii) what is a workable standard for the Court might not necessarily be the case for the jury.

[6] Defendant's concession is limited to the fourteen opt-in plaintiffs designated to testify at trial and does not extend to other members of the 56 opt-in group.  Defendant maintains all other objections, including objections that it is error to permit fewer than fifty-six opt-ins to present representative proof as evidence that management coerced all fifty-six opt-ins, and that it is error to allow the jury to extrapolate from that

As stated in Defendant's Application, Defendant takes this action subject to and without waiving its objections *and expressly reserving the right to appeal on all issues, including all decertification, representative proof, and summary judgment rulings.* Defendant expressly reserves the right to appeal the denial of its motion to decertify on all grounds, including, without limitation, challenges to the propriety of presenting claims of coercion by management collectively at trial, to using representative proof to adjudicate such claims, to adjudicating such claims under an incorrect legal standard adopted by the Court, and to being required to proceed to trial without a trial plan.

## II.   REQUIRED ELEMENTS FOR DEFENDANT'S DEFENSE THAT ITS QAs WERE TIP POOL ELIGIBLE

Defendant argues that even if it allegedly required its Servers to share tips with QAs, its QAs are eligible to participate in a tip pool. As noted above, the FLSA expressly permits pooling of tips among "employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). Defendant does not dispute that it is its burden to show that its QAs are tip pool eligible, *see Reich v. Priba Corp.*, 890 F. Supp. 586, 595-96 (N.D. Tex. 1995), but maintains that the following considerations apply when determining whether a tip pool is valid.

### A.   "Tipped Employees" Are Different From "Employees Who Customarily and Regularly Receive Tips"

Based on proper reading of the applicable subsections of the FLSA, the terms "tipped employee" and "employees who customarily and regularly receive tips" are different, with different meanings and histories. The term "tipped employee" is used solely to describe the

---

evidence to reach conclusions about opt-ins who do not testify. Moreover, Defendant's concession is further limited to any period of time when they contend that management coerced them to share tips with the QA. Accordingly, to the extent that any testifying opt-in has admitted that he or she stopped sharing tips with the QA, or continued to share tips with the QA, but did so voluntarily, that testimony bars any recovery for the period covered by that admission. Thus, for example, Jennifer Roussell testified that sharing tips with the QA became completely voluntary beginning in January of 2007, and therefore Brinker's concession with respect to Jennifer Roussell is limited to the period before January of 2007.

employee who may be paid the sub-minimum wage, not to describe those who qualify for a mandatory tip pool. *See* 29 U.S.C. §§ 203(m), (t).

When Congress amended subsection 203(m) to define who could be in a tip pool, Congress did *not* state that "this subsection shall not be construed to prohibit the pooling of tips among *tipped* employees." Rather, Congress identified individuals properly included in a tip pool as "employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). Accordingly, the statutory language governing who may be subject to a *tip credit* is different from the statutory language governing eligibility for participation in a mandatory *tip pool*. To be subject to a *tip credit*, that is, to be a "tipped employee," the employee must be "engaged in an occupation in which he [or she] customarily and regularly receives more than $30 a month in tips." *Id.*, §§ 203(m), (t). To be eligible to participate in a mandatory *tip pool*, the employee must only "customarily and regularly receive tips;" he/she need not also be a "tipped employee." *Id.* § 203(m).

Based on the statements made by Plaintiffs' counsel during status conferences with the Court, Defendant believes that it is undisputed that employees eligible for the tip pool do not need also qualify as "tipped employees." *See, e.g.,* Appendix ISO Motion for Summary Judgment (Dkt. No. 98), Ex. 112, Transcript of July 9, 2007 Status Conference at 44 ("That is not our position. Its [sic] not our position that only people that are paid at subminimum wage can participate in a tip pool. They'll win that issue.")

