UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JENNIFER ROUSSELL, on Behalf of** | § | |
| **Herself and Others Similarly Situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. H-05-3733** |
| **v.** | § | |
| | § | |
| **BRINKER INTERNATIONAL, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiffs' Motions in Limine (Doc. Nos. 207, 208, 210) and Defendant's Application for Immediate Relief (Doc. No. 202.)   For the following reasons, one of Plaintiffs' Motions will be denied, one will be granted, and the other granted in part. Defendant's Motion will be denied.

## I. MOTION IN LIMINE REGARDING TESTIMONY FROM DEFENDANT'S OTHER RESTUARANTS

Plaintiffs contend that the Court should exclude evidence of Defendant's practices at restaurants other than those of the 14 representative witnesses Plaintiffs chose to testify at trial. They argue that evidence from the remaining stores is irrelevant and prejudicial under FED. R. EVID. 403. In addition they contend that evidence of Defendant's restaurant practices for periods that fail to overlap with a shift worked by the representative Plaintiffs is inadmissible opinion testimony by a lay witness. FED. R. EVID. 701. At a recent pre-trial hearing, Plaintiffs argued that allowing testimony regarding the practices at the other restaurants still at issue in the case defeats the purpose of using representative testimony to conserve judicial resources. (Mar. 4, 2009, Pre-Trial Hr'g.) Plaintiffs

contended that to allow testimony from other stores would reopen the Court's ruling that the deposed opt-ins were similarly situated and would render the upcoming trial a series of mini-trials concerning each store, contrary to the spirit of a collective action.

Defendant responds that a question remains whether the 14 representative witnesses are representative of the remaining group of opt-ins. (Mar. 4, 2009, Pre-Trial Hr'g.) It noted that, in at least one other case, the court decertified the action mid-way through trial after determining that the chosen representative witnesses were not representative of the class.

In Fair Labor Standards Act ("FLSA") cases, Plaintiffs may prove their case using representative testimony. *See, e.g., Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d. Cir. 1994). A defendant may then respond with evidence that "individual employees are excepted from the pattern or practice" and with evidence that "would tend to negate the inferences to be drawn from the testimony of the representative reporters." *Reich v. Gateway Press, Inc.*, 13 F.3d at 702. A court may decide to decertify the action, even after deciding motions on the merits, in light of trial evidence that the certified plaintiffs are not similarly situated. *See Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 571-72 (E.D. La. 2008).

Representative evidence, however, may be cabined for the sake of judicial efficiency. For example, in *Donovan v. Burger King Corp.*, a district court restricted the evidence introduced at trial to witnesses from only a few representative restaurants. 672 F.2d 221, 224 -225 (1st Cir. 1982) (upholding the district court's decision to only allow evidence from six of the 44 restaurants at issue when the defendant's counsel appeared to agree to this approach). In *Burger King*, the court selected a total of six representative

restaurants from lists prepared by each party and only allowed testimony from those restaurants. 672 F.2d at 225. The First Circuit approved of the court's practice of choosing the restaurants in order to streamline the case.

In this case, Plaintiffs chose 14 representative witnesses from a subset of the restaurants at issue. To restrict testimony to practices at those stores alone would unfairly prejudice Defendant by not allowing it to put on its best case. *Cf. Burger King*, 672 F.2d at 225 n.4. Unlike *Burger King*, Defendant has not agreed to limit testimony to a few Court-selected stores.

The Court would welcome a mutual decision that each party present a limited number of witnesses from a subset of the remaining restaurants. The Court does not believe, however, that the interests of judicial economy, the caselaw, or FED. R. EVID. 403 foreclose the presentation of evidence from the other restaurants involved in the case to demonstrate that the 14 representative witnesses are not representative of the class. The Court will entertain specific FED. R. EVID. 701 challenges as the need arises. Plaintiffs' Motion shall be denied.

