UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER ROUSSELL, *et al.*, | ] |
| Plaintiffs, | ] |
| v. | ] CASE NO. 4:05-CV-03733 |
| BRINKER INTERNATIONAL, INC., | ] |
| Defendant. | ] |

**PLAINTIFFS' BRIEF ON SECTION 203(M)'S NOTICE REQUIREMENTS**

**1.   Background.**

To claim a tip credit, Brinker must prove it informed Plaintiffs the provisions of Section 203(m) of the Fair Labor Standards Act (FLSA).  29 U.S.C. § 203(m); *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D.Tex. 1995).  The notice requirement is strictly construed.  *Bernal v. Vankar Enterprises, Inc.*, 579 F.Supp.2d 804, 808 (W.D.Tex. 2008); *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334, at *1 (S.D.Tex. Nov 03, 2006).  If Brinker did not inform Plaintiffs of the tip credit provisions prior to taking a tip credit,[1] Brinker cannot claim a tip credit.  29 U.S.C. § 203(m).

Brinker asked this Court to relieve it of the burden of proving this strictly construed, black letter element of its (un-pled) affirmative defense by claiming it did not know it had to do so.  While the Court is currently considering this issue, the Court asked

---

[1] *See, e.g., Marshall v. Gerwill*, 495 F.Supp. 744, 753 (D. Md. 1980) (notice must be given *prior* to taking the tip credit).

for briefing on what constitutes adequate notice under Section 203(m). Plaintiffs respectfully submit this brief in response to that request.

**2.     Argument.**

In relevant part, Section 203(m) states:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—

> **(1)**     the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

> **(2)**     an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences **shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection**, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips. *See* 29 U.S.C. § 203(m) (emphasis added).

"Courts have widely interpreted section 203(m) to require *at a minimum* that an employer inform its employees of its intention to treat tips as satisfying part of the employer's minimum wage obligations[.]" *Bernal,* 579 F.Supp.2d at 809. Brinker's tip policy documents do not announce any such intention. *See* Exhibits A & B. Instead, Brinker's "Tip Credit and Allocation Policy" states only that unless "otherwise regulated by state law restaurant companies are *permitted* by federal law to apply a portion of an employee's tip toward the current minimum wage requirement." *Id.*[2]

---

[2] *See also,* Exhibit B ("Reported tip income is also counted toward the legal minimum wage *unless* your state prohibits this practice") (emphasis added).

- 2 -

Further, courts recognize Section 203(m) "could easily be read to require more- for example, notice of the amount determined by the employer' to constitute wages[.]" *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992) (noting, but not deciding, the question of how much more was required). A fair reading of Section 203(m) does – in fact- require the employer to inform its tipped employees of the "amount to be credited" against their wages. *See, e.g.,* Exhibit C, DOL Fact Sheet #15; *Tango's Rest., Inc.*, 969 F.2d at 1322; 29 U.S.C. § 203(m)(2) (the "additional *amount* on account of tips" the employer intends to credit). Because Brinker's documents do not announce its intention to take a tip credit, it is unsurprising that Brinker Tip Credit Policies make no mention of the "amount to be credited" as wages. *Compare* Exhibits A & B *with, e.g.,* Exhibit C. Nor does Brinker disclose that it cannot claim a tip credit greater than the tips received.[3] *Compare* Exhibits A & B *with* 29 U.S.C. § 203(m)(2) ("The additional amount on account of tips may not exceed the value of the tips actually received by an employee.")

Nor does Brinker inform its employees they are entitled to retain all their tips other than those contributed to a valid tip pool. 29 U.S.C. § 203(m) ("all tips received by such employee [be] retained by the employee, except that this subsection shall not be construed to prohibit the [valid] pooling of tips[.]"). This is likely because an employer that elects to use a tip pool must also "notify its employees of any required tip pool contribution amount." *See* 73 Fed. Reg. 43,667 at Proposed 29 C.F.R. § 531.54.[4] While Brinker does contain a disclosure for its Colorado employees (which other employees

---

[3] Or, alternatively, that the wage Brinker pays must equal at least the minimum wage when combined with the employee's retained tips (with Brinker responsible for any deficiency). 29 U.S.C. § 203(m).

