UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER ROUSSELL, on Behalf of Herself and Others Similarly Situated, § § § | |
| Plaintiffs, § § | CIVIL ACTION NO. H-05-3733 |
| v. § § | |
| BRINKER INTERNATIONAL, INC., § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion in Limine To Exclude Documents and Testimony Related to the Job Code Project. (Doc. No. 222.) For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I. MOTION IN LIMINE** (Doc. No 222)

Defendant moves the Court to exclude evidence regarding the Job Code Project[1] ("Project"). Plaintiffs respond that this evidence is relevant, and not unfairly prejudicial, because it provides facts that bear on an examination of the QAs' overall duties as well as their customer interaction.

In 2003, Defendant initiated the Project to create consistency in its treatment of tips for certain positions among and within its brand restaurants, including Chili's Restaurants. Brinker's Corporate Compliance Group, comprised of non-lawyers in the human resources department, decided to streamline its "job codes"—or abbreviations for different job titles or functions used in the payroll software program—across all of the Brinker restaurant brands. As part of this Project, non-lawyer Barbara Youngman, Legal

---

[1] Plaintiffs contend that Defendant internally called this project the "Tip Credit Project."

1

Compliance Manager, at the behest of Leslie Denny, Director of Corporate Affairs, prepared a research memo on FLSA guidelines regarding tip credit eligibility, and Defendant conducted a 50-state survey of state tip pooling laws. Youngman concluded that "QAs (with little or no customer interaction)" were ineligible to participate in a tip pool."[2] (2/27/2003 Research Memorandum, Doc. No. 222, Ex. F.) Denny directed non-lawyer Theresa McCaslin, Reporting Manager, to use this research to prepare a Project memo (the "5/1/2003 Project Memo") by identifying tip credit-eligible job codes so that they could be flagged in the payroll software. (5/1/2003 Project Memo, Doc. No. 222, Ex. F.) The 5/1/2003 Project Memo stated that the positions for which Defendant may take a tip credit are the only positions allowed to participate in a valid tip pool. (*Id*.) In addition, the 5/1/2003 Project Memo noted that positions not identified in the "tip credit eligible" list "do not meet the customer interaction or customarily tipped requirements of the regulation." (*Id*.)

The evidence suggests that Youngman, while working for Defendant, believed that some QAs had little or no customer interaction. In their Response to Defendant's Motion for Summary Judgment, Plaintiffs contend that "Chili's compared the results of its [FLSA] research to the duties performed by the QA and server positions in its stores" to make this conclusion. (Pl. Resp. Doc. No. 105, at 7.) In support of this contention, Plaintiffs cite sections of the depositions of McCaslin and Youngman. Neither section provides much evidence of a searching factual inquiry into QAs' job duties or customer interaction. Rather, as Youngman testifies "When I created a research memorandum, it was basically take the general information that I found, the research that I found with any

---

[2] Testifying via deposition, Youngman later stated that QAs with customer interaction qualified for tip credits and mandatory tip pools under the food runner position. (Youngman II 34:1-35:17, 60:19-61:5, 91:19-20, 98:5-8.)

2

statutes or citations, put it into—try to put it into layman's terms, and then any—include the statutes, my nonlegal interpretation, any recommendations that I would have on maybe what next steps would be and provide that to [Denny]." (Youngman II Dep., Jan. 7, 2008, 14:20-15:6, Doc. No. 112, Ex. 96.) *See also* (McCaslin Dep., Jan. 7, 2008, 31:18-24, Doc. No. 111, Ex. 62.)

Youngman specifically denied conducting her own factual inquiry into "the percentage of time an expo spent doing [his] job, different parts of [his] job on any given shift[.]" (Youngman II Dep., 162:14-19; *see also* McCaslin Dep. at 42:8-11.) Likewise, Youngman did not examine the QA or expo job description nor is she sure that someone else did. (Youngman II Dep. 163:7-13.) Denny, McCaslin, and Youngman did not investigate the duties of employees working under the different Chili's job codes, or their level of customer interaction (although McCaslin was involved in a conversation about customer interaction regarding the coffee person job code). (McCaslin Dep. at 34:7-12, 37:11-20, 96:6-97:5, 44:22-45:6; Youngman I Dep. 169:13-25, 83:14-84:3; Youngman II Dep. 57:6-11; 147:25-148:9; Leslie Denny Dep., May 8, 2008, 44:4-13, Doc. No. 222, Ex. D.) Youngman explained that her knowledge of the job duties came from her "general understanding of the positions within the brand" because she has "conversations and work[s] very closely with operations." (Youngman II Dep. at 57:19-58:10.) McCaslin did collect information about whether the payroll software allowed the tip credit by job code and whether any stores were actually taking the tip credit. (McCaslin Dep. at 40:7-41:1.) And, as to the particular statement that QA positions with little or no customer interaction are occupations that would invalidate a tip pool, Youngman explained that the

3

QA position encompassed employees performing many different roles within Chili's.[3] (Youngman II Dep. at 56:7-56:22.)

