IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER ROUSSELL, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, | § § § | |
| | § | CIVIL ACTION NO. 4:05-CV-03733 |
| PLAINTIFF, | § § | |
| vs. | § § | Jury Requested |
| BRINKER INTERNATIONAL, INC., | § § | |
| DEFENDANT. | § § | |

**DEFENDANT BRINKER INTERNATIONAL, INC.' S PROPOSED
JURY INSTRUCTIONS AND INTERROGATORIES**

Respectfully submitted,

**Fraser A. McAlpine**
State Bar No. 13321300
Federal I.D. No. 3407
**HUNTON & WILLIAMS LLP**
Bank of America Center
700 Louisiana Street, Suite 4200
Houston, Texas 77002
Phone: 713.229.5700
Fax:  713.229.5750

ATTORNEY-IN-CHARGE FOR DEFENDANT
BRINKER INTERNATIONAL, INC.

Of COUNSEL:

**Laura M. Franze**
State Bar No. 07389600
**Holly H. Williamson**
State Bar No. 21620100
**M. Brett Burns**
State Bar No. 03447900

**HUNTON & WILLIAMS, LLP**

## PROPOSED INSTRUCTIONS

**Requested Instruction No. 1:  PRELIMINARY INSTRUCTIONS**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case.  As the jury, you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure.  From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  What the lawyers say is not evidence.

After the opening statements, Plaintiffs will call witnesses and present evidence.  Then, Brinker will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, Plaintiffs may be permitted to present rebuttal evidence.  After all the evidence is completed, the lawyers will again address you to make final arguments.  Then I will instruct you on the applicable law.  You will then retire to deliberate on a verdict.

Keep an open mind during the trial.  Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

If you would like to take notes during the trial, you may do so.  If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony.  Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes.  If you do not take notes, rely on your own independent memory of the testimony.  Do not be unduly influenced by notes of other jurors.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.  Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits may be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.  If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately.  Hold yourself completely apart from the people involved in the case -- the parties,

the witnesses, the attorneys and persons associated with them.  It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case.  You are to be guided solely by what you see and hear in this trial.  Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for opening statements.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 1.1.


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 2:  FIRST RECESS**

      We are about to take our first break during the trial and I want to remind you of the instruction I gave you earlier.  Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else.  If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors, members of your family, people involved in the trial, or anyone else, but advise me about it immediately.  Do not read or listen to any news reports of the trial.  Finally, remember to keep an open mind until all of the evidence has been received and you have heard the views of your fellow jurors.

      If you need to speak with me about anything, simply give a signed note to the marshal to give to me.

      I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.1.


Given: _____  Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 3:  BENCH CONFERENCES AND RECESSES**

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We meet because often during a trial something comes up that does not involve the jury.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.7.

Given: _____ Denied: _____

_____
Honorable Keith Ellison

**Requested Instruction No. 4:  GENERAL INSTRUCTIONS FOR CHARGE**

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory, and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.  The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 3.1.

Given: _____ Denied: _____

_____
Honorable Keith Ellison

**Requested Instruction No. 5:  DUTY TO DELIBERATE**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges -- judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.11.


Given: _____  Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 6:  INSTRUCTIONS FOR DELIBERATION**

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to conduct your deliberations.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.12.


Given: _____  Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 7:  USE OF NOTES TAKEN BY JURORS**

   Any notes that you have taken during this trial are only aids to your memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.21.


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 8:  BIAS - CORPORATE PARTY INVOLVED**

Do not let bias, prejudice or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.13.


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 9:  CONSIDERATION OF EVIDENCE**

You must consider only the evidence in this case.  However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

There are two types of evidence you may consider.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.18.


Given: _____  Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 10:  IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS**

  In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said [or did] something, [or failed to say or do something] that was different from the testimony he gave at the trial.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.16.


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 11:  DEPOSITION TESTIMONY**

Certain testimony will now be presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked of a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers will be read or shown to you.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.23.


