UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER ROUSSELL, on Behalf of Herself and Others Similarly Situated, § § § | |
| Plaintiffs, § | |
| § | CIVIL ACTION NO. H-05-3733 |
| v. § § | |
| BRINKER INTERNATIONAL, INC., § § | |
| Defendant. § | |

COURT'S INSTRUCTIONS TO THE JURY

The following instructions were presented to the jury on this 23rd day of March, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

1

GENERAL INSTRUCTIONS FOR CHARGE

Members of the Jury:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

DUTY TO DELIBERATE

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges -- judges of the facts. Your only interest is to seek the truth from the evidence in the case.

USE OF NOTES TAKEN BY JURORS

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

BIAS - CORPORATE PARTY INVOLVED

       Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**THE FAIR LABOR STANDARDS ACT OVERVIEW OF ISSUES**

This case arises under the Fair Labor Standards Act, a federal law that provides for the payment of minimum wages. Plaintiffs are current and former servers at Chili's Restaurants, a restaurant chain owned by Brinker, the Defendant in this case. The Fair Labor Standards Act allows Brinker to establish a tip pooling or tip sharing arrangement among employees who "customarily and regularly receive tips." Plaintiffs claim that Brinker required Plaintiffs to contribute a portion of their tips to a tip pool that Plaintiffs allege was invalid under federal law. They claim that Brinker did not operate a legal tip pool because it included Quality Assurance workers or Expeditors (or "QAs/Expos") who, the Plaintiffs allege, do not work in positions or an occupation that "customarily and regularly receive tips." Defendant Brinker asserts that it operated a legal tip pool because the QAs/Expos work in positions or an occupation that "customarily and regularly receive tips."

**THE FAIR LABOR STANDARDS ACT: TIP CREDIT**

Under the law, when, as in this case, an employee qualifies as a "tipped employee," an employer may combine his/her tips with the hourly wages the employer pays that employee. In these situations, an employer may use the tips received by a "tipped employee" to satisfy the difference between $2.13 per hour and the applicable minimum wage. The difference between the minimum wage and the amount an employee must be paid directly by the employer is the "tip credit." The amount paid by the employer under these circumstances is called the "sub-minimum wage."

To be entitled to a tip credit, Brinker must prove that Plaintiffs retained all their tips other than those tips contributed to a valid tip pool.

It is not in dispute that Servers such as the Plaintiffs in this case contributed to a valid tip pool with bartenders and bussers, and the pooling of tips with the bartenders and bussers does not diminish or otherwise affect Brinker's ability to claim "tip credit" for the shifts worked by Plaintiffs.

The Plaintiffs agree that each of them is a "tipped employee" under the Fair Labor Standards Act. In addition, Plaintiffs and Defendant agree that at all relevant times, Defendant paid Plaintiffs a direct hourly wage that, when added to the tip credit, met the applicable minimum wage requirement.

**THE FAIR LABOR STANDARDS ACT: TIP POOLING**

Under the Fair Labor Standards Act, employees are generally entitled to keep all the tips they receive from customers. However, employers can operate a legal tip pool by requiring employees to share their tips with other "employees who customarily and regularly receive tips."

What is in dispute is whether QAs/Expos were "employees who customarily and regularly receive tips." Brinker contends that the Plaintiffs were allowed to share tips with QAs/Expos because QAs/Expos were eligible under the law to receive pooled or shared tips and therefore it operated a legal tip pool. Plaintiffs contend that the QAs/Expos were ineligible under the law to receive pooled or shared tips and therefore Brinker was not allowed to apply a tip credit because the QAs/Expos should not have been included in the tip pool. Brinker has the burden to prove by a preponderance of the evidence that it operated a legal tip pool.

In determining whether the QAs/Expos are engaged in positions or an occupation in which they customarily and regularly receive tips, it is necessary to examine the QAs/Expos' overall duties, as well as the extent of their customer interaction. It is important to note that employees may participate in tip pools even if they do not receive tips directly from customers. Accordingly, an employee may be "indirectly tipped" (like receiving tips from employees who received them directly from the customer) and still properly be eligible to participate in a mandatory tip pool.

If employees have more than minimal customer interaction and perform important customer service functions (i.e. functions that are more like those of waiter/waitresses, bellhops, counter personnel who serve customers, busboys/girls, or service bartenders than those of janitors, dishwashers, chefs or cooks, or laundry room attendants), they may participate in a mandatory tip pool. Employees also may be eligible to participate in a mandatory tip pool even if they have only occasional customer interaction, as long as their primary duties entail important customer service functions.

