UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JENNIFER ROUSSELL, on Behalf of Herself and Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | |
| | § | **CIVIL ACTION NO. H-05-3733** |
| **v.** | § § | |
| **BRINKER INTERNATIONAL, INC.,** | § § | |
| **Defendant.** | § § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Renewed Motion for Judgment as a Matter of Law, Renewed Motion to Decertify Collective Action, and Supporting Memorandum (Doc. No. 290) of Defendant Brinker International, Inc. Having considered the Motion and the applicable law, the Court finds that Defendant's Renewed Motion should be denied.[1]

## I. INTRODUCTION

This case involves a Fair Labor Standards Act ("FLSA") collective action brought on behalf of approximately 3,500 servers at different Chili's Bar & Grill restaurants. Plaintiffs claim that Defendant, which owns the restaurants, unlawfully required them to share tips with Quality Assurance employees (also know as Expeditors, or Expos, collectively "QAs"). Defendant maintains that servers voluntarily shared tips with QAs and, even if some servers were coerced, it was lawful to include the QAs in the tip pools due to the actual duties QAs performed.

---

[1] The Court has considered Defendant's Objections to Plaintiff's Notice of Filing Depo Excerpts and Plaintiffs' Response and the objections are overruled as moot. (Doc. No. 263.)

In July 2008, the Court denied Defendant's Motion for Summary Judgment and granted Plaintiffs' Motion to Strike Defendant's tipping expert. *Roussell v. Brinker Intern., Inc.*, C.A. No. H-05-3733, 2008 WL 2714079 (S.D. Tex. July 9, 2008) ("July 2008 Order"). In September 2008, the Court granted in part Defendant's Motion to Decertify by decertifying all opt-ins except the deposed opt-ins and those who worked at the same restaurants as the deposed opt-ins.[2] (Doc. No.  172, Sept. 2008 Order, at 5-6.) As the Court noted in its September 2008 Order, although the deposed opt-ins all complained of manager coercion at their respective stores, "the Court cannot conclude on the basis of this testimony that the opt-ins in the remaining stores and states were necessarily coerced by other mangers to share tips with QAs. To the extent that the deposed opt-ins' testimony could be considered evidence of a pattern and practice of behavior, it would be confined to the managers and/or stores that the deposed opt-ins represent." (Sept. 2008 Order, at 4 n. 3.) On the other hand, the Court has determined that a "jury could ... determine that the QAs generally are or are not eligible to participate in a mandatory tip pool." July 2008 Order, at *16.

In January 2009, the Court further limited the collective action by decertifying all opt-ins except those deposed. (Doc. No. 197, Jan. 2009 Order.) The case went to trial in March 2009, and 14 Plaintiffs testified on behalf of the remaining class of 55. Questions concerning QA tip-pool eligibility were submitted to the jury and, after the jury determined that the 14 Plaintiffs who testified at trial were representative of the 55, the jury answered "no" to the question:

> Do you find that the Defendant Brinker proved by a preponderance of the evidence that it operated a legal tip pool under the Fair Labor Standards Act, that

---

[2] The Court's findings of fact and analysis in its previous Orders are incorporated in full into the present Memorandum and Order.

is, that QAs/Expos work in positions or an occupation that customarily and regularly receives tips?

Defendant now asks the Court to decertify the action because the record evidence and offers of proof demonstrate that the case involves individualized determinations on the issue of manager coercion and on the issue of QA tip-pool eligibility. Defendant contends that the only way for the Court to issue a final judgment pursuant to the jury's verdict is for the Court to conclude, as a matter of law, that the 41 non-testifying opt-in Plaintiffs experienced coercion. Defendant adds that the record evidence and offers of proof negate any possibility of a finding of class-wide coercion and, therefore, judgment as a matter of law in its favor is now warranted.

## II. COERCION AS TO THE 41 NON-TESTIFYING PLAINTIFFS

Defendant contends that there was no evidence at trial sufficient to conclude that the 41 non-testifying opt-in Plaintiffs were coerced. Prior to the trial, Defendant conceded for the purposes of trial that the 14 representative Plaintiffs were coerced. At a hearing on the first day of trial, the parties approached the bench to discuss the issue of coercion with respect to the remaining 41. At that time, Plaintiffs' counsel explained:

> Your Honor has said, "I'm going to continue to evaluate whether or not I can hold this thing together throughout the trial," that it would be incumbent upon us to give you some evidence to show you that this is not just these 14 people; that it's the other 55. I mean, we think we've already done that, but Your Honor has said you're going to continue to look at it. So it seems to me that we've got to come forward with some evidence on that as well if you're going to continue to look at it.[3]

---

[3] In an earlier hearing, Defendant explained:

> We want to make it clear that with respect to coercion, while we're trying to reach a stipulation, given the Court's ruling, we're not going to present testimony or evidence about that, and that without waiving our right to assert what we think the proper standard should be, given the standard the Court intends, we have conceded coercion, even though you've ruled they're going to go first. This isn't subject to a stipulation. That's something—that's a concession that we've made as we put forth on our record.

