UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JENNIFER ROUSSELL,** on Behalf of | § | |
| **Herself and Others Similarly Situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. H-05-3733** |
| **v.** | § | |
| | § | |
| **BRINKER INTERNATIONAL, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is the Motion for an Award of Reasonable Attorneys'
Fees, Costs, and Expenses of Plaintiffs (Doc. No. 307). After considering the parties'
filings, oral arguments of counsel, and the applicable law, this Court finds and holds that
Plaintiffs' Motion should be granted in part.

**I.    BACKGROUND**

This case involves a Fair Labor Standards Act ("FLSA") collective action brought
on behalf of servers at Chili's Bar and Grill restaurants. Plaintiffs filed the case in
November 2005, alleging that Defendant had failed to pay its servers a minimum wage
by coercing them into sharing tips with Quality Assurance employees ("QAs"), who were
not eligible for the mandatory tip pools. In August 2006, this Court granted Plaintiffs'
unopposed motion to distribute notice of this collective action to a national class of
potential opt-in plaintiffs. (Doc. No. 22.) Over 3,500 individuals consented to join the
collective action in response to the distributed notice. Over the course of discovery, the
parties conducted approximately 120 depositions held in 26 states. (Pl. Mot., Doc. No.

1

307, at 4.) In a status conference held in July 2007, the Court discussed with the parties Plaintiffs' proposed trial witness strategy and issues of representative testimony. Pursuant to the discussions at this conference, Plaintiffs thereafter identified their trial witnesses on a rolling basis. The 55 deposed opt-ins who ultimately became the Plaintiff class were identified as representative proof witnesses for the preliminary class of over 3500 opt-ins.

Following discovery, in an order issued July 9, 2008, this Court denied Defendant's motion for summary judgment, finding that there remained issues of fact as to whether QAs were eligible to participate in mandatory tip pools, and granted Plaintiffs' motion to strike Defendant's tipping expert ("July 2008 Order"). (Doc. No. 162.) In the July 2008 Order, this Court also addressed Defendant's pending motion to decertify the plaintiff class. While noting that certification of the class on the issue of tip pool eligibility would be appropriate, the Court expressed concern as to the propriety of treating the issue of coercive tip-sharing through representative testimony. (July 2008 Order, at 33-39.) However, based on thorough examination of the deposition testimony of 55 opt-in Plaintiffs, the Court concluded that the deposed opt-ins were similarly situated as to both issues. (*Id.*, at 43.) In September 2008, after reviewing Plaintiffs' revised trial plan, the Court granted in part Defendant's motion to decertify by decertifying all opt-ins except the deposed opt-ins and those who worked at the same restaurants as the deposed opt-ins ("September 2008 Order"). (Doc. No. 172, at 5-6.) In January 2009, the Court further limited the collective action by decertifying all opt-ins except those deposed and denying Plaintiffs' motion to intervene on behalf of several hundred dismissed opt-in plaintiffs ("January 2009 Order"). (Doc. No. 197.) The case went to trial in March 2009, and 14 Plaintiffs testified on behalf of the remaining class of 55 deposed opt-in Plaintiffs.

Questions concerning QA tip-pool eligibility were submitted to the jury and, after the jury determined that the 14 Plaintiffs who testified at trial were representative of the 55, the jury answered "no" to the question:

> Do you find that the Defendant Brinker proved by a preponderance of the evidence that it operated a legal tip pool under the Fair Labor Standards Act, that is, that QAs/Expos work in positions or an occupation that customarily and regularly receives tips?

(Doc. No. 284.) The issue of coercion was decided by this Court in April 2009. The Court found that Defendant's concession that the 14 testifying Plaintiffs were coerced could be extrapolated to cover the remaining 41. (Doc. No. 295, at 6.) On June 18, 2009, the Court entered judgment in favor of Plaintiffs and ruled that they were entitled to an aggregate monetary award of $271,878.04 as well as attorneys' fees and costs. (Doc. No. 298.) As the prevailing party in the Court's final judgment, Plaintiffs file this Motion for an Award of Attorneys' Fees, Costs, and Expenses.

## II.   LEGAL STANDARD

FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney[s'] fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). A party is a "prevailing party" for the purposes of attorneys' fee awards if the party "succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 791 (1989). For prevailing plaintiffs in FLSA cases, fee awards are mandatory. *Kreager v. Solomon & Flanagan P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).

In evaluating a fee award, the Court determines the amount of attorneys' fees to which a prevailing party is entitled through a two-step process. *Hopwood v. Texas*, 236

F.3d 256, 277 (5th Cir. 2000), *cert. denied*, 533 U.S. 929 (2001). First, the court calculates the "lodestar" by multiplying the reasonable number of hours spent on the case by the reasonable hourly rate. *Id.*; *see also Saizan v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (noting that courts use the lodestar method to assess attorneys' fees in FLSA suits). A reasonable rate for attorneys' fees awarded under Section 1692k(a)(3) is the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. *See Cope v. Duggins*, 203 F. Supp. 2d 650, 655 (E.D. La. 2002) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). Plaintiffs seeking attorneys' fees "are charged with the burden of showing the reasonableness of the hours billed . . . ." *Saizan v. Delta Concrete Products Company*, 448 F.3d 795, 799 (5th Cir. 2006); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"). Plaintiffs' counsel "is not required to record in great detail how each minute of his time was expended," but should "at least identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12.