## B.     "Customarily and Regularly" For Purposes of Tip Pool Eligibility Denotes Frequency

The phrase "customarily and regularly" for purposes of tip pool eligibility "signifies a frequency which must be greater than occasional, but which may be less than constant." 29 C.F.R. § 531.57. Thus, whether an employee may properly be included in a mandatory tip pool

under subsection 203(m) depends solely on the frequency with which the employee receives tips.

### C.   Employees Are Not Required to Interact with Guests to Be Tip Pool Eligible

Neither subsection 203(m) nor the regulations require that employees receive tips directly from guests to be included in a mandatory tip pool.  *See Marshall v. Krystal Co.*, 467 F. Supp. 9, 13 (E.D. Tenn. 1978) (waiters, bus persons, and bartenders who "receive customarily and regularly as tips from customers *or by apportionment of such pools* amounts exceeding [the amount required by subsection 203(t) monthly, each" are eligible to participate in a tip pool (emphasis added)); *see also* DOL Handbook § 30d04(a) ("It is not required that all employees who share in tips must themselves receive tips from customers.").   To the contrary, "[w]here employees practice tip splitting, as where waiters give a portion of their tips to busboys, the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retained them in applying the provisions of subsection [20]3(m) and [20]3(t)." 29 C.F.R. § 531.54.  Accordingly, an employee may be "indirectly tipped" and still properly be included in a mandatory tip pool.

In *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663 (W.D. Tex. 2007), the court considered the question of whether expediters could be in a tip pool even though they had little customer interaction.  The court observed:

> Plaintiff's main contention seems to be that no service personnel other than waiters and busboys may share in the tip pool and that expediters do not have enough direct contact with customers to allow for sharing in the tip pool . . . . Nor does a busboy normally directly receive tips from customers or directly interact with them; yet, busboys are still considered as employees who customarily and regularly receive tips.

*Id*. at 670-71.  Citing 29 U.S.C. § 203(m), the court further observed, "Nothing in the statute specifically requires that an employee who shares in a tip pool interact directly with customers." *Id*. at 671 n.5.  Nor can such a requirement be read into the statute, as the legislative history

makes clear. *See* Senate Report 93-690 at 43 (employees who contribute to customer service, like "waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc.," are properly included in tip pool).[7]  Instead, employees who perform important customer service functions, similar to those performed by waiters/waitresses, bellhops, counter personnel who serve customers, busboys/girls, server helpers, and service bartenders, are tip pool eligible. *See* 29 U.S.C. § 203(m); WH Admin. Op. -- 468 (Sept. 5, 1978) ("Waitresses"); 29 C.F.R. §§ 531.57, 531.59; Dept of Labor Field Operations Handbook § 30d04(a).[8]

### C.  A "Tipped Employee" May Be Assigned "Related Duties" Without Losing His/Her "Tipped Employee" Status or His/Her "Tip Pool" Eligibility

If an employee is a "tipped employee," that employee automatically qualifies for a tip pool. *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301 (6th Cir. 1998).  A "tipped employee" is still a "tipped employee" and therefore, still tip pool eligible, even if he/she is required to perform non-tip producing duties related to his/her job.  29 C.F.R. § 531.56(e).  A "waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," for example, does not change her occupation and cease being a waitress merely because she performs those duties; to the contrary, "[r]elated duties in an occupation that is a tipped occupation need not by themselves be directed towards producing tips." *Id.*

The U.S. Department of Labor Field Operations Handbook ("DOL Handbook") also

---

[7] Defendant is aware that the Court previously rejected Defendant's argument that customer interaction is not necessary for tip pool eligibility and required that some customer interaction is required. July 9, 2008 Order at 20-21.  While respectfully maintaining that its proposed standard is the correct standard under the law and while reserving all appellate arguments, Defendant submits that even according to the standard adopted by the Court, the degree of required customer interaction is a sliding scale, such that in instances where an employee performs important customer service functions, only minimum customer interaction is required for that employee to be tip pool eligible. *See id.*

[8] While not binding on this Court, the Handbook is a persuasive authority. *Myers v. The Copper Cellar Corporation*, 192 F.3d 546, 554 (6th Cir. 1999).