## II. MOTION IN LIMINE REGARDING EVIDENCE THAT WAITERS WOULD OTHERWISE PERFORM THE TASKS PERFORMED BY QAS.

Plaintiffs assert that Defendant cannot justify its inclusion of QAs in a tip-pool by arguing that its waiters would otherwise perform the tasks performed by a QA or that servers earned more tips when working with QAs. They contend that Defendant's use of such evidence is irrelevant, prejudicial, and would cause jury confusion. Rather, Plaintiffs argue that Defendant must prove that QAs work in a customarily tipped occupation. Defendant argues that evidence that servers perform QA duties in the absence of a QA on a shift is relevant to the question of whether servers who also work QA shifts do not

3

work in separate occupations.[1] In addition, it responds that whether or not a position is tip eligible depends on whether the responsibilities of the job at issue include functions similar to those in tipped occupations. Furthermore, Defendant contends that evidence that servers earn more and greater tips when they work with QAs is relevant and admissible for three reasons: (1) to show that some QAs perform customer service functions and are part of an integrated customer service team, (2) to rebut Plaintiffs' evidence that QAs are "back of the house" food production team members who do not add value or perform customer service functions, and (3) to explain why restaurants operate tip-sharing arrangements.

In its July 2008 Order, the Court decided as a matter of law that servers who also work QA shifts are employed in a dual job, like the salad preparers in *Myers* and therefore this question will not be presented to the jury. In its July 2008 Order, the Court noted that, in the present lawsuit, the issue is the status of servers who worked entire shifts as QAs. It held that there was a "'clear dividing line' between the servers' duties as a server and the server's duties as a QA" such that the QA shift work was not incidental to the server job. Therefore, the Court rejected Defendant's summary judgment Argument that QA shift work was tip-pool eligible because the work involved server-related duties. (July 2008 Order, at 26.)

The Court believes that whether a QA is tip-pool eligible must be answered by comparing QAs' duties to those in positions with known tip-pool eligibility The Court defined the standard for tip-pool eligibility as: "if employees have more than minimal customer interaction and perform important customer service functions (i.e. functions that

---

[1] Defendant contends that, in its July 2008 Order, the Court did not grant Defendant's Motion for Summary Judgment on this ground, and therefore, the issue is still a jury question.

are more like those of water/waitresses, bellhops, counter personnel who serve customers, busboys/girls, or service bartenders than those of janitors, dishwashers, chefs or cooks, or laundry room attendants) they may participate in a mandatory tip-pool." In addition, "[e]mployees also may be eligible to participate in a mandatory tip-pool even if they have only minimal customer interaction, as long as their primary duties entail important customer service functions."(July 2008 Order, at 20-21.) A comparison of the customer service functions performed by QAs to those performed by those in tip eligible positions is crucial to analyzing the eligibility of QAs under that standard.

Likewise, courts from other circuits have analyzed whether the position in question is tip-pool eligible by comparing the plaintiffs' duties to those in positions with known tip-pool eligibility, like cooks or servers. For example, in *Myers v. Copper Cellar Corp.*, the Sixth Circuit affirmed a district court's holding that salad makers were not tip-pool eligible because "salad maker's duties more closely resembled those of non-tipped kitchen staff than tipped table service personnel...." 192 F.3d 546, 550 (6th Cir. 1999). The *Myers* court did not accept the defendant's argument that the salad preparers were tip-pool eligible because they performed tasks that servers would otherwise perform. 192 F.3d at 549. In addition, the court in *Kilgore* analyzed the duties of Outback Restaurant hosts, compared those functions to those of non tipped employees like dishwashers and cooks, and concluded that they performed important customer service functions such that they were tip-pool eligible. *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301-02 (6th Cir. 1998).

Based on these authorities, statements that those in clearly tip-pool eligible positions, like servers or service bartenders, performed customer service functions that

were similar or dissimilar to duties performed by QAs will be allowed (likewise allowed are statements that those in non-tip-pool eligible positions performed duties that were similar or dissimilar to duties performed by QAs). General comparisons between the overall duties of a server and the overall duties of a QA, and evidence that servers' and QAs' customer service functions overlapped will also be allowed. On the other hand, specific statements that a function is an important customer service function simply because a server may occasionally perform it can reasonably be excluded without prejudicially limiting the analysis of tip-pool eligibility.[2]

On the other hand, evidence that servers received more tips while working with QAs will also be allowed. It is relevant to the determination of whether QAs performed important customer service functions such that they were tip-pool eligible and whether they were part of the Front of the House team. *See, e.g.* Roussell Tr. 162-63 (if QAs help get food out with appearance and temperature and quality guests are expecting, it led to happier customers and "happier customers equals higher tips.") Plaintiffs' Motion will be, therefore, granted in part and denied in part.