[4] While no final regulations have been issued, Brinker cites to these proposed regulations its brief. *See* Brinker's Motion for Immediate Relief (Doc. 211).

sometimes sign), this disclosure is insufficient because it does not state that employees that they are entitled to retain all their tips other than those contributed to a valid tip pool. *Compare* Exhibits A & B *with* 29 U.S.C. § 203(m).  Nor does Brinker disclose that servers will be required to tip out to the QA – a position Brinker maintains was not part of its tip pool but nonetheless required Plaintiffs to tip out.

An employer cannot rely on knowledge an employee obtained from prior experience in the industry.  *Bernal*, 579 F.Supp.2d at 809.  Nor can an employer rely on the Department of Labor's FLSA poster which – on its face – notes it is incomplete. Wage & Hour Opinion Letter, 1997 WL 958300 (January 21, 1997); Exhibit D, WHD Publication 1088 (June 2007) (noting "other conditions must be met").   Instead, the employer must inform its employees of all Section 203(m)'s provisions.  29 U.S.C. § 203(m).

A plain reading of Section 203(m) requires an employer to inform the employee:

(1) of the dollar amount of the minimum wage required by law;

(2) that the employer is paying the employee at a rate below the minimum wage because it intends to take a tip credit;

(3) the dollar amount of tip credit claimed by the employer;

(4) the employee's cash wage plus the employee's tips must equal at least the minimum wage or the employer will make up the difference; and

(5) the employee is entitled to retain all tips other than those contributed to a valid tip pool.[5]  *See* 29 U.S.C. § 203(m).

Brinker's policies and documents fall woefully short in this regard.

---

[5] Again, where the employer elects to utilize a tip pool, the employer must also inform the employee of any required tip pool contributions.  *See* 73 Fed. Reg. 43,667.

**3.    Conclusion.**

As set forth above, Section 203(m) mandates disclosure of its provisions in order to obtain a tip credit. Despite the suggestions made in its Motion for Summary Judgment, Brinker does not provide the required disclosures. In short, Brinker wants to ignore this element of its affirmative defense because it cannot prove it.[6]

                          Respectfully submitted,

                          **BRUCKNER BURCH PLLC**

                          **/s/ Rex Burch**

**Of Counsel**:                        By: _____

                                      Richard J. (Rex) Burch

SHELLIST ✯ LAZARZ LLP          S.D. Tex. No. 21615

                                        Texas Bar No. 24001807

GOLDSTEIN, DEMCHAK, BALLER,    1415 Louisiana, Suite 2125

BORGEN & DARDARIAN             Houston, Texas 77002

                                        Telephone: (713) 877-8788

                                        Facsimile: (713) 877-8065

## CERTIFICATE OF SERVICE

I served a copy of this document on all counsel via the Southern District's CM/ECF electronic filing system on March 7, 2009.

                          **/S/ Richard J. Burch**
                          _____
                          Richard J. Burch

---

[6] At the recent hearing, Brinker indicated it will provide evidence of what, if any, other disclosures it claims to provide to Plaintiffs. Once Brinker has done so, Plaintiffs will respond (if necessary).

Name: Roussell Jennifer Elizabeth
(last) (first) (middle)

Phone: 281-497-6137

Employee No: 23    Social Security #: 603-95-__

## TIP CREDIT AND ALLOCATION POLICY

Unless otherwise regulated by state law, restaurant companies are permitted by federal law to apply a portion of an employee's tips toward the current minimum wage requirement.

All employees who receive tips are required by the IRS to report the total tips they receive to the Payroll Department. Payroll will then calculate the amount of taxes due on these tips and deduct these taxes from your base wages.