Defendant contends that the decision not to allow a tip credit for QAs and not to allow QAs to participate in mandatory tip pools was a business decision to avoid research into the duties of QAs in each state. It did not reflect Defendant's legal analysis of whether this decision was mandated under FLSA. Defendant also asserts that the Project did not involve any research into QAs' job duties or the extent of their customer service and interaction. Defendant believes that Plaintiffs will impermissibly try to convince the jury that the Project resulted in an internal determination by Defendant's corporate compliance department that QAs lack a sufficient level of customer service and interaction to qualify as tip-pool participants under the FLSA. Defendant asserts that any suggestion that the Project members investigated the QA job duties in depth is incorrect.

Accordingly, Defendant contends that evidence of the Project should be excluded under FED. R. EVID. 401-403 as misleading, confusing, as hearsay under FED. R. EVID. 802, and/or because it contains improper lay opinions under FED. R. EVID. 701. Defendant contends that, as did McCaslin and Youngman, the jury might confuse the difference between a tipped employee (§ 203(t)) and one who is tip-pool eligible (§ 203(m)).[4]

---

[3] Plaintiffs' lawyer: "And my point is, when you say down here that QA positions with little or no customer contact is an occupation that would invalidate a tip pool, what do you mean by that? Why, based on your research, would that invalidate a tip pool?"
Youngman: "Because it says QA positions, that's a general—a general statement. It can encompass several positions. So if it's a QA that—or an expo's position, since sometimes QA and expo are used interchangeably, it depends, so it depends if it's back of the house, it is more like a cook that's stated below there. If it's a front of the house QA, then it's a server, because server and front of the house are basically one and the same. So cooks are not included in tip pools. Servers are."

[4] The Court has not yet taken a position on the question of whether only tipped employees are tip-pool eligible.

Relevant evidence is admissible, unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 401-403. A court may properly exclude as prejudicial an internal memorandum because its subject matter, while closely related to the lawsuit, does not directly address the factual contention at issue. *See, e.g.*, *Schafer v. Time, Inc.*, 142 F.3d 1361, 1373-74 (11th Cir. 1998) (upholding a district court's decision to exclude, under FED. R. EVID. 403, a memorandum discussing a number of charges that sources in a story were unreliable but not discussing the photograph attached to the story, the source of the plaintiff's libel claims). Likewise, a court may exclude an internal legal memorandum when it determines that there is a strong possibility that "a jury [will] ignore the court's instructions on the law and place too much weight on the memoranda." *See, e.g.*, *Williams v. Hughes Helicopters, Inc.*, 806 F.2d 1387, 1392 (9th Cir. 1986).

As in *Hughes Helicopters, Inc.*, in its July 2008 Order, the Court noted that the Project memoranda were inadmissible to establish that QAs are not tip-pool eligible as a matter of law or as a lay opinion regarding a question of law. *Roussell v. Brinker*, 2008 WL 2714079, at *10 n. 44 (citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)). On the other hand, the Court held that the memoranda provided "at least some support for Plaintiffs' factual argument regarding the amount of interaction a QA has with customers." *Id*. As Defendant contends, however, the Project evidence does not suggest the Project team performed a fine-grained analysis of the exact amount of interaction that QAs had with customers or the quality of the service provided to guests, and this analysis is crucial to the determination of whether the QAs are tip-pool eligible.

5

*See Roussell v. Brinker*, 2008 WL 2714079, at *10. These arguments, however, go more to weight than admissibility.

To the extent evidence from the Project is used as a lay opinion of a conclusion of law, it is not admissible. Accordingly, the three memoranda Defendant attached as exhibits, the 2/27/2003 Research Memorandum, the 5/1/2003 Project Memo and the 11/10/2003 Project Memo (attached as Exhibit F), will be excluded, as they contain no factual allegations and would be highly prejudicial. On the other hand, to the extent that fact-based testimony concerning the Project is presented as evidence of the duties QAs perform and the amount and quality of QAs customer interaction, however limited this factual evidence may be, the evidence will be allowed. Defendant, of course, may try to impeach the witnesses on the extent and depth of their investigation. On request, the Court will provide curative instructions to cabin any perceived prejudice.

## II. CONCLUSION

Defendant's Motion is **GRANTED** as to the three memoranda and **DENIED** as to other evidence relating to the Project.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 9th day of March, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**