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 12:  FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 203 & 206)**

      This case arises under the Fair Labor Standards Act, a federal law that provides for the payment of minimum wages.  Each Plaintiff claims that Brinker did not pay him/her the legally required minimum wage.  The minimum wage during the period of time involved in this case was $5.15 per hour for years 2003 to July 23, 2007 and $5.85 per hour for years July 24, 2007 to July 23, 2008.

      Under the law, an employer may use the tips received by a "tipped employee" – such as the Servers who are Plaintiffs in this case – to satisfy a portion of that employee's minimum wage.  This is referred to as "tip credit."  When determining whether any Plaintiff received the minimum wage, you must consider both the hourly wage that each Plaintiff received from Brinker plus the tips he/she received and kept from customers. It is not in dispute in this case that Plaintiffs received an amount of total compensation not less than the minimum wage after considering both the hourly wage paid by Brinker and the tips from customers kept by the Plaintiffs.

      Plaintiffs, however, contend that Brinker should not be able to claim the "tip credit" for all of the shifts worked by Plaintiffs.  To receive the benefit of "tip credit" for a particular work shift, Brinker must prove by a preponderance of the evidence that a Plaintiff kept all tips received by him/her on that shift (i) unless that Plaintiff contributed some of his/her tips to a valid "tip pool," or (ii) unless that Plaintiff voluntarily shared his/her tips with others.

      The Fair Labor Standards Act allows Brinker to establish a tip pooling or tip sharing arrangement among employees who customarily and regularly receive tips.  Tip pooling arrangements are a longstanding practice of the restaurant industry and exist to ensure a fair sharing of tips among employees who contribute to the overall customer service provided to a patron, to maintain good service to the public by promoting peace and harmony among employees, and to permit the employer to operate a well-run, well-ordered restaurant business.

      It is not in dispute that Servers such as the Plaintiffs in this case contributed to a valid tip pool with bartenders and bussers, and the pooling of tips with the bartenders and bussers does not diminish or otherwise affect Brinker's ability to claim "tip credit" for the shifts worked by Plaintiffs.

      What is in dispute is whether on some shifts Brinker required Plaintiffs to share some of the tips that the Plaintiffs received from customers with employees who are Quality Assurance workers, or "QAs."  Brinker contends that the Plaintiffs were allowed to share tips with QAs, but that it did not force them to do so.  Plaintiffs contend that Brinker required them to share tips

with the QAs. [1]

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 11.1; History of Minimum Wage Under FLSA, *available at*: http://www.dol.gov/esa/minwage/chart.htm; 29 U.S.C. § 206(a)(1); 29 U.S.C. §§ 203(m), (t); WH Admin. Op. – 468 (Sept. 5, 1978) ("Waitresses"); 29 C.F.R. § 531.59; *see Louie v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1160 (C.D. Cal. 2006); *Leighton v. Old Heidelberg, Ltd.*, 219 Cal. App. 3d 1062, 1070-71 (1990).

Given: _____ Denied: _____

_____
Honorable Keith Ellison

---

[1]     Brinker submits this Instruction containing a reference to the issue of "coercion" in the abundance of caution in the event that rulings during the trial require the jury to address issues of "coercion."

**Requested Instruction No. 13:  COLLECTIVE ACTION (29 U.S.C. § 216)**

This case is a collective action lawsuit. This means that the court has allowed 55 plaintiffs who worked in 61 different Chili's restaurants to pursue their claims collectively. The plaintiffs other than Jennifer Roussell, the named plaintiff, are entitled to prevail on their claims only if they establish that they are all similarly situated to Ms. Roussell and to each other.  In order to establish that all of the 55 plaintiffs are similarly situated, plaintiffs must provide evidence that all of the employees joined in this suit were commonly affected by a single decision, policy or plan that gives rise to a pattern or practice of violations. It is not enough that only some of the employees joined in this suit were affected by the decision, policy, or plan.