**CUSTOMARILY AND REGULARLY**

Brinker contends that Servers could be lawfully required to pool tips with QAs/Expos, just as Servers pool tips with bartenders and bussers. To be eligible to participate in a mandatory tip pool, the QAs/Expos must "customarily and regularly receive tips."

The phrase "customarily and regularly" "signifies a frequency which must be greater than occasional, but which may be less than constant."

The following types of occupations have been recognized as being eligible for participation in a tip pooling arrangement because they "customarily and regularly" receive tips: 1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls (server helpers); and 5) service bartenders.

In contrast, the following types of jobs do not qualify for a tip pool: 1) janitors; 2) dishwashers; 3) chefs or cooks; and 4) laundry room attendants.

The examples above of jobs that either qualify or do not qualify for participation in a tip pool are only illustrative, and not exhaustive.

**CUSTOMER SERVICE FUNCTIONS**

      In making your determination, it may be helpful for you to consider evidence that servers' and QAs/Expos' customer service functions generally overlapped or did not generally overlap with the customer service functions of servers or the other positions listed above that are eligible for participation in a tip pooling arrangement.

**BURDEN OF PROOF**

In this case, Brinker must prove every essential part of its defense by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that Brinker's defense is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Brinker's defense by a preponderance of the evidence, you should find for the Plaintiffs as to Brinker's defense.

**REPRESENTATIVE TESTIMONY**

To establish Chili's alleged improper use of mandatory tip pools, the Plaintiffs have put on testimony alleged to be representative of all of the Plaintiffs in this case, to establish a pattern or practice of violations. In determining whether evidence of testifying plaintiffs is fairly representative, you should decide whether their experiences also happened to non-testifying plaintiffs.

You may consider such factors as the nature of the work involved, the working conditions, the relationships between employees and managers, and the detail and credibility of the testimony. While no exact number or percentage of the Plaintiffs is required to testify, the Plaintiffs must present a sufficient number of representatives, which, when considered together with all of the other evidence presented in this case, establishes a pattern or practice.

INTERROGATORIES TO THE JURY

<u>Special Interrogatory No. 1:</u> Did the Plaintiffs establish by a preponderance of the evidence that they are similarly situated as to Brinker's duty to pay them the minimum wage because they shared tips with QAs/Expos who were ineligible to share tips?

YES_____    NO_____

If your answer to Special Interrogatory No. 1 is "YES," go directly to Special Interrogatory No. 2, and skip Special Interrogatory No. 3.

If your answer to Special Interrogatory No. 1 is "NO," go to Special Interrogatory No. 3, and skip Special Interrogatory No. 2.

14

<u>Special Interrogatory No. 2</u>

Do you find that the Defendant Brinker proved by a preponderance of the evidence that it operated a legal tip pool under the Fair Labor Standards Act, that is, that QAs/Expos work in positions or an occupation that customarily and regularly receives tips?

YES _____   NO _____

You should not proceed further with respect to this verdict form except to date and sign this verdict form and return it to the courtroom.

Special Interrogatory No. 3:

      As to each Plaintiff, did Brinker establish by a preponderance of the evidence that he or she shared tips with QAs/Expos who work in positions or an occupation that customarily and regularly receives tips?

| | | |
|---|---|---|
| For Plaintiff Jennifer Roussell | YES_____ | NO_____ |
| For Plaintiff Rick Adams | YES_____ | NO_____ |
| For Plaintiff Allison Alfrey | YES_____ | NO_____ |
| For Plaintiff Jeremiah Brenner | YES_____ | NO_____ |
| For Plaintiff Theresa Bryant | YES_____ | NO_____ |
| For Plaintiff Wendy Dorr | YES_____ | NO_____ |
| For Plaintiff Mary Beth Downing | YES_____ | NO_____ |
| For Plaintiff Elizabeth Ellis | YES_____ | NO_____ |
| For Plaintiff Heide Evans | YES_____ | NO_____ |
| For Plaintiff Maureen Farinato | YES_____ | NO_____ |
| For Plaintiff Alysha Miller | YES_____ | NO_____ |
| For Plaintiff Christina Slomkowski | YES_____ | NO_____ |
| For Plaintiff Cory Walker | YES_____ | NO_____ |
| For Plaintiff Emily Zayas | YES_____ | NO_____ |