(Trial Tr. vol. 1, 145, Mar. 9, 2009.) Defense counsel responded that it could provide an offer of proof outside the presence of the jury and allow the Court to decide whether the jury should hear testimony on coercion.[4] (Trial Tr. vol. 1, 146-47, Mar. 9, 2009.) Defendant clarified that its submitted jury instruction on whether the testimony of the 14 was representative of the 41 addressed the QA tip-pool eligibility issue and not coercion "because [presumably based on this offer of proof] we understand that the Court is either going to find that it can or cannot extrapolate from the 14 to the 41." (*Id.* at 148.) Likewise, in an Order docketed March 9, 2009, the Court explained to the parties that its understanding of the trial was that "[t]he remaining issue in this case is Defendant's 203(m) affirmative defense—whether the QAs were tip-pool eligible." (Doc. No. 237, Mar. 9, 2009 Order, at 2.) At that time, the Court had not held for Defendant, as a matter of law, on the coercion issue. Consequently, the only reason that the Court concluded coercion was not a triable issue was that (1) Defendant had conceded coercion as to the 14 Plaintiffs, (2) Plaintiffs had been allowed to present representative testimony at a prior hearing, and, (3) barring new offers of proof demonstrating that opt-in Plaintiffs were not similarly situated as to the coercion issue, the concession as to the 14 would be extrapolated to the 41 because of the Court's previous ruling on the representative nature of the case.

In its July 2008 Order, the Court set forth its position that Plaintiffs had made a sufficient showing that all of the deposed opt-ins were subjected to some form of coercion by managers. July 2008 Order, at *22. The Court, in making its determination

---

(Doc. No. 216, Mar. 4th, 2009, Mtn. H'rg Tr. 1:4-17.)
[4] Defendant submitted a consolidated summary of trial testimony and offer of proof on coercion on March 20, 2009, the day after Plaintiffs rested their case. (Doc. No. 270.)

that the class could proceed to trial using representative testimony, relied on decisions to allow representative testimony in collective actions both inside and outside the *Mt. Clemens* context. July 2008 Order, at *22. *See also*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1276-80 (11th Cir. 2008) (discussing representative testimony under the *Mt. Clemens*/pattern or practice line of cases when the employer fails to maintain proper records); *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 310 (4th Cir. 2006); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1227 (11th Cir. 2001) (discussing pattern and practice evidence used to prove discrimination in the ADEA context); *Donovan v. Burger King*, 672 F.2d 221 (1st Cir. 1982) (allowing representative testimony to prevent cumulative evidence because of the "basic similarities between the individual restaurants"); *Dole v. Snell*, 875 F.2d 802 (10th Cir. 1989) (allowing representative testimony to address whether the plaintiffs were independent contractors when the parties stipulated that the testifying plaintiff was representative); *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 540 (S.D. Tex. 2008) (collecting cases).

As the Court's previous Orders have explained, the Court is respectful of the broad remedial purposes of the FLSA, and the purposes of Section 216 of the FLSA militate in favor of allowing this lawsuit to proceed collectively. "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman v. LaRoche*, 493 U.S. 165, 170 (1989). The need for collective action lawsuits under FLSA is particularly important because, as one district court has noted, plaintiffs

can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action." *Bradford v. Bed Bath and Beyond*, 184 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002). Mindful of these purposes, the Court must recognize, however, that collective treatment is only justified in cases in which the plaintiffs are similarly situated and where proceeding collectively will not render trial unfair to the defendants.

With heed to these considerations and to the parties' respective positions prior to and during trial, the Court holds, as a matter of law, that Defendant's concession as to coercion for the 14 Plaintiffs will be extrapolated to cover the remaining 41. The trial evidence submitted by Defendant is insufficiently persuasive to require the Court to revisit its earlier finding as to the testimony of the deposed opt-ins regarding their similarly situated status with respect to coercion, or its ruling that the trial may proceed collectively. Accordingly, incorporating the reasoning of its early Orders, the Court will deny Defendant's Motion for Decertification.

The Court also declines to upset the jury's verdict as to the representativeness of the testifying Plaintiffs and the jury's finding that the QAs were not tip-pool eligible. Although the Court expressed concerns at one point during the trial that the QAs' roles varied enormously by store, the Court declined to take the question away from the jury prior to the jury charge and declines to revisit that decision now.

## III. CONCLUSION

Defendant's Motion is hereby **DENIED**. The Court will entertain a motion for a final judgment containing the agreed amount of damages.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 29th day of April, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**