Second, the court considers whether the lodestar amount should be adjusted upwards or downwards based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[1] The most important of these factors is the overall degree of success achieved. *Hensely*, 461 U.S. at 434. The Supreme Court has

---

[1] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19.

held that there is a "strong presumption" that the lodestar figure, without adjustment, is the reasonable fee award. *Kenny v. Perdue*, 532 F.3d 1209 (11th Cir. 2008) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

In considering the reasonable hours expended, the court must determine "whether the attorneys demonstrated adequate billing judgment by '[w]riting off unproductive, excessive or redundant hours.'" *Jones v. White*, No. H-03-cv-2286, 2007 WL 2427976, at *2 (S.D. Tex. Aug. 22, 2007) (citing *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

## III.   THE LODESTAR CALCULATION

Plaintiffs' counsel in this case included attorneys from the firms of Goldstein Demchack Baller Borgen & Dardarian ("Goldstein Demchak"), Bruckner Burch PLLC ("Bruckner Burch"), and Shellist Lazarz LLC ("Shellist Lazarz") ("Plaintiffs' counsel" collectively), along with several other attorneys who assisted with the large number of depositions.  Plaintiffs seek a total of $1,813,263.68 in attorneys' fees in accordance with their lodestar calculation. (Proposed Order, Pl. Reply, Doc. No. 358.) This Court will first consider whether to adopt this lodestar amount, and then address any necessary adjustments according to the *Johnson* factors.

### A.   Hourly Rates

The parties in this case have stipulated as to the hourly rates to be applied to the attorneys and staff who worked on this case. (Doc. No. 341.) Those rates are as follows:

| TIMEKEEPER | HOURLY RATE |
|---|---|
| David Borgen | $500 |
| Laura Ho | $450 |
| Martin A. Shellist | $400 |

5

| Richard J. Burch | $400 |
| Michael K. Burke | $300 |
| James Kan | $250 |
| All other Associates | $250 |
| Senior Paralegals/Legal Assistants | $125 |
| All other Paralegals/Legal Assistants | $105 |

The Court holds that these stipulated hourly rates are reasonable and consistent with hourly rates charged by comparable attorneys in the relevant legal community. The Court accordingly adopts these stipulated rates in its findings and holdings.

### B.   Hours Reasonably Expended

The parties vigorously dispute the number of compensable hours reasonably expended in obtaining a favorable judgment for the 55 Plaintiffs in this collective action. It is the burden of Plaintiffs' counsel to establish that the hours of work for which they seek compensation were reasonably related to the success they achieved. *Saizan*, 448 F.3d 795, 799 (5th Cir. 2006). The party opposing the fee application "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citing *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) (noting that petitioner failed to submit any evidence to the district court challenging the accuracy and reasonableness of the hours charged or facts asserted by respondent's counsel)). In order for a court to properly assess fee applications, objections by fee opponents concerning hours that should be excluded must be "specific and reasonably precise." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

In their initial Motion, Plaintiffs' provided voluminous evidence in the form of time records, attorney declarations, and exhibits to support their calculation of the

6

appropriate lodestar amount. (Doc. Nos. 307-13.) Defendant argues, however, that many of the hours accounted for in Plaintiffs' Motion were not reasonably and necessarily related to the overall results actually achieved in this case, and that Plaintiffs should therefore not be entitled to recover any fees for that time. More specifically, Defendant argues that Plaintiffs' Motion as it pertains to work performed prior to January 26, 2009, or the date of the January 2009 Order, should be denied in its entirety because these fees "were primarily accrued pursuing class discovery, class certification strategy, and unsuccessfully attempting to maintain a 3,556 opt-in collective action." (Def. Resp., Doc. No. 338, at 10.) The Court will consider each of the categories of work the compensability of which Defendant challenges.

### 1.     Interviewing the 3,500 opt-ins

Defendant contends that Plaintiffs' counsel have failed to show that it was reasonable and necessary for them to interview more than 3,500 opt-in potential claimants to obtain a favorable judgment on the "idiosyncratic allegations" of the 55 Plaintiffs in this case. (Def. Resp., at 11.) Defendant points out that the vast majority of the original opt-in claimants worked "at different restaurants, under different managers, and during different time periods" than the prevailing Plaintiffs, and thus the lack of necessity in interviewing them should have been obvious. (*Id.*) Plaintiffs point out that counsel did not in fact interview all 3,556 opt-in plaintiffs, but only a small fraction of this group. They argue that these interviews were necessary to "gather information regarding Chili's tip pooling procedures and practices," to identify the 55 Plaintiffs who

ultimately prevailed at trial, and to reveal "critical facts that ultimately shaped the jury's and Court's understanding of class wide issues." (Pl. Reply, at 7.)[2]

The Court finds that these interviews were reasonably expended for the success of the Plaintiffs in this case. This case began with a Complaint brought by only a single Plaintiff, who could offer only a limited perspective as to Defendant's compliance with FLSA. In interviewing a portion of the 3,500 potential opt-in plaintiffs, counsel for Plaintiffs were justifiably gathering the information necessary to effectively advocate their position in this case, and to explore the possibility of continued collective active treatment. Furthermore, at this early stage in the litigation, neither Defendant nor the Court had taken a position as to the appropriate size and scope of the case to be tried. Had Plaintiffs' counsel not conducted these interviews and gathered as much information as possible as to the circumstances of individual servers across the country, counsel could realistically have neither identified nor advocated for the 55 Plaintiffs who ultimately obtained a successful judgment. Although many of the interviewees did not become plaintiffs in this case, Defendant fails to show that the information obtained from interviewing these opt-ins yielded nothing that contributed to the ultimate success of the prevailing Plaintiffs.