recognizes that 29 C.F.R. § 531.56(e) "permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips. . . ." DOL Handbook § 30d00(e) (Dec. 9, 1988), *available at* http://www.dol.gov/esa/whd/foh. Thus, a server who performs "duties . . . incidental to the duties of the server (waiter/waitress)," continues to be employed in the tipped occupation of server. *Id.* The DOL Handbook proposes a limit of 20 percent on the amount of time that tipped employees can perform "general preparation work or maintenance," and suggests that an employer should not utilize the "tip credit" if preparation and maintenance work exceeds that percentage. *Id.*

Thus, as to the subset QAs whom the jury finds were primarily Servers who incidentally clocked in as QAs, Brinker submits that the jury should be instructed that these Server-QAs qualify as tipped employees and therefore are tip pool eligible.

## III.   DAMAGES CONSIDERATIONS

### A.   Amount of Unpaid Minimum Wages Due to Plaintiff

Without conceding that it is Plaintiffs' burden to prove the amount of unpaid wages owed to them under the FLSA, *see Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551-52 (6th Cir.1999), and without waiving, for purposes of trial and appeal, its objections to the procedural and substantive rulings made in this case, Defendant has offered to stipulate with Plaintiffs -- solely for the purpose of narrowing the contested issues to be resolved at trial -- to the amount of potential back pay owed to the 56 opt-in plaintiffs if they are successful at trial.

Similarly, while Plaintiffs bear the burden of establishing willfulness for purposes of determining whether a two year or three year statute of limitations applies to their claims for paid wages, *see Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990); 29 U.S.C.

§ 255(a), without waiving, for purposes of trial and appeal, its objections to the procedural and substantive rulings made in this case, and without conceding in any way the issue of willfulness, Defendant has agreed to stipulate with Plaintiffs -- solely for the purpose of narrowing the contested issues to be resolved at trial -- that a three year statute of limitations period apply as to the amounts owed to the 56 opt-in plaintiffs if they are successful at trial.

### B.    Liquidated Damages

Plaintiffs may seek liquidated damages equal to the amount of their unpaid overtime damages pursuant to 29 U.S.C. § 216(b).  Liquidated damages may be reduced or denied if "the employer shows . . . that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]...."  29 U.S.C. § 260.  A determination regarding good faith under 29 U.S.C. § 260 is left to the discretion of the trial court.  *Id.*

Defendant bears the burden of establishing good faith.  *See, e.g., Bankston v. Illinois*, 60 F.3d 1249, 1254 n.2 (7th Cir. 1995).  Defendant must prove both "subjective" and "objective" good faith in order to satisfy section 260.  *See, e.g., Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990).  "Subjective" good faith requires that the employer had an honest intention to ascertain and follow the requirements of the FLSA.  *See, e.g., Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991).  "Objective" good faith requires that any violations were objectively reasonable because the defendant took affirmative steps to ensure its compliance with the Act.  *See, e.g., Karr v. City of Beaumont*, 950 F. Supp. 1317, 1325-26 (E.D. Tex. 1997).

Dated: March 2, 2009                               Respectfully submitted,


                                                   /s/ Fraser A. McAlpine
                                                   **Fraser A. McAlpine**
                                                   State Bar No. 13321300
                                                   Federal I.D. No. 3407
                                                   **HUNTON & WILLIAMS LLP**
                                                   Bank of America Center
                                                   700 Louisiana Street, Suite 4200
                                                   Houston, Texas 77002
                                                   Phone: 713.229.5700
                                                   Fax:  713.229.5750

                                                   ATTORNEY-IN-CHARGE FOR DEFENDANT
                                                   BRINKER INTERNATIONAL, INC.