## III. MOTION IN LIMINE TO EXCLUDE EVIDENCE OF TIPS RECEIVED BY PLAINTIFFS IN EXCESS OF THE TIP CREDIT TAKEN BY DEFENDANT

Plaintiffs contend that evidence or testimony of tips earned in excess of the tip credit taken by Defendant is irrelevant and inadmissible. FED. R. EVID. 401, 402.[3] Defendant responds with the same three arguments regarding tips as in the previous section. Given that evidence that servers received more tips while working with QAs will

---

[2] At the pre-trial hearing, Plaintiffs' lawyers explained that they specifically intended to exclude evidence that conflates "something that a waiter would otherwise do," like washing dishes if a dishwasher is temporarily unavailable, with a "waiter type duty," such as serving customers. (Mar. 4, 2009, Pre-trial Hr'g.)

[3] They contend that these tips are only relevant to calculating the unpaid wages owed Plaintiffs if Defendant's tip pools are found to be illegal.

be allowed, the question at hand is whether evidence that Plaintiffs received tips in excess of the tip credit taken by Defendant is relevant to whether QAs perform important customer service functions. Evidence of the amount of tips in relation to the tip credit does not appear to be independently relevant to the evidence tending to suggest that servers received higher tips when working with QAs. While it is a close call, Plaintiffs' Motion will be granted.

## IV. DEFENDANT'S APPLICATION FOR IMMEDIATE RELIEF

Defendant moves the Court to reconsider its previous rulings on the proper standard for coercion, the use of representative testimony, its decision to decertify some but not all of the deposed opt-ins, and its decision to allow the parties to proceed to trial without a trial plan. In the alternative, Defendant asks the Court to certify those issues for appeal under 28 U.S.C. § 1292(b), or to modify the order of proof at trial because Defendant now bears the burden for the affirmative defense of the tip-pool eligibility of QAs. At the recent pre-trial hearing, the Court denied the last request of Defendant and ruled that Plaintiffs will proceed first. (March 4, 2009, Pre-Trial Hr'g.) As indicated at the Pre-Trial hearing, the Court will deny Defendant's request that the Court reconsider its rulings on the aforementioned issues and deny Defendant's request to certify those issues for immediate appeal.

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. §

1292(b). Decisions relying on a court's discretion are appealable. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 465-76 (1978) (class certification). Under the third "materially advance" prong, courts look to whether it is burdensome to decide the case now and whether the ultimate disposition of the case is delayed rather than advanced if the interlocutory appeal application is granted. *Atlantic City Elec. Co. v. General Elec. Co.,* 337 F.2d 844 (2d Cir. 1964). Given that Defendant has conceded the coercion issues for the purposes of trial, the Fifth Circuit will therefore soon have an opportunity to pass on the question of the proper coercion standard. The Court finds that the Defendant's alternative of proceeding to trial on the QA tip-pool eligibility issue conserves judicial resources such that an interlocutory appeal on that issue is not appropriate. Further, the Court does not choose to certify the rest of Defendant's questions on the eve of trial because the effort already expended in preparing for trial would render a stay at this time very costly for all involved. Moreover, the trial record will allow the parties to present their already-assembled evidence regarding whether the remaining Plaintiffs are similarly situated and whether representative testimony is appropriate. Such evidence will help this Court and the reviewing Court determine whether the previous Orders were or were not properly decided. Defendant's Motion will be denied.

## V. CONCLUSION

Plaintiffs' Motion in Limine To Exclude Evidence and Testimony Relating To Defendant's Restaurant Practices at Restaurants and Time Periods Beyond the Scope of Plaintiffs' Trial Witnesses' Employment (Doc. No. 207) is hereby **DENIED**. Plaintiffs' Motion in Limine To Exclude Evidence Suggesting That Waiters Would Otherwise Perform The Tasks Performed By QAs And Any Alleged Impact on Waiters Tips (Doc.

No. 210) is hereby **GRANTED IN PART** as to statements that specifically contend that a function is a customer service function simply because a server may occasionally perform it, but **DENIED IN PART** as to a comparison of servers' (and others) important customer service functions with QAs' duties and as to evidence that servers received higher tips while working with QAs. Plaintiffs' Motions in Limine To Exclude Evidence of Tips Received by Plaintiffs In Excess of the Tip Credit Taken by Defendant (Doc. No. 208) is hereby **GRANTED**. Defendant's Application for Immediate Relief, Motion for Reconsideration of Decertification Rulings, Alternatively to Certify Rulings for Interlocutory Appeal, Alternatively to Modify the Order of Proof at Trial (Doc. No. 202) is hereby **DENIED**.

     **IT IS SO ORDERED**.

     **SIGNED** at Houston, Texas, on this the _6_ day of March, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**