If the tips reported by all employees at an individual restaurant do not equal at least 8% of the restaurant's sales, Brinker is required by law to allocate the difference between tips reported and 8% of the restaurant's sales as additional tip income to each directly tipped employee who under reported tip income. This allocation will be made at the end of the calendar year and is included on the employee's W-2 form. No taxes are withheld from this additional tip income.

Acceptance of this procedure is a condition of employment with Brinker.

Signature _[signed]_  Date 05-17-03

## DRUG AND ALCOHOL ABUSE POLICY

I acknowledge that I have received a copy of Brinker's Drug and Alcohol Abuse Policy (the Policy). I acknowledge that I have read the Policy and I agree to comply with the terms of the Policy. I understand that if I am employed I may be requested to take a drug or alcohol test. I consent to take such a test.

I understand that compliance with the Policy is a term and condition of my employment with Brinker. I further understand if I violate the terms of the Policy during the course of employment, I may be subject to discipline, up to and including termination, or at Brinker's sole option, mandatory satisfactory participation in a counseling or rehabilitation program.

Signature _[signed]_  Date 05-17-03

## EMPLOYEE SAFETY TRAINING ACKNOWLEDGEMENT

✓ I have viewed Brinker International's Safety Video and have completed the Safety Exercise.
✓ I have read Brinker International's Safety Information located in my Handbook: Employee Safety Responsibilities, Hazard Communication, and General Security Procedures.
✓ I understand it is my responsibility to know the Employee Safety Responsibilities and to exercise them for a safe work environment.
✓ I know that Brinker International's Hazard Communication Program is located in the Manager's office and that the Material Safety Data Sheets (MSDS) are located in the Right-to-Know station (Back of the House).
✓ I understand how to read the three important sections on each MSDS sheet.
  – Health Hazard Data Section – Potential hazards of chemical products and First Aid procedures to be taken with each one. I understand how to read an MSDS sheet and can find First Aid Information on it.
  – Control Measures – Proper handling of chemical products. I have been trained in the safe handling and use of chemical products at this restaurant.
  – Hazardous Ingredient Section – List ingredients defined as hazardous. I understand the importance of reading product labels to identify chemical hazards and determine how to safely use the product.
✓ I am aware of the Occupational Safety and Health Administration (OSHA) Standards for Hazards Communication and my right to know about possible chemical hazards in my workplace.
✓ I know where to find protective clothing and equipment at this restaurant and how to use it.
✓ I can identify which operations at this restaurant involve the use of hazardous products and understand how to use those products safely.

Signature _[signed]_  Date 05-17-03

## AGREEMENT TO ARBITRATE

I understand that as a condition of my employment, I agree that any and all disputes based on legally or equitably protected rights (i.e. statutory, contractual or common law rights) arising out of or related to my compensation, employment or termination or employment with Brinker International or its related companies shall be settled exclusively by binding arbitration in accordance with the arbitration provisions of Brinker International's Employee Handbook instead of in a court of law.

Signature _[signed]_  Date 05-17-03

## COLORADO AGREEMENT TO CONTRIBUTE TO TIP POOL

I agree to contribute 2.3% of my total sales each day to a tip pool for the bussers, bartenders, and busser-seaters. I understand I do not have to make any contribution to the cooks or any other employee.

Signature _[signed]_  Date 05-17-03

## EMPLOYEE AT WILL

I understand that I am an employee at will and that my employment with Brinker may be terminated at anytime by myself or Brinker for any reason whatsoever. I further understand that no representative of Brinker, other than the President, has any authority to modify or change my status as an employee at will and that any such modification must be in writing. I understand that Brinker has issued employee manuals and handbooks, and that the programs and policies contained in these handbooks and manuals are intended as guidelines only, which may be amended or modified at anytime by Brinker. I acknowledge that they do not constitute the terms of a contract of employment guaranteeing continued employment for a specific term.