In order for you to find a pattern or practice of violations, you must find that the alleged conduct involved widespread violations in the 61 Chili's restaurants at issue in this case during the relevant time. A pattern is a regular mainly unvarying way of acting or doing. A practice is a frequent or usual action. Events which are isolated, sporadic or infrequent do not comprise a pattern or practice.  It is plaintiffs' burden to prove that the alleged violations occurred and that such violations were widespread. If you find that plaintiffs' evidence supports a reasonable inference that the alleged violations were widespread, you must consider whether Brinker has rebutted that inference by producing evidence tending to negate the conclusion that any such violations occurred on a widespread basis. You must find that plaintiffs' evidence supports an inference that any such violations at issue occurred on a widespread basis and that Brinker has failed to rebut that inference, in order to find that a pattern or practice is established.

You should also decide if the witnesses that testified had the opportunity or ability to observe non-testifying plaintiffs and you should consider what the testifying witnesses observed.

**Source:** *See Thiebes v. Wal-Mart Stores, Inc.,* 2004 WL 1688544, at *5 (D.Or. July 26, 2004); *DeAsencio v. Tyson Foods, Inc.*, No. 2:00-CV-04294-RK (E.D. Pa. June 20, 2006), rev'd on other grounds, 500 F.3d 361 (3d Cir. 2007); *Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949, 952 (4th Cir. 1995); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991); *see also Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.), aff'd on other grounds, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989).


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 14:  TIP**

      A tip is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him."

**Source:** 29 C.F.R. § 531.52; *see also* S. REP. 93-960 at 42 (Feb. 22, 1974); Dep't. Labor Wage & Hour Div., Op. Ltr., WH-321, 1975 WL 40945 (Apr. 30, 1975).

Given: _____ Denied: _____

_____
Honorable Keith Ellison

**Requested Instruction No. 15:  TIP CREDIT - SUB-MINIMUM WAGE**

   Under the law, when, as in this case, an employee qualifies as a "tipped employee," an employer may combine his/her tips with the hourly wages the employer pays that employee.  In these situations, an employer may use the tips received by a "tipped employee" to satisfy the difference between $2.13 per hour and the applicable minimum wage.  The difference between the minimum wage and the amount an employee must be paid directly by the employer is the "tip credit."  The amount paid by the employer under these circumstances is called the "sub-minimum wage."

**Source:**


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 16:** [2]  **COERCION VERSUS VOLUNTARY**

Plaintiffs claim that Brinker is not entitled to take advantage of the "tip credit" provisions on those shifts when Brinker coerced a Plaintiff to share his/her tips with a QA.

Brinker contends that Servers decided voluntarily to share their tips with the QAs.  Even if the QAs were not eligible to participate in a tip pool, a Plaintiff may still share the tips that he/she received with a QA or any other employee if the Plaintiff does so voluntarily, and Brinker is entitled to take advantage of the "tip credit" provisions on those shifts when a Plaintiff voluntarily shares his/her tips with a QA.

"Coerce" is defined as to "compel by force or threat."  The appropriate legal standard for determining coercion is whether a reasonable Plaintiff would find his/her Manager's actions materially coercive, which in this context means that the Manager's actions dissuaded, by force or threat, a reasonable Plaintiff from believing that sharing tips with a QA was voluntary.

**Source:** DEP'T OF LABOR FIELD OPERATIONS HANDBOOK § 30d04(c); BLACK'S LAW DICTIONARY (8th ed. 2004); *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).


Given: _____ Denied: _____


_____
Honorable Keith Ellison

---

[2]   Brinker submits this Requested Instruction in the abundance of caution in the event that rulings on the motion in limine concerning "coercion" requires the jury to address issues of "coercion."

**Requested Instruction No. 17:  CUSTOMARILY AND REGULARLY**

Although Brinker contends that it does not require or coerce[3] Servers to share tips with QAs, Brinker also contends that QAs could be included in a mandatory tip pool, and that Servers could be lawfully required to pool tips with QAs, just as Servers pool tips with bartenders and bussers.  To be eligible to participate in a mandatory tip pool, the QAs must "customarily and regularly receive tips."

The phrase "customarily and regularly" "signifies a frequency which must be greater than occasional, but which may be less than constant."