Plaintiffs have therefore met their burden of demonstrating that these hours were reasonably necessary to the case, and Defendant has not conclusively rebutted this showing. As such, the Court holds that the hours spent interviewing the initial opt-in plaintiffs in this case were reasonably expended in obtaining judgment for Plaintiffs.

---

[2] At oral argument, Defendant also argued that Plaintiffs had not provided sufficient information regarding which individuals were interviewed, rendering it impossible to effectively rebut these claimed hours. The Court finds that it was unnecessary for Plaintiffs to identify each and every individual opt-in whom they interviewed to discharge their burden. *Hensley*, 461 U.S. at 437 n.12 (holding that plaintiff must identify the general subject matter of time expenditures).

## 2. Discovery and Document Review

Defendant also challenges Plaintiffs' application to recover fees for time spent reviewing written discovery, particularly those documents and records that pertained to non-deposed opt-ins who were not involved in the trial. Plaintiffs, however, maintain that the hours for which they seek compensation clearly relate to work on behalf of the 55 prevailing Plaintiffs, because they were gathering information necessary to the identification and claims of these individuals. (David Borgen Supp. Decl., Doc. No. 359, ¶¶ 12, 21.) Through Mr. Borgen's declaration, Plaintiffs provide a convincing account of how the hours logged after the depositions of the 55 Plaintiffs directly related to Plaintiffs' success at trial.

Defendant is notably unspecific as to what portion of the nearly 1,200 hours Plaintiffs claim was spent on written discovery it finds objectionable. However, Defendant does point out that some of the 359.2 hours spent reviewing the personnel files of non-deposed opt-ins *after* the depositions had been taken could not have realistically contributed to Plaintiffs' success. (Def. Resp., at 12.) While the Court understands, and Plaintiffs adequately demonstrate, that much of the time and effort spent combing through the written discovery was necessary both for the identification of the 55 Plaintiffs as well as to prepare for the factually intense depositions, these rationales are significantly less applicable to the time spent reviewing this information *after* the depositions of the Plaintiffs were complete. Plaintiffs contend that these hours were "related to trial preparation" and are "directly related to the issues on which Plaintiffs prevailed at trial." (Borgen Supp. Decl. ¶ 21.) In Mr. Borgen's Declaration, Plaintiffs identify three specific time entries for post-deposition document review, totaling 1.5

hours, the relevance of which they specifically describe. (*Id.*) Plaintiffs have certainly met their burden with respect to these hours.

The Court, however, is of the opinion that more is required of Plaintiffs' counsel than their conclusory statements that all of these hours were spent on work that contributed to the success of their clients. Because the timing of these particular hours of document review suggests that this work was done primarily for the benefit of the entire 3,500-member class, Plaintiffs have not met their burden of showing that all of these hours were, in fact, spent on tasks that directly benefited the 55 Plaintiffs. Plaintiffs offer no suggestion as to what portion of this post-deposition document review identified by Defendant might be reduced should this Court question its compensability. Similarly, Defendant vaguely argues that "some" of these hours are related to review of personnel files of non-deposed opt-ins. After reviewing the entries for this time period, the Court finds that the total number of compensable hours should be reduced by 209.2 hours, or approximately 58 percent of the amount of time spent on reviewing documents after depositions were taken.  Because the bulk of this work appears to have been performed by Legal Assistants or Senior Legal Assistants, the Courts finds that 130 Legal Assistant hours, 70 Senior Legal Assistant Hours, and 9.2 associate hours should be subtracted.

### 3.    Depositions

The parties hotly contest the time spent on the 118 depositions taken in this case. Plaintiffs argue that all depositions taken "were related to the development of the evidentiary record linked to the claims of the 55 prevailing Plaintiffs." (Pl. Mot., at 4.) [3]

---

[3] The parties deposed an additional (56th) opt-in plaintiff, Tammy Parsons. However, her claims were dismissed before trial, and time spent on her deposition and those related to it have accordingly been excluded from Plaintiffs' work hours pursuant to their exercise of billing judgment. (David Borgen Decl., Doc. No. 308, ¶¶ 31, 63.)

Defendant argues that the hours spent on these depositions should be discounted to reflect the fact that "Plaintiffs did not need to conduct 118 depositions to succeed on their claims at trial." (Def. Resp., at 12.) According to Defendant, had this case been brought as a 55-plaintiff case from the onset, rather than as a 3,500-member nation-wide collective action, counsel would have deposed only the 14 Plaintiff representatives rather than each and every class member.