Of COUNSEL:

**Laura M. Franze**
State Bar No. 07389600
**Holly H. Williamson**
State Bar No. 21620100
**M. Brett Burns**
State Bar No. 03447900
**HUNTON & WILLIAMS, LLP**

13

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record via the Southern District of Texas' CM/ECF electronic filing system on March 2, 2009:

| |
|---|
| Martin A. Shellist, Esq.<br>Daryl J. Sinkule, Esq.<br>SHELLIST & LAZARZ LLP<br>1900 West Loop South<br>Suite 1910<br>Houston, Texas 77027 |
| Richard J. Burch<br>BRUCKNER BURCH PLLC<br>1415 Louisiana #2125<br>Houston, TX 77002 |
| David A. Borgen<br>James Kan<br>Laura L. Ho<br>GOLDSTEIN, DEMCHAK, BALLER, BORGEN &<br>DARDARIAN<br>300 Lakeside Drive<br>Suite 1000<br>Oakland, CA 94612 |

/s/ Fraser A. McAlpine
**Fraser A. McAlpine**

14

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JENNIFER ROUSSELL,** on Behalf of Herself and Others Similarly Situated, ] | CASE NO. 4:05-CV-03733 |
| Plaintiffs, ] | |
| v. ] | JURY TRIAL |
| **BRINKER INTERNATIONAL, INC.,** ] | |
| Defendant. ] | |

**PLAINTIFFS' PRETRIAL MEMORANDUM OF LAW**

1.   **INTRODUCTION.**

This is a case brought pursuant to the minimum wage provisions of the Fair Labor

Standards Act (FLSA).  Plaintiffs are a group of Chili's waiters seeking unpaid minimum wages

and liquidated damages.  Defendant Brinker – Chili's owner and operator - denies, and asserts

affirmative defenses to, Plaintiffs' claims.

2.   **PLAINTIFFS ARE ENTITLED TO THE MINIMUM WAGE UNDER THE FLSA.**

It is undisputed in this case that Plaintiffs are entitled to the FLSA's minimum wage.  *See*

29 U.S.C. § 206.  The parties disagree, however, as to whether Brinker owed Plaintiffs the full

minimum wage or a lesser amount in light of the tips earned by Plaintiffs.  The FLSA allows

employers to pay tipped employees at an hourly rate below the minimum wage if the employees'

wages and tips, added together, meet or exceed the minimum wage. 29 U.S.C. § 203(m).

To take advantage of this tip credit provision, however, an employer must: (1) inform the

employee of the statutory requirements related to the tip credit; and (2) allow the employee to

60274-1

keep all tips received, with an exception made for the pooling of tips among customarily tipped employees. 29 U.S.C. § 203(m). As an exception to the FLSA's minimum wage requirement, courts "narrowly construe" the provisions of Section 203(m) against the employer. *Myers v. Copper Cellar Corp.*, 192 F.3d 546, n. 8 (6th Cir. 1999). Therefore, the "two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage." *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (*citing Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994); *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992)); *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334 *1 (S.D.Tex. 2006)(Rosenthal, J.).

**1.      Brinker Failed to Inform Plaintiffs of the Provisions of Section 203(m).**

An employer bears the burden of showing that it has satisfied the notice requirement of the FLSA's tip credit provision. *See, e.g., Bernal v. Bernal v. Vankar Enterprises, Inc.*, 579 F.Supp.2d 804, 808 (W.D.Tex. 2008). Specifically, Brinker must demonstrate that it informed Plaintiffs:

(1)      of the dollar amount of the minimum wage required by law;

(2)      that Brinker was paying Plaintiffs at a rate below the minimum wage because it intended to take a tip credit;

(3)      of the dollar amount of tip credit claimed by Brinker;

(4)      that Plaintiffs' cash wage plus the employee's tips must equal at least the minimum wage or Brinker would make up the difference; and

(5)      that Plaintiffs were entitled to retain all tips other than those contributed to a valid tip pool.