Without waiving its right to terminate any employee at will, at anytime, Brinker may elect to terminate an employee without prior notice for reasons including, but not limited to:

1. Not reporting for an assigned shift, and/or a mandatory employee meeting.
2. Improper shift covering procedures.
3. A negative confrontation with a guest or employee. (This includes any discussion of tips.)
4. Lack of performance/inability to do the job.
5. Any integrity issue of theft from Brinker, Brinker's guests, or fellow employees. This includes giving/taking food or beverage without the manager's approval.
6. Improper handling of cash or credit cards.
7. Ordering items (food or bar) without properly ringing such items up as sales, or using other employees' numbers when ringing up food or drinks.
8. Frequent tardiness.
9. Breach of confidentiality.
10. Physical abuse, verbal abuse, or sexual harassment of another employee, a manager, or a guest.
11. Conduct or behavior not suitable to Brinker's environment.
12. Refusal and/or failure to follow management instructions.
13. Insubordination towards management.
14. Falsifying and/or omitting information from the employment application.
15. Any behavior deemed by management to be detrimental to Brinker, Brinker's guests, employees, or managers.
16. Serving alcohol to minors or improper ID checks.
17. Violating any Brinker International policy or procedure.

Signature _[signed]_  Date 05-17-03

"Confidential & Proprietary Information – All Rights Reserved, Brinker International, Inc."

EXHIBIT 83

BRINKER090545

Exhibit A

BRINKER INTERNATIONAL PAYROLL COMPANY, L.P.                HOURLY EMPLOYEE HANDBOOK

## 3.12 WORKERS' COMPENSATION POLICY

Brinker International Payroll Company, L.P. ("Brinker") covers all of its employees under the State Workers' Compensation laws. Employee injuries suffered in the course and scope of one's job are covered by State Workers' Compensation insurance. All employees, whether salaried, full-time or part-time, are covered by Workers' Compensation laws.

Brinker strives to provide a safe work environment for our employees. Safety policies and procedures are intended to help employees focus on preventing injuries. If an employee is injured on the job, the accident should be reported to the manager on duty or supervisor immediately.

Through our Workers' Compensation Program, Brinker is committed to caring for the needs of an employee injured while working. We have a Return to Work Program that helps injured employees work again as soon as possible:

- First, if an employee is injured while working and medical treatment is necessary as a result of that injury, we want to ensure that the injured employee receives the appropriate care.

- Second, if an injured employee is medically able, we want the employee to return to work at full capacity. If the employee's physical activity is restricted by a doctor, we offer modified job duties, whenever possible, to accommodate these restrictions.

Employees absent from work because of a workers' compensation injury may be eligible for salary continuation under the Brinker Short Term Disability Policy. Please contact the Benefits Service Center at 800-334-4783 for benefit information.

For additional information, contact the Brinker Risk Management Department.

[Revised 1/2005]

## 3.13 TIP CREDIT AND REPORTING POLICY

ALL tips received must be reported nightly during the closing process. As employees sign off the Brinker Store System at the unit, a special screen will appear displaying the amount of credit card, gift card, and house account (if any) tips the employee has made during the shift. Employees must enter the total of *all cash tips* received from guests. The screen will allow the employee to enter cash tips received and to enter all tips given to other employees ("tip outs"). Tips received from another employee must be recorded as a "tip in" so that "tip outs" equal "tip ins" at the end of a day. Managers enter tips collected for indirectly tipped employees at the



Exhibit B
BRINKER000121

end of a day. Indirectly tipped employees approve these amounts the next time they work a shift.

***Each employee is responsible for claiming the entire amount of tips received during each shift.***

> All tips must be documented daily, and problems could occur if the percentage reported is unusually low.

This is a requirement of the Internal Revenue Service. The Internal Revenue Service monitors Brinker International Payroll Company, L.P. ("Brinker") tip reporting results. Brinker expects that food servers and bartenders will consistently provide a high level of customer service, which would typically be reflected in the amount of tips reported. Failure to receive an adequate percentage may be indicative of unacceptable customer service and may result in disciplinary action, up to and including termination.