The following types of occupations have been recognized as being eligible for participation in a tip pooling arrangement because they "customarily and regularly" receive tips: 1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls; 5) server helpers; and 6) service bartenders.

In contrast, the following types of jobs do not qualify for a tip pool: 1) Janitors; 2) Dishwashers; 3) Chefs or cooks; and 4) Laundry room attendants.

The examples above of jobs that either qualify or do not qualify for participation in a tip pool are only illustrative, and not exhaustive.

**Source:** 29 U.S.C. §§ 203(m); WH Admin. Op. – 468 (Sept. 5, 1978) ("Waitresses"); 29 C.F.R. § 531.57; 29 C.F.R. § 531.59; DEP'T OF LABOR FIELD OPERATIONS HANDBOOK § 30d04(a).


Given: _____  Denied: _____


_____
Honorable Keith Ellison

---

[3]   Brinker submits this Instruction containing a reference to the issue of "coercion" in the abundance of caution in the event that rulings during the trial require the jury to address issues of "coercion."

**Requested Instruction No. 18:  EMPLOYEES ELIGIBLE TO PARTICIPATE IN A TIP POOL**

If a QA performs important customer service functions (*i.e.*, functions that are more like those of waiter/waitresses, bellhops, counter personnel who serve customers, busboys/girls, or service bartenders than those of janitors, dishwashers, chefs or cooks, or laundry room attendants), she/he may participate in a mandatory tip pool.

In situations where an employee's primary duties consist of important customer service functions, she/he would be eligible to participate in a mandatory tip pool.  This is because the quality of service a customer experiences may affect the amount of the tip that customer leaves for employees who contributed to the quality of service. Nothing requires that an employee who shares in a tip pool interact directly with customers.

It is important to note that employees may participate in tip pools even if they do not receive tips directly from customers.  Accordingly, an employee may be "indirectly tipped" (like receiving tips from employees who received them directly from the customer) and still properly be eligible to participate in a mandatory tip pool.

The following indicators in determining which functions are included in the tipped occupation and which qualify for the tip credit. The tip credit applies to job functions that are: (a) customarily included within the tipped occupation; (b) intertwined and not clearly severable from the tipped occupation; (c) related to customer service; (d) involve more than *de minimis* interaction with customers; or (e) directed toward the production of tips.

**Source:** 29 C.F.R. § 531.54; 29 C.F.R. § 531.56(e), which includes among the tipped duties of a restaurant server those duties that are "generally assigned" to restaurant servers. *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298-300 (6th Cir. 1998) *Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, (N.D.Tex. 2007); *Townsend v. E.G.-Meridian, Inc.*, 2005 WL 2978899 *5-6 (W.D. Okla. 2005) ("because waitress, when operating cash register and taking telephone orders, had more than de minimis customer contact, restaurant employer could take tip credit for entire shift, not just time spent serving tables); *Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 550 (6th Cir. 1999) (because salad preparers abstained from direct contact with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work, they were not engaged in a customarily "tipped" occupation and could not be validly categorized as tipped employees under FLSA); s*ee also Marshall v. Krystal Co.*, 467 F. Supp. 9, 13 (E.D. Tenn. 1978). *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001) (DOL field operations handbook is only "[a]n agency's internal directives to its employees. [and is] without the force of law"); A*rriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002) (in context of DOL opinion letter, when considering the deference to "rulings, interpretations and opinions of the Administrator," the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with

earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**Requested Instruction No. 19:  DUAL JOBS Vs. SINGLE OCCUPATION**

In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter.  In that example the employee is a "tipped employee" only with respect to his employment as a waiter.  He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.  Such a situation is distinguishable from that of a Server who performs duties incidental to the duties of a Server, such as spending part of his/her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses.  Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

Apportionment of an employee's time under the "dual jobs" theory is appropriate only "where there is a clear dividing line between the types of duties performed by the tipped employee."