The duty of the Court is to evaluate the reasonableness of Plaintiffs' fee request at the time the work was performed. The relevant issue is not "whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (finding that post-settlement offer hours expended should not be excluded from attorneys' fee award because, at the time, they were reasonably expended to evaluate the appropriateness of the settlement offer); *see also Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990) (holding that the standard for awarding attorneys' fees "is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed"); *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 825 (S.D. Tex. 2008) (allowing fees for post-settlement work done in the class's interest); *cf. Frazier v. Board of Trustees of Northwest Mississippi Regional Medical Center*, 765 F.2d 1278, 1293-95 (5th Cir. 1985) (discouraging the use of "hindsight logic" and holding that the fact that a plaintiff eventually loses on the merits of a Section 1983 claim does not undermine the validity of

an interim attorneys' fee award based on successfully obtaining a preliminary injunction).[4]

The Court notes that its ultimate conclusion that the appropriate scope of this case was not the nation-wide class for which Plaintiffs' sought certification was a very close call, an observation of disputed importance. The decertification issue was not apparent from the onset of the litigation, as evident by the fact that the Court arrived at its conclusion incrementally, over the course of three separate orders, and after much discussion and briefing from the parties. Thus, in the period over which 55 potential class representatives were identified and deposed, Plaintiffs were not proceeding unreasonably or irresponsibly. Plaintiffs' counsel believed that these depositions would lead to a more favorable result for Plaintiffs in the case, a belief that was reasonable at that time and stage in the proceedings. As such, the Court rejects the underlying premise of many of Defendant's objections that this case should have been brought as a 55-plaintiff case from the start of the litigation.

Moreover, in reaching the conclusion that these 55 Plaintiffs were similarly situated and could be tried as a class, the Court heavily referenced the well-developed factual record as to these particular individuals. (July 2008 Order, at 39-43.) That is, the Court explicitly relied on the factual information generated by these depositions in concluding that the 55 deposed opt-in Plaintiffs could proceed as a class. (*Id.*, at 43). Plaintiff is correct that "[i]t was due to this exhaustive evidentiary record that the Court ultimately concluded that the 55 prevailing Plaintiffs should remain certified. (Borgen

---

[4] In fleshing out this standard in oral argument, Plaintiffs' counsel pointed out that, while the standard for fee recovery is an *ex post* determination of success, the reasonableness of work performed for purposes of compensability is measured from the *ex ante* perspective of the attorney at the time the work was actually performed.

Supp. Decl. ¶ 5.) Thus, while it might be the case that each and every one of these depositions was not absolutely necessary for the Plaintiffs to prove their case at trial, where they relied on the testimony of only 14 representatives,[5] the Court is persuaded by the record and by its previous holdings that these depositions were vital to the Plaintiffs' success in having the class partially certified. This victory ultimately allowed all 55 Plaintiffs to obtain a favorable judgment.  But for the thorough evidentiary support generated from the testimony of the 55 opt-in Plaintiffs, neither the Plaintiffs nor the Court could have determined that each and every one of the 55 Plaintiffs should move forward to trial. Accordingly, because the Court finds that the hours spent deposing the opt-in Plaintiffs was reasonably expended for the ultimate success of these Plaintiffs at trial, we reject Defendant's challenge and hold that Plaintiff is entitled to fees for the time and effort expended in depositions.

### 4.    Time Spent on Class Certification

Defendant argues that the Court should award no fees for time Plaintiffs spent briefing the class certification issue. Defendant points out that "the decision on the 55 opt-ins was judicially created, not something Plaintiffs proposed, advocated, or briefed." (Def. Resp., at 14.) Thus, according to Defendant, Plaintiffs were entirely unsuccessful in their effort to get the class of 3,500 certified, and should accordingly be awarded nothing for this effort.

This Court is unpersuaded by Defendant's arguments. First, as explained above, the Court is of the opinion that the efforts of Plaintiffs' counsel to maintain a certified

---

[5] The Court also acknowledges Plaintiffs' averments as to how a number of the non-testifying witness depositions were in fact used to advance arguments at trial. (Borgen Supp. Decl. ¶ 18.) It seems logical that, had these depositions not been taken, Plaintiffs' counsel would have been in a very different position during trial preparation, and that difference may have affected the likelihood of success.

class were neither irresponsible nor unreasonable. Secondly, while it is true that Plaintiffs' attempt to defeat decertification was by no means entirely successful, the Court did in fact find that the 55 deposed opt-in Plaintiffs could proceed as a class. Although this was not based on an explicit proposition advocated by Plaintiffs, the Court certainly relied on Plaintiffs' arguments and briefing as to why this case was subject to collective action treatment in reaching its conclusion.

Moreover, the Court does not give much weight to the position advocated by Defendant at oral argument that, because the Court ultimately decertified roughly 98 percent of the class, Plaintiffs essentially failed completely in their class certification efforts. The amount of work necessary to effectively argue against class decertification, and the degree of persuasiveness and thoroughness necessary to be successful, does not directly vary with the number of people within the subject class. The number of class members that the Court allowed to proceed to trial has little relationship to the efforts that allowed the Court to find that this case was subject to collective action treatment and representative testimony. This case began with only one named Plaintiff, and through the efforts of Plaintiffs' counsel, it was tried as a collective action case of 55 Plaintiffs. This is not, therefore, a case in which Plaintiffs' certification efforts went completely unrewarded, as was the situation in most of the case law cited by Defendant. (Def. Resp., at 14-15.) To the extent that Plaintiffs' counsel did expend energy on decertification matters that were decidedly unsuccessful or unrelated to the Court's decision regarding the Plaintiff class, the Court adopts Plaintiffs' representation that many of these hours have already been removed through billing judgment. (Borgen Decl. ¶ 63(d); Pl. Mot., at 13 (indicating that time spent on Plaintiffs' motion to intervene, unsuccessful revised trial

plans, and the brief advocating for inclusion of non-deposed opt-in plaintiffs was eliminated from the lodestar calculation).)