*See* 29 U.S.C. § 203(m). Brinker could meet this burden, for example, by providing Plaintiffs "with a copy of § 203(m) **and** informing them that their tips will be used as a credit against the

minimum wage as permitted by law." *Chan v. Sung Tue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, at *52 (S.D.N.Y. Feb. 1, 2007) (emphasis added).  Simply posting the Department of Labor's poster is *insufficient*.  Wage & Hour Opinion Letter, 1997 WL 958300 (January 21, 1997).

Brinker must inform Plaintiffs of the tip credit provisions *prior* to taking a tip credit.  *See, e.g., Marshall v. Gerwill*, 495 F.Supp. 744, 753 (D. Md. 1980) (notice must be given prior to taking the tip credit);  120 Cong. Rec. 8763 (March 28, 1974) (employer must inform its employees of Section 203(m)'s requirements "before the credit … is applied").  Brinker cannot rely on knowledge an employee obtained from prior experience in the industry.  *Bernal*, 579 F.Supp.2d at 809.  If Brinker failed to provide the requisite notice, it cannot claim a tip credit.  Plaintiffs believe the evidence will show Brinker failed to provide the requisite notice.

### 2.     Plaintiffs Did Not Retain All Their Tips.

In 1974, Congress amended Section 203(m) of the FLSA "to make clear the original Congressional intent that an employer could not use the tips of a tipped employee to satisfy more than 50 percent of the Act's applicable minimum wage." Senate Report 93-690, p. 43; DOL Opinion Letter, 1975 WL 40945 (April 30, 1975). Further, the amendments were meant to ensure "that all tips received by such employee must be retained by the employee." *Id.*; *see also*, DOL Opinion Letter, 1975 WL 40945 (April 30, 1975). Therefore, "[w]ith respect to tipped employees, the tip credit provision of the act is not to apply unless … all tips received by a tipped employee have been retained by the tipped employee (either individually or through a pooling arrangement)." House Report 93-913, reprinted at 1974, 1974 U.S.C.C.A.N. 2811 at *2822, 1974 WL 11448 (March 15, 1974).

Chili's bears the burden of proving that a valid tip pool agreement existed at its restaurants among regularly and customarily tipped employees. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595-96 (N.D.Tex.1995) (*citing Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir.1979). The presence of ineligible employees in a tip pool precludes the employer from claiming a "tip credit." *See Marshall v. Krystal Co.*, 467 F.Supp. 9, 12-13 (D.C. Tenn. 1978) (tip pool which included "preparation persons" was invalid). When "a tipped employee … is required to share tips with other employees who do not meet the definition of *tipped employee* [§203(t)], the tip pool is invalid." DOL Opinion Letter, 1997 WL 998047 (November 4, 1997) (emphasis added); *see also, Myers,* 192 F.3d at 550.

As discussed exhaustively in Plaintiffs' Response to Brinker's Motion for Summary Judgment (Doc. 105) and this Court's Order Denying Brinker's Motion for Summary Judgment (Doc. 162), Brinker must prove Plaintiffs were engaged in an occupation that customarily and regularly receives tips. To make this showing, Brinker must prove by a preponderance of evidence that the average customer would normally expect QAs to receive at least some of the tips. *Wajcman v. Investment Corp. of Palm Beach*, 2009 WL 465071, at *4 (S.D.Fla. Feb. 23, 2009). If the average customer would not contemplate tipping QAs, nor expect QAs to share in the tips, QAs are not employees who customarily and regularly receive tips. *Id.* In addition, Brinker must establish QAs had sufficient customer interaction and that the QAs' primary duties were customer service functions. *Roussell v. Brinker Intern., Inc.*, 2008 WL 2714079, at *10 (S.D. Tex. July 9, 2008). Finally, industry custom is relevant to the determination. Therefore, Brinker is required to show the practice of including the position in tip pools must be sufficiently widespread so that the position could be properly characterized as <u>customarily</u> receiving tips.

DOL Wage & Hour Opinion Letter WH-536, 1989 WL 610348 (Oct. 26, 1989) (emphasis in original).