Tip information is relayed to the Brinker Payroll Department, which calculates the appropriate payroll tax due on the tipped income. Reported tip income is also counted toward the legal minimum wage, unless your state prohibits this practice.

[Revised 1/2005]

## 3.14 COMPANY INFORMATION AND PROPERTY POLICY

This policy serves to protect the business information, property and all other assets vital to the interests and success of Brinker International, Inc. ("Company"). No Company-related information or property, including but not limited to, documents, files, recipes, menu items, records, computer files, equipment, office supplies or similar materials (except in the ordinary course of performing duties on behalf of the Company) may be removed from the Company's premises. In addition, when your employment with Brinker International Payroll Company, L.P. is terminated, you must return all Company-related information and property in your possession. This includes, but is not limited to, documents, files, records, manuals, information stored on a personal computer or on a computer disk, supplies and equipment. Violation of this policy is a serious offense, and may lead to legal action.

### USE OF COMPANY PROPERTY
The Company may provide you with supplies, clothing, equipment, automobiles and materials necessary to perform your job. These items are to be used solely for the Company's purposes. Employees of Brinker International Payroll Company, L.P. ("Employees") are expected to use care when using equipment and property, and use this property only for authorized purposes. Loss, damages or theft of property should be reported immediately. Negligence in the care and use of property may result in disciplinary action, up to and including termination. Any

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



(Revised July 2008)

# Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the FLSA to employees who receive tips.

**Characteristics**

Tipped employees are those who customarily and regularly receive more than $30 a month in tips. Tips actually received by tipped employees may be counted as wages for purposes of the FLSA, but the employer must pay not less than $2.13 an hour in direct wages.

**Requirements**

If an employer elects to use the tip credit provision the employer must:

1) Inform each tipped employee about the tip credit allowance (including amount to be credited) before the credit is utilized.

2) Be able to show that the employee receives at least the minimum wage when direct wages and the tip credit allowance are combined.

3) Allow the tipped employee to retain all tips, whether or not the employer elects to take a tip credit for tips received, except to the extent the employee participates in a valid tip pooling arrangement.

If an employee's tips combined with the employer's direct wages of at least $2.13 an hour do not equal the minimum hourly wage of $6.55 per hour effective July 24, 2008 and $7.25 per hour effective July 24, 2009; the employer must make up the difference.

Youth Minimum Wage: The 1996 Amendments to the FLSA allow employers to pay a youth minimum wage of not less that $4.25 an hour to employees who are under 20 years of age during the first 90 consecutive calendar days after initial employment by their employer. The law contains certain protections for employees that prohibit employers from displacing any employee in order to hire someone at the youth minimum wage.

Dual Jobs: When an employee is employed concurrently in both a tipped and a non-tipped occupation, the tip credit is available only for the hours spent in the tipped occupation. The Act permits an employer to take the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips, provided such duties are incidental to the regular duties and are generally assigned to such occupations. Where tipped employees are routinely assigned to maintenance, or where tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

Retention of Tips: The law forbids any arrangement between the employer and the tipped employee whereby any part of the tip received becomes the property of the employer. A tip is the sole property of the tipped employee. Where an employer does not strictly observe the tip credit provisions of the Act, no tip credit may be

Exhibit C

claimed and the employees are entitled to receive the full cash minimum wage, in addition to retaining tips they may\should have received.

Service Charges: A compulsory charge for service, for example, 15 percent of the bill, is not a tip. Such charges are part of the employer's gross receipts. Where service charges are imposed and the employee receives no tips, the employer must pay the entire minimum wage and overtime required by the Act.

Tip Pooling: The requirement that an employee must retain all tips does not preclude a valid tip pooling or sharing arrangement among employees who customarily and regularly receive tips, such as waiters, waitresses, bellhops, counter personnel (who serve customers), busboys/girls and service bartenders. Tipped employees may not be required to share their tips with employees who have not customarily and regularly participated in tip pooling arrangements, such as dishwashers, cooks, chefs, and janitors. Only those tips that are in excess of tips used for the tip credit may be taken for a pool. Tipped employees cannot be required to contribute a greater percentage of their tips than is customary and reasonable.