Brinker contends that when a Server works a shift as a QA, that Server continues to perform duties that are incidental to or related to the duties usually performed by Servers, and that indeed the duties performed by QAs are part of the duties normally performed by Servers.  Brinker contend that when a Server works as a QA, that Server is not changing his or her occupation, but is instead performing duties that are incidental to or closely related to the duties performed by Servers.

Plaintiffs contend that the duties performed by QAs are not incidental to or related to the duties performed by Servers.  Thus, Plaintiffs contend that "Server" and "QA" are two distinct occupations, like maintenance man and Server.

**Source:** 29 C.F.R. § 531.56(e); W&H Opinion 1980-502, 1980 WL 141336; *Fast v. Applebee's Int'l Inc.*, 502 F. Supp. 2d 996, 1001-02 (W.D. Mo. 2007); *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007), aff'd, ___ F.3d ___ (11th Cir. 2008).

Given: _____ Denied: _____

_____
Honorable Keith Ellison

**Requested Instruction No. 20:** [4]  **BURDEN OF PROOF - COERCION**

In this case, each Plaintiff must prove that on a particular shift he/she was coerced to share his/her tips with a QA.  Each Plaintiff must prove by a preponderance of the evidence that on the particular shift he/she shared tips with a QA because Brinker coerced him/her to do so.

A preponderance of the evidence simply means evidence that persuades you that each Plaintiff's claims are more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of one or more Plaintiffs' claims by a preponderance of the evidence, you should find for Brinker as to that claim for those Plaintiffs.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.20.

Given: _____ Denied: _____

_____
Honorable Keith Ellison

---

[4]   Brinker submits this Instruction with a reference to coercion in the abundance of caution in the event that rulings during the trial require the jury to address issues of "coercion."

**Requested Instruction No. 21:  BURDEN OF PROOF - TIP POOL**

Brinker contends that it could have lawfully required the Plaintiffs to share or pool their tips with the QAs, and that Brinker could have included the QAs in the same tip pool that includes the bartenders and bussers because, just like the bartenders and bussers, the QAs perform important customer service functions and customarily and regularly receive tips.  If Brinker could have included the QAs in the tip pool, Brinker is entitled to take the "tip credit" even if Brinker coerced[5] a Plaintiff to share tips with a QA.

In this case, Brinker must prove by a preponderance of the evidence that it could have properly included the QAs in the tip pool.

A preponderance of the evidence simply means evidence that persuades you that Brinker's defense that it was lawful to pool tips is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof establishes by a preponderance of the evidence that any of Brinker's QAs would have been eligible to participate in the tip pool because they "customarily and regularly" received tips and performed important customer service functions, you should find for Brinker as to those Plaintiffs who shared tips with the eligible QAs.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.20; *Reich v. Priba Corp.*, 890 F. Supp. 586, 595-96 (N.D. Tex. 1995).

Given: _____ Denied: _____

_____

Honorable Keith Ellison

---

[5]    Brinker submits this Instruction containing a reference to the issue of "coercion" in the abundance of caution in the event that rulings during the trial require the jury to address issues of "coercion."

**Requested Instruction No. 22:  BURDEN OF PROOF – DUAL JOBS vs. SINGLE OCCUPATION**

Brinker contends that when a Server works a shift as a QA, that Server continues to perform duties that are incidental to or related to the duties usually performed by Servers and therefore that Servers and QAs do not work in two distinct occupations.  Brinker therefore contends that a Server who work shifts as a QA is eligible to participate in a tip pool, as would be the case with any other Server.

In this case, Brinker must prove by a preponderance of the evidence that Servers and QAs do not work in two distinct occupations.

A preponderance of the evidence simply means evidence that persuades you that Brinker's defense that it was lawful to pool tips among Servers who also worked as QAs is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof establishes by a preponderance of the evidence that that Servers and QAs do not work in two distinct occupations, you should find for Brinker.