The Court does not, though, wholly ignore the fact that the overall outcome achieved by Plaintiffs' counsel was not that which was originally sought. However, any attempt to disentangle those hours spent on decertification that benefited the certified class of 55 Plaintiffs from those that did not would require far too much speculation and conjecture on the part of this Court. Accordingly, the appropriate stage at which to consider a fee reduction in light of the limited nature of Plaintiffs' success is in making *Johnson* factor adjustments, and not through reducing the hours reasonably expended to defeat decertification. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) (holding that when hours spent on various claims cannot be disentangled, the court's focus should shift to adjustments for results obtained); *Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir. 1991) ("[W]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required.") As such, the Court makes no adjustment to the hours expended by Plaintiffs in achieving this limited success. Consistent with the above analysis, this Court finds that the unadjusted lodestar amount sought by Plaintiffs should be reduced.

## IV.   THE *JOHNSON* FACTORS

The Court now turns to the *Johnson* factors to determine whether the lodestar fees should be adjusted further.

### A.     The Degree of Success Obtained

The Supreme Court has emphasized that the degree of success obtained is the "most critical factor" in determining a fee award. *Volk v. Gonzalez*, 262 F.3d 528,

534 (5th Cir. 2001); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). The most important consideration is the relief plaintiffs obtained "in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. In this case, while the 55 Plaintiffs unambiguously prevailed on their claims at trial and through this Court's final judgment, Plaintiffs' efforts to certify a nation-wide class were, in large part, unsuccessful. This Court must therefore determine whether Plaintiffs' inability to certify a nation-wide class warrants a reduction in the lodestar fee. The Court notes that both parties have taken rather extreme positions on this issue. In oral argument, Defendant suggested that Plaintiffs' entirely failed in their class certification efforts because they did not achieve the 3,500-member class for which they unwaveringly advocated, and because the conditional class was 98 percent decertified. Thus, according to Defendant, Plaintiffs achieved favorable judgment in a case that was almost entirely deflated at the time of trial. Plaintiffs, on the other hand, portray the 55-member Plaintiff class as a notable and rarely accomplished victory in defeating FLSA decertification efforts. (Pl. Mot., at 22.) The Court believes that neither position is entirely accurate. However because neither side offers a more moderate or specific suggestion as to how the degree of success obtained in this case should be translated into a fee adjustment, the Court is left to make an entirely independent assessment.

## 1.    Class decertification

Both parties offer numerous and somewhat contradictory case holdings addressing the question of how FLSA fee motions should be adjusted to account for unsuccessful class certification. Defendant points to several cases in which courts have reduced requested fees to account for decertification of a class. *See, e.g., Barfield v. New*

*York City Health and Hosp. Corp.*, 537 F.3d 132, 151-53 (2d Cir. 2008) (affirming 50

percent reduction in attorneys' fees because recovery was for a single plaintiff rather than

for the thousands of workers that plaintiff sought to include in a collective action); Order,

*Howe v. Hoffman-Curtis Partners Ltd., LLP*, No. H-03-4298 (S.D. Tex. Aug. 24, 2005)

(Ellison, J.) (excluding fees for time spent pursuing the suit as a collective action); *Clarke*

*v. Ford Motor Co.*, No. 01-C-0961, 2006 WL 752902, at * 1 (E.D. Wis. March 21, 2006)

(reducing fee award because plaintiff "accomplished nothing on behalf of the class");

*Grochowski v. Ajet Const. Corp.*, No. 97-civ-6269(NRB), 2002 WL 465272, at *4

(S.D.N.Y. March 27, 2002) (reducing fees because only half of the original plaintiffs

achieved success at trial).

Plaintiffs, on the other hand, cite to several cases that suggest fees should not be

reduced, even though a conditional national class was decertified. *See Johnson v. Big*

*Lots Stores, Inc.*, 639 F. Supp. 2d 696, 706 (E.D. La. 2009) (declining to make an

adjustment to the lodestar amount for "results obtained" even though class was

decertified, and finding that this amount reflected the number of hours spent in

furtherance of the claims that succeeded); *McElmurry v. U.S. Bank Nat. Ass'n*, No. 04-

642-HA, 2008 WL 1925119, at *2 (D. Or. April 30, 2008) (adopting plaintiff's method of

discounting time related to collective action and noting that time spent on the collective

action "dovetailed closely" with issues pertinent to prevailing plaintiffs); *Maranon v.*

*Appliance Direct, Inc.*, No. 7-cv-1160-Orl-22DAB, 2008 WL 151891, at *3 (M.D. Fla.

Jan. 16, 2008) (declining to reduce plaintiff's attorney fees for work related to an

unsuccessful collective action, and finding that Defendant must take the case as he finds

it); Order, *Thiebes v. Wal-mart Stores, Inc.*, No. 98-802-KI (D. Or. Jan. 18, 2005) (King,

17

J.) (opining that plaintiffs would be entitled to fees for work they did for unsuccessful plaintiffs if the time spent was on work also relevant to the plaintiffs who did not receive an award).