### 3. Only Voluntary Tip Sharing is Otherwise Permitted.

Brinker contends that even if QAs are not employees who customarily and regularly receive tips, Plaintiffs shared their tips with QAs "voluntarily." "Voluntarily" means free from any coercion whatever and outside any formalized arrangement or as a condition of employment. Department of Labor Field Operations Handbook § 30d04(c); *Zhao v. Benihana,* 2001 WL 8545000, at *2 (S.D.N.Y. May 7, 2001); *Roussell*, 2008 WL 2714079, at *18. The standard is objective, so that if a reasonable employee might feel pressure to share tips with a QA as a result of Brinker's actions, the sharing of tips is not "free from any coercion whatever." *Roussell*, 2008 WL 2714079, at *18.

### 3. PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES.

Money in hand is worth more than the same amount in the future because it can earn interest or be invested. Ordinarily, an award of prejudgment interest could be used to compensate employees for the lost time value of their unpaid wages. However, the Fifth Circuit has consistently held that prejudgment interest is unavailable to employees suing under § 216 of the FLSA. *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993).

Instead, the FLSA's liquidated damage provision provides compensation for the employer's failure to pay workers on time. *See* 29 C.F.R. § 790.22(a) n. 137. Specifically, the FLSA presumes that employees are entitled to an additional amount equal to their actual damages as liquidated damages. *See* 29 U.S.C. § 216(b); *Tiller Helicopter Servs., Inc.*, 8 F.3d at 1031. These damages are compensatory, not punitive. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

A court can reduce or deny liquidated damages only if the employer shows it acted in good faith and had reasonable grounds not to pay its employees. 29 U.S.C. § 260; *Tiller Helicopter Servs., Inc.*, 8 F.3d at 1031. If the employer fails to meet its burden to show both subjective good-faith and objectively reasonable behavior, "the duty of the court to award liquidated damages in an amount equal to the unpaid [overtime] [is] ministerial, not discretionary." *Mireles v. Frio Foods*, 899 F.2d 1407, 1414 (5th Cir. 1990). Further, even if the employer meets its burden, the court still retains discretion to award liquidated damages. 29 U.S.C. § 260; *Lee v. Coahoma County, Mississippi*, 937 F.2d 220, 227 (5th Cir. 1991).

To be eligible for a reduction in liquidated damages, the employer must show it purposefully "engaged in the acts proven to be violations, but did so under a mistaken, although reasonable belief, that its acts were in conformity with the law." *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 n. 34 (5th Cir. 1998). An employer cannot meet this burden by "professing ignorance" of the FLSA's requirements. *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1262 (5th Cir. 1986). Rather, an employer has a "duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468-69 (5th Cir. 1979); *Karr v. City of Beaumont*, 950 F. Supp. 1317, 1325-26 (E.D. Tex. 1997).

## 4.   BRINKER'S VIOLATIONS WERE WILLFUL.

The FLSA's statute of limitations is three years where an employer's violation of the FLSA is willful. 29 U.S.C. § 255. A violation is willful if the employer knew, or showed reckless disregard for whether, its conduct was prohibited. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677 (1988). Liquidated damages *must* be awarded where a jury determines that a willful violation was shown. *Tyler v. Union Oil Co.*, 304 F.3d 379, 401 (5th Cir. 2002).

Dated:  March 2, 2009                   Respectfully submitted,


                                        By:  ____/S/_____

                                        David Borgen, CA Bar No. 099354
                                        borgen@gdblegal.com
                                        Laura L. Ho, CA Bar No. 173179
                                        lho@gdblegal.com
                                        James Kan, CA Bar No. 240749
                                        jkan@gdblegal.com
                                        Goldstein, Demchak, Baller, Borgen & Dardarian
                                        300 Lakeside Drive, Suite 1000
                                        Oakland, CA  94612-3534
                                        (510) 763-9800

                                        Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument has been
forwarded to all counsel of record via the Southern District's CM/ECF electronic filing system
on March 3, 2009.


                                        _____/S/_____

                                        James Kan

60274-1                                      - 7 -