Credit Cards: Where tips are charged on a credit card and the employer must pay the credit card company a percentage on each sale, then the employer may pay the employee the tip, less that percentage. This charge on the tip may not reduce the employee's wage below the required minimum wage. The amount due the employee must be paid no later than the regular pay day and may not be held while the employer is awaiting reimbursement from the credit card company.

**Typical Problems**

Minimum Wage Problems: Employee does not qualify as a "tipped employee", tips are not sufficient to make up difference between employer's direct wage obligation and the minimum wage; employee receives tips only -- so the full minimum wage is owed; illegal deductions for walk-outs, breakages and cash register shortages; and invalid tip pools.

Overtime Problems: Failure to pay overtime on the full minimum wage; failure to pay overtime on the regular rate including all service charges, commissions, bonuses and other remuneration.

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

| | |
|---|---|
| **U.S. Department of Labor** | **1-866-4-USWAGE** |
| Frances Perkins Building | TTY: 1-866-487-9243 |
| 200 Constitution Avenue, NW | **Contact Us** |
| Washington, DC 20210 | |

# EMPLOYEE RIGHTS
## UNDER THE FAIR LABOR STANDARDS ACT

THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION

## FEDERAL MINIMUM WAGE

**$5.85** PER HOUR
BEGINNING JULY 24, 2007

**$6.55** PER HOUR
BEGINNING JULY 24, 2008

**$7.25** PER HOUR
BEGINNING JULY 24, 2009

**OVERTIME PAY**  At least 1½ times your regular rate of pay for all hours worked over 40 in a workweek.

**YOUTH EMPLOYMENT**  An employee must be at least **16** years old to work in most non-farm jobs and at least **18** to work in non-farm jobs declared hazardous by the Secretary of Labor.

Youths **14** and **15** years old may work outside school hours in various non-manufacturing, non-mining, non-hazardous jobs under the following conditions:

*No more than*
- **3** hours on a school day or **18** hours in a school week;
- **8** hours on a non-school day or **40** hours in a non-school week.

Also, work may not begin before **7 a.m.** or end after **7 p.m.**, except from June 1 through Labor Day, when evening hours are extended to **9 p.m.**  Different rules apply in agricultural employment.  For more information, visit the YouthRules! Web site at **www.youthrules.dol.gov**.

**TIP CREDIT**  Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met.

**ENFORCEMENT**  The Department of Labor may recover back wages either administratively or through court action, for the employees that have been underpaid in violation of the law. Violations may result in civil or criminal action.

Civil money penalties of up to $11,000 per violation may be assessed against employers who violate the youth employment provisions of the law and up to $1,100 per violation against employers who willfully or repeatedly violate the minimum wage or overtime pay provisions. This law prohibits discriminating against or discharging workers who file a complaint or participate in any proceedings under the Act.

**ADDITIONAL INFORMATION**
- Certain occupations and establishments are exempt from the minimum wage and/or overtime pay provisions.
- Special provisions apply to workers in American Samoa and the Commonwealth of the Northern Mariana Islands.
- Some state laws provide greater employee protections; employers must comply with both.
- The law requires employers to display this poster where employees can readily see it.
- Employees under 20 years of age may be paid $4.25 per hour during their first 90 consecutive calendar days of employment with an employer.
- Certain full-time students, student learners, apprentices, and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Department of Labor.



For additional information:
# 1-866-4-USWAGE
(1-866-487-9243)   TTY: 1-877-889-5627



# WWW.WAGEHOUR.DOL.GOV

U.S. Department of Labor  |  Employment Standards Administration  |  Wage and Hour Division

Exhibit D

WHD Publication 1088 (Revised June 2007)