**Source:** Fifth Cir. 2006 Pattern Jury Instructions (Civil Cases) Instruction No. 2.20.


Given: _____ Denied: _____


_____
Honorable Keith Ellison

**PROPOSED SPECIAL INTERROGATORIES TO THE JURY**

      **<u>Special Interrogatory No. 1:</u>**  Did the 55 plaintiffs establish by a preponderance of the evidence that they are similarly situated because they were commonly affected by a single decision, policy or plan that gave rise to widespread violations of Brinker's duty to pay them the minimum wage because they shared tips with QAs who were ineligible to share tips?

      YES_____      NO_____

      If your answer to Special Interrogatory No. 1 is "YES," go directly to Special Interrogatory No. 5, and skip Special Interrogatories Nos. 2 through 4.

      If your answer to Special Interrogatory No. 1 is "NO," go to Special Interrogatory No. 2, and skip Special Interrogatories Nos. 5, 6 and 7.

Given: _____ Denied: _____

_____
Honorable Keith Ellison

**<u>Special Interrogatory No. 2</u>**:[6]  As to Jennifer Roussell, did Jennifer Roussell establish by a preponderance of the evidence that Brinker management, on one or more work shifts, coerced her to share tips with a QA by engaging in actions that were materially coercive, which in this context means such actions that would have dissuaded, by force or threat, a reasonable Plaintiff from believing that sharing tips with the QA was voluntary?

YES _____        NO _____

If your answer to Special Interrogatory No. 2 is "YES," go directly to Special Interrogatory No. 3, and skip Special Interrogatories Nos. 5, 6 and 7.

If your answer to Special Interrogatory No. 2 is "NO," skip the remaining Special Interrogatories.

Given: _____ Denied: _____

_____

Honorable Keith Ellison

---

[6]    Brinker submits this Special Interrogatory No. 2 in the abundance of caution in the event that rulings on the motion in limine concerning "coercion" requires the jury to address issues of "coercion."

**Special Interrogatory No. 3:**  As to Jennifer Roussell, did Brinker establish by a preponderance of the evidence that Jennifer Roussell shared tips with QAs who were eligible to participate in a tip pool because those QAs performed important customer service functions (that is, those QAs performed functions that are more like the functions performed by waiters/waitresses, busboys/girls, server helpers, or service bartenders)?

YES _____        NO _____

If your answer to Special Interrogatory No. 3 is "YES," skip the remaining Special Interrogatories.

If your answer to Special Interrogatory No. 3 is "NO," go to Special Interrogatory No. 4, and skip Special Interrogatories Nos. 5, 6 and 7.

Given: _____ Denied: _____

_____
Honorable Keith Ellison

**<u>Special Interrogatory No. 4:</u>**  As to Jennifer Roussell, did Brinker establish by a preponderance of the evidence that Jennifer Roussell shared tips with QAs who were also Servers but and who when working a shift as the QA performed duties that were incidental to or related to the duties usually performed by Servers?

YES _____      NO _____

If your answer to Special Interrogatory No. 4 is "YES," skip the remaining Special Interrogatories.

If your answer to Special Interrogatory No. 4 is "NO," skip the remaining Special Interrogatories.

Given: _____ Denied: _____

_____

Honorable Keith Ellison

**<u>Special Interrogatory No. 5:</u>** [7]  As to each Plaintiff, did each Plaintiff establish by a preponderance of the evidence that Brinker management on one or more work shifts coerced that Plaintiff to share tips with a QA by engaging in actions that were materially coercive, which in this context means such actions that would have dissuaded, by force or threat, a reasonable Plaintiff from believing that sharing tips with the QA was voluntary?

| | | |
|---|---|---|
| For Plaintiff Jennifer Roussell | YES_____ | NO_____ |
| For Plaintiff Rick Adams | YES_____ | NO_____ |
| For Plaintiff Allison Alfrey | YES_____ | NO_____ |
| For Plaintiff Jeremiah Brenner | YES_____ | NO_____ |
| For Plaintiff Theresa Bryant | YES_____ | NO_____ |
| For Plaintiff Wendy Dorr | YES_____ | NO_____ |
| For Plaintiff Mary Beth Downing | YES_____ | NO_____ |
| For Plaintiff Elizabeth Ellis | YES_____ | NO_____ |
| For Plaintiff Heide Evans | YES_____ | NO_____ |
| For Plaintiff Maureen Farinato | YES_____ | NO_____ |
| For Plaintiff Alysha Miller | YES_____ | NO_____ |
| For Plaintiff Christina Slomkowski | YES_____ | NO_____ |
| For Plaintiff Cory Walker | YES_____ | NO_____ |
| For Plaintiff Emily Zayas | YES_____ | NO_____ |

If you answered "Yes," go to the next Interrogatory for that particular Plaintiff.  If you answered "No," skip the remaining Interrogatories for that particular Plaintiff.