Turning to the facts of this case, the Court notes that this is not a case where Plaintiffs were wholly unsuccessful in taking a collective action case to trial. This case did in fact go to trial as a collective action, despite its genesis with only a single Plaintiff named in the Complaint. Moreover, the favorable judgment received by the 55-person class has benefited all members of the original certification to some extent. In response to this litigation, Defendant "sent a notice to all of its managers, instructing them that they should not include QAs in the tip pools." (Pl. Reply, at 11.) Defendant does not refute this fact. It is further likely that the decertified class members will continue to experience positive effects of the judgment received by Plaintiffs, both because Defendant's actions, to the extent that they were unlawful, have been exposed, and because the judgment will have some precedential value in subsequent cases. *See* (January 2009 Order, at 15 (noting that "any decision in [this case] regarding whether QAs are tip eligible may have some *stare decisis* effect" on dismissed class members' subsequent litigation).); *cf. City of Riverside v. Rivera*, 477 U.S. 561, 574 (U.S. 1986) (noting that civil rights plaintiffs vindicate important civil and constitutional rights that cannot be valued solely in monetary terms, and that the damages a plaintiff recovers contribute significantly to the deterrence of civil rights violations in the future). Finally, the Court reiterates that Plaintiffs have, through an independent act of their professional judgment, already reduced the hours included in their lodestar calculation to account for the fact that they were not entirely successful in pursuing this case as a class action. The Court does not

wish to establish a precedent whereby successful plaintiffs who purportedly discount their billing are automatically subject to a further steep judicial discount.

In light of these observations, but still keeping in mind this Court's overarching obligation to consider the overall degree of success obtained relative to the scope of the litigation as a whole, the Court holds that a 20 percent reduction in fees is warranted to account for the fact that Plaintiffs were not successful in certifying the national class. This reduction is justified because, although the efforts of Plaintiffs' counsel prior to the January 2009 Order undoubtedly contributed to the Plaintiffs' success at trial, some of this energy was necessarily in excess of that to which the victory can lawfully be attributed. However, any greater reduction would give too little weight to the circumstances in this case, articulated above, which strongly council against too significant a discount. The Court finds that this reduction, combined with the hourly reductions already implemented through Plaintiffs' billing judgment and by the Court, accurately reflect the degree of success obtained by Plaintiffs in this case.

### 2. Judgment sought vs. judgment obtained

Defendant points out that, while Plaintiffs in this case sought withheld wages for 3,500 workers, what they ultimately achieved was a judgment of only $271,868.04 for 55 Plaintiffs, a small fraction of the judgment they had set out to obtain.[6] According to Defendant, this fact weighs in favor of additional reductions to Plaintiffs' fee request. *See Hilton v. Executive Self Storage Associates, Inc.*, No. H-06-2744, 2009 WL 1750121, at *14 (S.D. Tex. June 18, 2009) (reducing the lodestar amount by 67 percent because

---

[6] The Court is unclear as to the monetary amount actually sought by Plaintiffs during the period of time in which they were proceeding as a 3500-member class. Defendant avers that, at this point, Plaintiff sought $25,000,000. Plaintiffs, however, contend that this figure reflects only Plaintiffs' pre-discovery assessment of the potential value of the case, and that the amount of Plaintiffs' actual demand was redacted from Defendant's submission to this Court. (Pl. Reply, at 13 n.20.)

judgment obtained at trial was only one percent of the amount sought); *Powell v. Carey Intern., Inc.*, 547 F. Supp. 2d 1281, 1297 (S.D. Fla. 2008) (reducing fee award to reflect that the judgment received was only two percent of the amount demanded and that several plaintiffs received less than defendants' pre-trial settlement offer).

The Court notes, however, that several of the cases to which Defendant points are inapposite. In many of those situations, plaintiffs were unsuccessful in obtaining the full judgment sought *at trial*; that is, plaintiffs' counsel were able to get only a fraction of what they sought from the jury itself. Here, on the other hand, Plaintiffs' counsel was fully successful at trial, as they obtained a favorable judgment and damages for each one of the 55 Plaintiffs. That they did not obtain a judgment in favor of the remaining members of the initial 3,500 opt-ins speaks not to their success at trial, but rather their unsuccessful attempts at national certification. Adjustments for the degree to which Plaintiffs failed to certify a nationwide class have already been discussed and implemented.

Furthermore, Plaintiffs continue to aver, and Defendant does not dispute, that they were never offered a settlement in this case. Therefore, it cannot be said that Plaintiffs were unsuccessful for having obtained a judgment at trial that was less than what Plaintiffs would have otherwise received. As such, the Court finds that no further adjustment is warranted.