Given: _____ Denied: _____

_____

Honorable Keith Ellison

---

[7]    Brinker submits this Special Interrogatory No. 5 in the abundance of caution in the event that rulings on the motion in limine concerning "coercion" requires the jury to address issues of "coercion."

**Special Interrogatory No. 6:**  As to each Plaintiff, did Brinker establish by a preponderance of the evidence that he or she shared tips with QAs who were eligible to participate in a tip pool because those QAs performed important customer service functions (that is, those QAs performed functions that are more like the functions performed by waiters/waitresses, busboys/girls, server helpers, or service bartenders)?

| | | |
|---|---|---|
| For Plaintiff Jennifer Roussell | YES_____ | NO_____ |
| For Plaintiff Rick Adams | YES_____ | NO_____ |
| For Plaintiff Allison Alfrey | YES_____ | NO_____ |
| For Plaintiff Jeremiah Brenner | YES_____ | NO_____ |
| For Plaintiff Theresa Bryant | YES_____ | NO_____ |
| For Plaintiff Wendy Dorr | YES_____ | NO_____ |
| For Plaintiff Mary Beth Downing | YES_____ | NO_____ |
| For Plaintiff Elizabeth Ellis | YES_____ | NO_____ |
| For Plaintiff Heide Evans | YES_____ | NO_____ |
| For Plaintiff Maureen Farinato | YES_____ | NO_____ |
| For Plaintiff Alysha Miller | YES_____ | NO_____ |
| For Plaintiff Christina Slomkowski | YES_____ | NO_____ |
| For Plaintiff Cory Walker | YES_____ | NO_____ |
| For Plaintiff Emily Zayas | YES_____ | NO_____ |

If you answered "No," go to the next Interrogatory for that particular Plaintiff.  If you answered "Yes," skip the remaining Interrogatories.

Given: _____ Denied: _____

_____
Honorable Keith Ellison

**Special Interrogatory No. 7:**  As to each Plaintiff, did Brinker establish by a preponderance of the evidence that one or more Plaintiffs shared tips with QAs who were also Servers and who while working a shift as the QA performed duties that were incidental to or related to the duties usually performed by Servers?

| | | |
|---|---|---|
| For Plaintiff Jennifer Roussell | YES_____ | NO_____ |
| For Plaintiff Rick Adams | YES_____ | NO_____ |
| For Plaintiff Allison Alfrey | YES_____ | NO_____ |
| For Plaintiff Jeremiah Brenner | YES_____ | NO_____ |
| For Plaintiff Theresa Bryant | YES_____ | NO_____ |
| For Plaintiff Wendy Dorr | YES_____ | NO_____ |
| For Plaintiff Mary Beth Downing | YES_____ | NO_____ |
| For Plaintiff Elizabeth Ellis | YES_____ | NO_____ |
| For Plaintiff Heide Evans | YES_____ | NO_____ |
| For Plaintiff Maureen Farinato | YES_____ | NO_____ |
| For Plaintiff Alysha Miller | YES_____ | NO_____ |
| For Plaintiff Christina Slomkowski | YES_____ | NO_____ |
| For Plaintiff Cory Walker | YES_____ | NO_____ |
| For Plaintiff Emily Zayas | YES_____ | NO_____ |

If you answered "No," go to the next Interrogatory for that particular Plaintiff.  If you answered "Yes," skip the remaining Interrogatories.

Given: _____ Denied: _____

_____
Honorable Keith Ellison