### 3.    Attorney fees vs. judgment obtained

Defendant also points out that the amount sought in attorneys' fees is more than six times the amount of the judgment awarded to Plaintiffs in this case. "While a low

damages award is one factor which a district court may consider in setting the amount of attorney's fees, this factor alone should not lead the district court to reduce a fee award." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 830 (5th Cir. 2003) (quoting *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000). The Supreme Court has explicitly rejected the notion that an award of attorneys' fees must be "proportional" to the damages awarded to a successful plaintiff. *See City of Riverside v. Rivera,* 477 U.S. 561, 578 (1986). In fact, the Fifth Circuit has approved attorneys' fee awards that are several times the amount of plaintiffs' recovery. *Lucio-Cantu v. Vela,* 239 Fed. Appx. 866 (5th Cir. 2007) (district court did not abuse its discretion in awarding $51,750 in attorneys' fees under FLSA when plaintiffs recovered $3,349.29, $52.50, and $1,296.00 respectively); *Cox v. Brookshire Grocery Co.,* 919 F.2d 354 (5th Cir. 1990) (approving an award of $9,250 in attorneys' fees when plaintiff recovered $1,181 under FLSA). Moreover, the unique nature of a claim under FLSA renders attorneys' fee requests that exceed judgment awards by multiples not uncommon. *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 Fed. Appx. 341, 342 (5th Cir. 2007) (upholding $23,357.30 in damages and $129,805.50 in attorneys' fees.) This Court accordingly finds that the proportion of requested fees to the judgment obtained does not warrant an adjustment to the fee award. The fee amount, as adjusted above, accurately reflects the degree of energy and attention on the part of Plaintiffs' counsel that was necessary to achieve a favorable outcome in this complex FLSA action, although the monetary judgment may not adequately reflect this. *See* (September 2008 Order, at 4 (noting the importance of collection action lawsuits to vindicating rights under FLSA given the likelihood that individual claims will be relatively small).)

### B.    Novelty and Difficulty of the Questions Presented

Plaintiffs also point out that they prevailed on a claim that was novel under existing FLSA tip pool precedent, as the Court and jury were asked to resolve the question of QA tip pool eligibility as a matter of first impression. In addition, the Court adopted a coercion standard in the context of FLSA tip pools that clarified otherwise undeveloped case law.[7] The Court acknowledges both the difficulty of this case and the novelty of the questions presented. Counsel for both parties represented their clients in the highest traditions of the bar. This Court does not, however, find that this recognition warrants any upward adjustment to counsel's fees.

### C.    Contingency Fee

The Court notes that Plaintiffs' counsel undertook representation of the Plaintiff class on a wholly contingent basis, and advanced all litigation costs and expenses. This factor, while notable, does not in the Court's judgment outweigh the reductions imposed in consideration of the degree of success obtained.

### D.    Undesirability of the Case

In its Motion, Plaintiffs list several reasons this case was undesirable, including the history of unsuccessful attempts to withstand collective action decertification in the Fifth Circuit, the sizeable costs of litigation, and the formidability of the opponents. (Pl. Mot., at 23.) The Court took these factors into consideration and acknowledges their significance, but concludes that they do not outweigh the lodestar reduction already imposed. Accordingly, the Court finds and holds that the lodestar fees should be

---

[7] The coercion standard that the Court ultimately adopted is "free from any coercion whatever." (July 2008 Order, at 36.)

discounted by 20 percent to reflect Plaintiffs' failure to obtain final certification of the entire proposed collective action. No other adjustments are called for.[8]

## V.     TAXABLE COSTS

In their Amended Bill of Taxable Costs, Plaintiffs seek a total of $63,509.70 pursuant to 28 U.S.C. Section 1920. (Doc. No. 362.) There is a strong presumption under Federal Rule of Civil Procedure 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006). There is disagreement among district courts as to the level of specificity necessary to support an award of costs. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003) (comparing cases). Defendant objects to several of the costs included in Plaintiffs' Bill of Costs, and the Court now considers each of these objections.[9]

### A.     Copying Costs

Defendant argues that Plaintiffs have failed to meet their burden of proving that the copy costs listed in their Bill of Costs were necessarily obtained for use in this case. *See Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991). Although it is not necessary for "a prevailing party to identify every Xerox copy made for use in the course of legal proceedings, [a court will] require some demonstration that reproduction costs necessarily result from that litigation." *Id.* at 286. Here, Plaintiffs provide an itemized list of the copies for which they seek reimbursement, along with declarations from attorneys at the three firms who worked on the case: Goldstein Demcheck; Bruckner Burch; and Shellist Lazarz. The declarations describe the categories into which these copying costs

---

[8] The parties do not discuss the remaining eight *Johnson* factors in their briefs. To the extent these factors were applicable, the Court did consider them, but concluded that no other fee adjustments were necessary.

[9] A few of Defendant's objections were addressed and cured by Plaintiffs' Amended Bill of Costs (Doc. No. 362), filed with their Reply brief. The Court will not address any such objections.

fall and assert the attorneys' beliefs that each of these costs were reasonably and necessarily incurred. (Borgan Supp. Decl. ¶ 40; Burch Supp. Decl. ¶ 18; Shellist Supp. Decl. ¶ 15.) This Court holds that, in so doing, Plaintiffs' counsel meet their burden in this case. *Compare Kellogg Brown & Root Intern., Inc. v. Altanmia Commercial Marketing Co.*, No. H-07-2684, 2009 WL 1457632, at * 6 (S.D. Tex. May 26, 2009) (noting that movant in that case provided only a spreadsheet showing the number of copies made on each date but no other description of what was copied or why, and noting that "some information of the types or categories of documents copied and the reason for the copies must be furnished").

Defendant incorrectly articulates Plaintiffs' burden as having to prove that "each copy was necessarily obtained for use in the litigation." (Def. Resp., at 19.) In light of the large and complex nature of this case, and the length of the litigation history, the Court finds Defendant's standard to be unreasonable. In providing declarations listing the reasonable categories under which these copies fall, the Court holds that Plaintiffs have discharged their burden.

**B.      Costs Incurred for Deposition Transcripts**

Defendant objects to the costs sought by Plaintiffs for deposition transcripts. To the extent that Defendant's objections are premised on the failure of Plaintiffs' counsel to identify the specific depositions for which it sought transcripts, the Court finds that the Amended Bill of Costs provides sufficient detail to cure these deficiencies. (Doc. No. 382.) As to Defendant's contention that Plaintiffs' have not shown that each of these transcripts was necessarily obtained for use in this case, the Court refers to its previous conclusions as to the integral role that depositions played in providing an exhaustive

evidentiary record by which this Court could determine the proper scope of this case. Accordingly, the Court finds that Plaintiffs are entitled to all costs incurred to obtain deposition transcripts.

### C.   Witness Fees

Defendant argues that Plaintiffs should not be entitled to recover the costs of travel and accommodation for the testifying Plaintiffs because they are parties to this case, and not just witnesses. In response, Plaintiffs point out that the testifying Plaintiffs testified not only for themselves, but also as witnesses for the other members of the 55-member Plaintiff class. In the Fifth Circuit, the preferred exercise of a district court's discretion in awarding costs is "to exclude from an award of costs those items not specifically mentioned in the statute." *Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977). While 28 U.S.C. Section 1920, the statute that itemizes the elements that may be included in an award of taxable costs, includes "(f)ees and disbursements for . . . witnesses," it does not include corresponding allowances for *parties* to the suit. The Fifth Circuit has noted that "'(t)he expenses of witnesses who are themselves parties normally are not taxable.'" *Hodge*, 558 F.2d at 287 (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2678). As such, the Court cannot award Plaintiffs the $11,539.17 they seek for witness fees as taxable costs. The Bill of Costs should be reduced accordingly. The Court does find, however, that this amount should be added to untaxable litigation expenses reimbursable to Plaintiffs, discussed further below.

## VI.   UNTAXABLE LITIGATION EXPENSES

Plaintiffs currently seek $156,293.12 in untaxable litigation expenses pursuant to Federal Rule of Civil Procedure 54(d). (Proposed Order, Pl. Reply.) Defendant concedes that these types of expenses are "sometimes awarded." (Def. Resp., at 22.) However, Defendant argues that Plaintiffs are not entitled to many of these expenses because they failed to meet their burden of showing that the expenses are reasonable and related to the case that was tried. As a preliminary matter, the two expense entries specifically identified by Defendant as unrelated to the case tried were removed by Plaintiffs in their Amended Proposed Order. (Def. Resp., at 22 n.25; Pl. Reply, at 22 n.29.)

As to the online research conducted by Plaintiffs, Defendant argues that this research is inadequately documented and should therefore be disallowed. The Court holds that, because Plaintiff includes a list of the research categories that were removed in exercise of billing judgment, and an explanation of the billing code system that allows them to be reasonably certain that legal research conducted was directly related to this case, they have adequately documented their online research expenses. (Borgen Decl. ¶ 94.) As to Plaintiffs' request for expenses related to in-house faxes, courier services, long distance charges, in-house postage, and travel expenses, the Court holds that Defendant's arguments that Plaintiffs should have provided information demonstrating how "each of these fees was reasonable or necessary to the final judgment" is unreasonable. (Def. Resp., at 23.) The documentation of these expenses, combined with Goldstein Demcheck's list of reasons for which each of these categories of fees was incurred, satisfies the Court that these fees were related to this particular case. Because of the size, scope, and duration of this matter, requiring anything more would be unreasonable. The only expense to which Defendant points that this Court finds inadequately documented,

and therefore un-compensable, is the entry for $163.00 for "miscellaneous expense for Theresa Bryant." (Doc. No. 312-1, at 58.) The litigation expenses should accordingly be reduced by $163.00.

Finally, Defendant objects to payment for costs of two mailings to the entire class, the database system Plaintiffs used to track class members, and the search service Plaintiff used to locate class members on the ground. First, Plaintiffs are correct to point out that Defendant did not initially oppose Plaintiffs' original request for class notice, which undermines its objections to the costs incurred in pursuance thereof. Furthermore, and more importantly, the Court has explained above its conclusion that communications with all class members was vitally important to the identification of the 55 prevailing Plaintiffs and to the Court's determination as to the correct scope of this case. Given that no one, including Defendant, initially objected to the possibility that this case might be given collective action treatment, and that the case was in fact tried as a collective action suit, it is expected that Plaintiffs' counsel would have utilized technological resources to identify, track, and manage the various Plaintiffs who resided in cities all over the country. As such, this Court finds that Plaintiffs are entitled to compensation for these expenses.

The reductions in fees and taxable and non-taxable expenses indicated above should be implemented. The Court asks Plaintiffs to submit a revised Proposed Order reflecting these changes.

## VII.   CONCLUSION

For the reasons stated in this Memorandum, Plaintiffs' Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses (Doc. No. 307) is hereby **GRANTED**

**IN PART**. The parties are **ORDERED** to submit a Joint Proposed Order reflecting all changes to Plaintiffs' current fee request indicated above, no later than seven (7) days from entry of this Order.

**IT IS SO ORDERED.**

**SIGNED** this 13th day of January, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE